EXHIBIT 2

CJ-2022-1622
Mai

IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLHOMA

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

APR – 8 2022

RICK WARREN
COURT CLERK
37

| | | |
|---|---|---|
| BILLIE WILLIS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| PROGRESSIVE DIRECT INSURANCE | ) | |
| COMPANY, | ) | |
| Defendant. | ) | |

CJ · 2022 ᵥ 1622

## PETITION

COMES NOW Plaintiff, Billie Willis, ("Plaintiff"), and for his causes of action against

Defendant Progressive Direct Insurance Company ("Progressive Direct"), states as follows:

### PARTIES

1. Plaintiff Billie Willis is a resident of Oklahoma County, State of Oklahoma.

2. Defendant Progressive Direct is an insurance company and at all times relevant hereto,

   Progressive Direct was in the business of insurance in the State of Oklahoma.

### JURISDICTION AND VENUE

3. The facts and basis of this action substantially arose and occurred in Oklahoma County,

   Oklahoma.

4. This Court therefore has jurisdiction over the parties and the subject matter of this action,

   and venue is proper under 12 O.S. §§ 137, 187.

### PRELIMINARY STATEMENT AND FACTUAL ALLEGATIONS

5. Plaintiff was a named insured and covered by a policy of insurance "921019729" issued by

   Progressive Direct under which Progressive agreed to provide, *inter alia,* uninsured and

   underinsured ("UM/UIM") coverage for losses resulting from injury. UM/UIM coverage is

additional coverage not required by Oklahoma law which requires the policyholder to pay additional premiums.

6.  Plaintiff was involved in a collision on September 9, 2021, in which he sustained property damage to his automobile and personal injuries.

7.  On the date of loss, Plaintiff's Progressive insurance policy was in full force and effect.

8.  On September 14, 2021, Plaintiff's injury lawyer contacted Progressive notifying them of representation and asking for contact by the appropriate adjusters. (Email, **Exhibit 1**.)

9.  On October 8, 2021, Plaintiff filed a personal injury and property damage lawsuit against the at fault party, Jessica Maddox, in Oklahoma County case CJ-2021-4259.

10. On February 24, 2022, attorneys for Jessica Maddox offered the full $25,000.00 in liability coverage under her USAA insurance policy for Billie Willis' injuries.

11. On February 25, 2022, Plaintiff's injury lawyer requested a waiver of subrogation or substitution of payment under Plaintiff's Progressive Direct UM/UIM coverage. (Email, **Exhibit 2**.)

12. On February 25, 2022, Progressive Direct adjuster Michael Roell contacted Plaintiff's counsel acknowledging his representation and providing Claim Number 21-3770592. The February 25th letter specifically stated:

> In order to provide an ***accurate evaluation*** of this coverage, we will need the following information:
> 1. All medical bills relevant to this injury
> 2. All detailed medical reports which clearly indicate the full extent of our insureds injury and confirm any period of disability in which our insured was not able to work. The doctor's diagnosis, prognosis and other relevant details should be included.
> 3. List of all treating providers.

(Letter, **Exhibit 3**.) (Emphasis added.)

13. Sometime between February 25th and March 1st, Plaintiff's injury lawyer had a telephone conversation with a Progressive adjuster wherein he explained the unique nature of the impact the injuries to Billie Willis had on his day-to-day life.

14. On March 1, 2022, Plaintiff's injury lawyer, in compliance with 36 O.S. §3636(F), sent by certified mail: (1) Defendant Maddox's declaration page and policy limits settlement offer; (2) Plaintiff's medical records and bills; (3) executed Medical Authorization; (4) request for waiver of subrogation; (5) correspondence which detailed the factual circumstances of Plaintiff's wheelchair disability and the "major inconvenience" the injuries had on his life; and (6) a demand for the full $25,000 UM/UIM coverage.

> As you know, the at fault driver illegally entered my client's lane and caused him to lose control of his vehicle and impact the concrete retaining wall. The enclosed medical records explain my client's injuries, though the neck and wrist injury hampered his ability to use his wheelchair without pain and discomfort. I personally cannot relate to the trouble this must have been, but I can imagine that someone who relies on his arms to get around the house and to get in and out of his car is especially bothered by these type of injuries.
>
> As I explained to you during our phone conversation, my client is a paraplegic who actively drives and cares for himself and his wife, who is a dialysis patient. This wreck caused a major inconvenience to his ability to do these things.

(Letter, **Exhibit 4**.)

15. The March 1st letter was signed for and received by Progressive Direct on March 7, 2022. (Green Card, **Exhibit 5**.)

16. On March 8, 2022, Progressive expressly waived subrogation. (Letter, **Exhibit 6**.)

17. Less than 48 hours after receiving the §3636(F) information, on March 9, 2022, pursuant to their promise to "provide an accurate evaluation" Progressive Direct "completed an evaluation" of the UM/UIM claim for Plaintiff and denied coverage under the UM/UIM policy.

Therein, Progressive determined the evaluation to be within the $25,000 limits of Defendant

Maddox's USAA policy limits and moved the file to "inactive status" stating:

> I have completed an evaluation of my insured Billie Willis' injury with regard to the
> underinsured motorist coverage. Based on the information provided by your office, I have
> evaluated my insured's injury to be within the available limits of the liability carrier. As such,
> ***the underinsured motorist coverage does not apply at this time and I have moved my file***
> ***to inactive status. Should any new information become available for reconsideration,***
> please contact me or forward all such documentation to my attention.

(Letter, **Exhibit 7**.) (Emphasis added.)

18. Plaintiff's claim for coverage and payment under his UM/UIM policy was denied by

    Progressive on March 9, 2022, unless Mr. Willis or his attorney had "any new

    information.....for reconsideration." (*See* **Exhibit 7**.)(emphasis added)

19. Plaintiff's history and medical records submitted to Progressive show that he was confined to

    a wheelchair as a paraplegic and in the collision on September 9th he suffered injuries to his

    right wrist; left wrist, right hand, left hand, cervical spine, which were not completely

    alleviated over his three (3) months of treatment.

20. Plaintiff does not use a motorized wheelchair but instead uses a manual wheelchair to

    mobilize himself.  During the time of treatment for his injuries he was also taking care of his

    wheelchair bound wife and transporting her to her dialysis appointments multiple times a

    week which would require him to push her wheelchair while mobilizing his own wheelchair

    and help her into and out their vehicle. These activities caused Plaintiff additional pain.

21. Despite his obvious pain and injuries to his wrists and hands which he uses to propel himself,

    Plaintiff continued to do the housework and grocery shopping, but was prevented from doing

    the extracurricular exercises and wheelchair athletic endeavors to include training and racing,

as well as hunting, that brings him joy. The pain he endured in his daily responsibilities and loss of the ability to do the activities he loved caused Plaintiff to suffer non-economic damages. Progressive intentionally failed to consider or investigate these and other critical facts about Plaintiff's non-economic damages before denying his claim of coverage.[1]

22. Upon information and belief, Progressive did not follow Oklahoma statutory and common law or adhere to their own policies, procedures, and guidelines in evaluating Billie Willis' UM/UIM claim.

23. On March 21, 2022, Plaintiff's injury lawyer sent correspondence inquiring of and contesting the valuation placed on Plaintiff's UM/UIM claim asking why "you never asked to come see him so could get an idea of the incredible difficulties this injury caused in his day-to-day living." (Letter, **Exhibit 8**.)

24. On March 21, 2022, Progressive adjuster formally requested a recorded statement from Billie Willis "so we can better understand the impact of the loss on his daily life." (Email, **Exhibit 9**.) This written request for a recorded statement to speak with Mr. Willis is an admission by Progressive that they did not perform a reasonable, full, or complete investigation and did not perform as they stated an "accurate evaluation" of Plaintiff's UM/UIM claim before denying coverage and placing his claim on inactive status.

---

[1] "Noneconomic damages" means nonpecuniary harm that arises from a bodily injury that is the subject of a civil action, including damages for pain and suffering, loss of society, consortium, companionship, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, education, disfigurement, mental anguish and any other intangible loss;
Beason v. I. E. Miller Servs., Inc., 2019 OK 28, ¶ 4, 441 P.3d 1107, 1110

25. Progressive spent less than two (2) days before they denied Plaintiff's claim for coverage and never spoke with or attempted to speak with their insured before denying the claim.

26. Pursuant to 36 O.S. §3636(F), Progressive had sixty (60) days to complete a reasonable, full, and complete investigation into the circumstances of Plaintiff's claim and the policy of insurance included language requiring Plaintiff to "cooperate with **us** in any matter concerning a claim or lawsuit", and to "answer all reasonable questions **we** may ask as often as **we** may reasonably require."

27. On March 21, 2022, Plaintiff's injury lawyer responded to the March 21st request for a recorded statement by asking Progressive to answer his concerns contained in his earlier March 21st correspondence. (Letter, **Exhibit 10**.)

28. On March 22, 2022, Progressive adjuster Michael Roell, responded by claiming that "Progressive has not denied coverage for Billie Willis' underinsured motorist claim" and addressing the concerns raised in the March 21st correspondence stated:

    As for your questions please see below:

    1. I am not aware of USAA's evaluation process nor have any insight as any business decisions they may have made to secure a release for their insured.

    2. Mr. Willis' physical condition pre-loss and post-loss were considered in the non-economic aspect of Mr. Willis' evaluation; however, I would like to speak directly to my insured to ensure that I have a complete picture of his pre-loss baseline and any impact to daily activities and accommodations that may have been made because of his injury.

    3. To date, my evaluation has considered incurred medical bills of $10,034. No loss of earnings claim has been presented. The injuries I considered in my evaluation consisted of a cervical sprain/strain, thoracic sprain/strain, and bilateral wrist sprains.

    4. To address this question, I have requested a recorded statement with Mr. Willis. You state in your correspondence that we have waived our right to speak with our insured by denying his claim. Respectfully, I disagree. No denial has been issued and the terms of his policy with us make it quite clear that Mr. Willis has a duty under the policy to provide this statement to us. If you need a copy of the policy language, please let me know and I will be happy to provide a copy to you.

5. All information as provided to us is considered in an evaluation performed, and maybe you misunderstood me, but the evaluation as I discussed with you on the phone is not solely based on the medical bills. Both economic and non-economic damages are considered. To further clarify, I follow the guidelines of the Oklahoma Uniform Jury Instruction 4.1 as well as my education, experience, and training in determining the value of an injury claim.

(Letter, **Exhibit 11**.)

29. The March 22nd correspondence states that "Mr. Willis' physical condition pre-loss and post-loss were considered in the non-economic aspect of Mr. Willis' evaluation" and that Progressive adjuster Michael Roell evaluation considered "Both economic and non-economic damages". Mr. Roell never spoke with Billie Willis before he completed his evaluation and denied coverage in less than two days but somehow determined Mr. Willis' non-economic damages. Id.

30. Mr. Roell also stated that he "follow[ed] the guidelines of the Oklahoma Uniform Jury Instruction 4.1" in determining the value of Billie Willis' claim but again did not speak with Mr. Willis to get a complete picture of the non-economic damges. Id.

31. Mr. Roell, fourteen (14) days *after* denying his insured's claim for benefits admits he did not complete a thorough and "accurate evaluation"[2] when he states "I would like to speak directly to my insured ***to ensure that I have a complete picture*** of his pre-loss baseline and any impact to daily activities and accommodations that may have been made because of his injury. Id. (emphasis added)

32. On March 22, 2022, Plaintiff's injury lawyer responded to the March 22nd Progressive correspondence renewing the demand for the $25,000 UM/UIM policy. (Letter, **Exhibit 12**.)

---

[2] February 25, 2022 correspondence from Progressive (**Exhibit 3**.)

33. On March 23, 2022, Progressive sent a letter claiming they were "currently investigation" Mr. Willis' claim and that the investigation was being handled under a "Reservation of Rights". (Letter, **Exhibit 13**.)

34. In the March 23rd letter, Progressive once again claims their "evaluation is within the tort carrier's limits of $25,000 and a valid underinsured motorist claim has not yet been presented." Id. (emphasis added)

35. Progressive admits that they did not do a full and complete investigation into the claim before coverage was denied stating "You have confirmed there are no other records to submit for review so ***speaking directly with Mr. Willis is essential so that I can better understand any potential impact to daily activities from this loss*** that may not have been captured in the medical records provided. Id. (emphasis added)

36. Not to be outdone by their own failure to question Mr. Willis before denying his claim, Progressive then threatens to withhold coverage for their initial unreasonable and incomplete investigation by stating "Based on the facts as we understand them and these policy provisions, ***there may be no coverage because we have been unable to obtain your cooperation in granting us access to our own insured***." Id. (emphasis added). This threat to withhold coverage came less than two days (March 21st-March 23rd) after Plaintiff's lawyer reasonably posed the question as to why Progressive never spoke to their insured prior to denying the claim.

37. Despite never requesting an interview or recorded statement before denying coverage on March 9th, Progressive now claims that Mr. Willis, in order to be afforded the coverage he pays for, must timely comply with their demands for a recorded statement by stating "In

order to complete our ongoing evaluation of Mr. Willis' claim, we are requesting that you

schedule a recorded statement with myself and Billie Willis within 15 days of the date of this

letter." Id.

38. Progressive further attempts by way of their "Reservation of Rights" letter to improperly and

unreasonably withdraw or reserve their prior written waiver of subrogation on March 8th

when they state:

> Our investigation of this claim is ongoing….***Progressive reserves its rights to*** deny coverage
> under the policy, to refuse to make payments under the policy, to litigate any coverage issues,
> to withdraw from your defense, ***and/or to seek reimbursement of any amounts paid under***
> ***the policy for loss, damage, costs, or fees***.

39. Plaintiff is informed and believes that Progressive purposefully, improperly, unreasonably,

and without just cause completed an improper and incomplete investigation into his UM/UIM

claim and their post-claim denial demand for a timely recorded statement is proof of their

incomplete and unreasonable investigation.

40. Progressive's post-denial representations that the the investigation of Billie Willis' claim is

"ongoing" and they were "currently investigating" the claim is directly contrary to their the

March 9th correspondence which stated "I have **completed** an evaluation of my insured Billie

Willis' injury with regard to the underinsured motorist coverage…." and "**I have moved my file**

**to inactive status**." Progressive's representations that the claim and investigation are ongoing

only occurred after they were informed that their investigation was improper and

incomplete.

## COUNT I: BREACH OF CONTRACT AGAINST PROGRESSIVE DIRECT

41. Plaintiff specifically adopts, incorporates, and re-pleads by reference the proceeding paragraphs of this Petition.[3]

42. Progressive Direct entered into a written insurance contract with Plaintiff to provide UM/UIM coverage for bodily injury damages up to the coverage amount of $25,000.00.

43. Plaintiff was a named insured on the policy and paid all premiums due and performed all obligations under his policy of insurance with the reasonable expectation of receiving the benefit of his UM/UIM benefits.

44. On September 9, 2021, Plaintiff suffered bodily injury while operating his motor vehicle insured under his Progressive policy. Pursuant to the terms of the subject Policy, this constituted a covered loss.

45. Pursuant to the policy and Oklahoma law Progressive Direct had a duty to timely and reasonably investigate, handle, and pay Plaintiff's losses when a UM/UIM claim was made.

46. That Progressive Direct breached the policy when it failed to timely and reasonably investigate in the handling of Plaintiff's UM/UIM claim.

47. That the investigation and evaluation of Plaintiff's UM/UIM claim was unreasonable and defective because Progressive never spoke with their insured to get a full and complete

---

[3] 12 O.S 2008; Gens v. Casady School, 2008 OK 5, 177 P.3d 565 (all allegations in the Petition are taken as true); Ashcroft v. Iqbal, 556 U.S. 662, 674, 129 S. Ct. 1937, 1947 (2009)(the court must consider the allegations contained within the four corners of the complaint); In re Zagg, Inc. Sec. Litig., 797 F.3d 1194, 1201 (10th Cir. 2015) (a court considers the complaint in its entirety).

understanding of the physical pain and suffering, mental pain and suffering, nature and extent of Plaintiff's injuries, and allowable non-economic damages suffered by their insured.

48. That Plaintiff made demand on Defendant for investigation and payment of the policy benefits and Progressive has denied and unreasonably delayed Plaintiff's claim for benefits under the policy by relying upon an incomplete and faulty UM/UIM claim evaluation which has unnecessarily delayed his claim.

49. As a direct result of the action of Progressive Direct's breach of the insurance policy, Plaintiff has suffered actual damages.

### COUNT II:  BREACH OF THE DUTY OF GOOD FAITH & FAIR DEALING AGAINST PROGRESSIVE DIRECT

50. Plaintiff specifically adopts, incorporates, and re-pleads by reference the proceeding paragraphs of this Petition.[4]

51. Progressive Direct has a duty to deal fairly and in good faith with Plaintiff and all their insureds.

52. Plaintiff made demand on Defendant for payment of the policy benefits and met all conditions precedent for payment of those benefits.

53. Defendant breached its duty to Plaintiff. The actions alleged herein violate the Defendant's duty of good faith and fair dealing with the Plaintiff.

54. Upon information and belief, Plaintiff alleges that it is the corporate goal of the Defendant to increase its profits by reducing, delaying or avoiding the full and fair payment of claims.

---

[4] 12 O.S 2008; Gens v. Casady School, 2008 OK 5, 177 P.3d 565 (all allegations in the Petition are taken as true); Ashcroft v. Iqbal, 556 U.S. 662, 674, 129 S. Ct. 1937, 1947 (2009)(the court must consider the allegations contained within the four corners of the complaint); In re Zagg, Inc. Sec. Litig., 797 F.3d 1194, 1201 (10th Cir. 2015) (a court considers the complaint in its entirety).

55. Progressive Direct was required under the policy, Oklahoma Statutes, and Oklahoma Law to take reasonable actions in handling Plaintiff's claim.

56. The actions of Progressive Direct in handling Plaintiff's claim were improper and unreasonable in that Defendant did not perform a full and complete investigation and relied upon a faulty and defective evaluation of Plaintiff's damages to deny his claim.

57. Progressive has delayed Plaintiff's claim by their incomplete, unreasonable, and improper handling and investigation of his claim.

58. Progressive Direct failed to deal fairly and act in good faith toward Plaintiff in the investigation, handling, and denial of his claim.

59. In their February 25th letter, Progressive Direct only requested medical bills and records in order to perform their evaluation:

> In order to provide an **_accurate evaluation_** of this coverage, we will need the following information:
> 1. All medical bills relevant to this injury
> 2. All detailed medical reports which clearly indicate the full extent of our insureds injury and confirm any period of disability in which our insured was not able to work. The doctor's diagnosis, prognosis and other relevant details should be included.
> 3. List of all treating providers

(Emphasis added.) (*See* **Exhibit 3**.)

60. Upon information and belief, Plaintiff further alleges that the actions of the Progressive Direct in only requesting medical records and bills during the handling of his claim was not an isolated event, but rather were consistent with approved company-wide practices or policies which reward and encourage the systematic reduction, delay or avoidance of the proper payment of claims.

61. Progressive Direct did not conduct an investigation reasonably appropriate under the known circumstances of the claim. Progressive Direct ignored and did not investigate the essential and critical facts of the claim.

62. By failing to perform a reasonable, proper, appropriate, and accurate investigation into Mr. Willis' claim, Progressive Direct intentionally created a sham defense of the claim by intentionally disregarding undisputed facts supporting Mr. Willis' claim.

63. Progressive Direct admitted that they failed to perform an "accurate evaluation" and investigation when they denied his claim without speaking to Plaintiff to determine his physical pain and suffering, mental pain and suffering, nature and extent of his injuries, and compensatory damages by stating: "You have confirmed there are **_no other records_** to submit for review so **_speaking directly with Mr. Willis is essential so that I can better understand any potential impact to daily activities from this loss_** that may not have been captured in the medical records provided."

64. This post-denial request for a recorded statement has unnecessarily caused Plaintiff emotional distress in having his claim denied as well as enduring the extended delay and uncertainty concerning his claim due to Progressive's unreasonable actions.

65. After performing an admittedly incomplete investigation and denying his claim, Progressive Direct demands in writing that their insured submit to time-limited demand (15-days) for a recorded statement under threat of denying coverage after his claim was already placed on "inactive status" pending any "new information" becoming available for reconsideration.

66. Progressive's time-limited demand for cooperation in securing a recorded statement under threat of forfeiting coverage is bad faith conduct. The threat came just two-days (March 21st-

March 23rd) after Plaintiff's injury counsel reasonably questioned Progressive Direct about

the need for a recorded statement post-denial of the claim but never stated that he would

not present Mr. Willis for a statement.

> "Based on the facts as we understand them and these policy provisions, ***there may be no coverage because we have been unable to obtain your cooperation in granting us access to our own insured***."(Emphasis added.)

67. Not to be outdone by threatening to withhold coverage for their own failure to perform the

simple task of speaking with their insured before denying the claim, Progressive intentionally

and knowingly interfered with Plaintiff's rights by expressly reserving their subrogation rights

in the March 23rd Reservation of Rights letter. This reservation of subrogation came <u>after</u>

Progressive Direct previously submitted a written waiver of subrogation on March 8th. This

is bad faith conduct in violation of settled Oklahoma law.[5]

> Our investigation of this claim is ongoing....***Progressive reserves its rights to*** deny coverage under the policy, to refuse to make payments under the policy, to litigate any coverage issues, to withdraw from your defense, ***and/or to seek reimbursement of any amounts paid under the policy for loss, damage, costs, or fees***.

68. In its handling of Plaintiff's claims, and as a matter of standard business practice in handling

like claims, Defendant breached their duty to deal fairly and act in good faith towards the

Plaintiff by:

(a) Failing to properly and timely investigate his claim;

(b) Failing to adopt and implement reasonable standards for the prompt investigation and

handling of claims arising under such policies;

(c) Withholding payment of benefits by relying upon improper, incomplete, and

unreasonable evaluations;

---

[5] <u>Barnes v. Oklahoma Farm Bureau Mutual Insurance Company</u>, 2000 OK 55, 11 P.3d 162

(d) Refusing to honor his claim by knowingly misconstruing and misapplying provisions of the Policy;

(e) Refusing to honor his claim by knowingly misconstruing and misapplying standard insurance principles;

(f) Refusing to honor his claim by knowingly misconstruing and misapplying Oklahoma law;

(g) Failing to give equal consideration to their insured Billie Willis in resolving his claim;

(h) Not attempting in good faith to effectuate a prompt, fair, and equitable settlement of his claim;

(i) Failing to properly investigate and evaluate any investigation that was performed, including but not limited to, intentionally disregarding the undisputed facts concerning his claim;

(j) Unreasonably delaying and denying Billie Willis' policy benefits, all in violation of the covenant of good faith and fair dealing and resulting in a financial benefit to Defendant;

(k) Threatening to withhold policy benefits after denying unless Plaintiff complied with time-limited demands for cooperation.

(l) Forcing Plaintiff to retain counsel to secure his rights under the policy and settled Oklahoma law.

69. Defendant's standard business practice and bad faith motivation was to save money and cheat insureds such as Plaintiff. Instead of properly investigating and paying Plaintiff and other Oklahoma insureds' UM/UIM claims, Progressive as a business practice does not speak to their insureds to fully investigate the non-economic damages their insureds have suffered and instead relies solely on the medical bills and records in completing their evaluation.

70. As a direct and proximate result of Progressive's breach of the implied covenant of good faith and fair dealing, Plaintiff and all others similarly situated have been damaged have sustained financial losses, mental and emotional distress, consequential damages, and have been

damaged in an amount in excess of $75,000.00, exclusive of attorney's fees, costs, and interest.

71. Defendant's conduct was intentional, willful, malicious, and committed in utter reckless disregard of Plaintiff's rights, and is sufficiently egregious in nature so as to warrant the imposition of punitive damages.

72. Plaintiff further alleges that Progressive Direct enjoyed increased financial benefits and ill-gotten gains as a direct result of the wrongful routine business practice/plan/scheme whereby Progressive Direct intentionally fails to contact their insureds to determine the physical pain and suffering, mental pain and suffering, nature and extent of injuries, and compensatory damages suffered by their insureds resulting in an improper and incomplete investigation and underpayment of claims for damages under UM/UIM policies.

**COMBINED PRAYER FOR RELIEF**

WHEREFORE, premises considered, Plaintiff prays for judgment in his favor and against Defendant Progressive Direct for:

   a) Payment for all contractual benefits for all coverages promised to Plaintiff under the policy of insurance, with interest on all amounts due;

   b) Actual and compensatory damages in an amount in excess of $75,000.00 (Seventy-Five Thousand Dollars);

   c) Punitive damages in an amount in excess of $75,000.00 (Seventy-Five Thousand Dollars)

   d) Disgorgement of the increased financial benefits derived by Defendant as a result of its wrongful conduct;

e) Pre and post-judgment interest, costs, reasonable attorney's fees; and

f) Any other relief the Court deems just and equitable.

Respectfully submitted,

Jason Waddell, OBA No. 30761
Jason Waddell, PLLC
222 NW 13th Street
Oklahoma City, OK  73103
Telephone:    (405) 232-5291
Facsimile:    (405) 708-7871
Jason@JasonWaddellLaw.com
**ATTORNEY FOR PLAINTIFF**

ATTORNEY'S LIEN CLAIMED
JURY TRIAL DEMANDED

**From:** Kevin Bennett
**Sent:** Tuesday, September 14, 2021 9:48 AM
**To:** joshua_smith@progressive.com
**Cc:** Kathy Walker <Kathy@bennettlawokc.com>
**Subject:** Billie Willis; Claim No. 21-3770592

Joshua,

Please accept this email as confirmation that I represent Billie Willis in all matters related to an automobile crash that happened on September 9, 2021.

My client suffered property damage and bodily injuries.  My client is renting a vehicle today.

Please have the appropriate adjusters contact me as soon as possible.

Thank you.

Respectfully,

Kevin Bennett

**Kevin Bennett**
**The Bennett Law Firm**
**414 NW 4th Street, Suite 100**
**Oklahoma City, OK  73102**
**(405) 272-0303**



**From:** Kevin Bennett
**Sent:** Friday, February 25, 2022 12:10 PM
**To:** a139338@progressive.com
**Cc:** Kathy Walker <Kathy@bennettlawokc.com>
**Subject:** Billie Willis; Claim No. 21-3770592

Robert Stephens,

Thank you for taking the time to visit with me this morning about my client, Billie "Hot Wheels" Willis.  Please accept this email as my formal notice of representation in this matter.  I will be handling Billie's UIM claim.  Please have the assigned adjuster contact me as soon as possible.

As we discussed, Billie was injured in the September 9, 2021, auto collision.  We filed suit in Oklahoma County (CJ-2021-4259) and that suit is pending.  We did not name Progressive Insurance as a defendant.  The at-fault party defendant, Jessica Maddox, carried minimal liability insurance coverage in the amount of $25,000.  Yesterday, the defendant insurance carrier, USAA, tendered its policy limits and asked for a full release and dismissal with prejudice.  Obviously, we are not agreeing to that unless and until we secure your company's permission and decision on subrogation and/or substitution of payment.

I realize your company does not have any medical information for my client, so we will provide that to the assigned adjuster.

Again, thank you and have a great day.

Kevin


**Kevin Bennett**
**The Bennett Law Firm**
**414 NW 4ᵗʰ Street, Suite 100**
**Oklahoma City, OK  73102**
**(405) 272-0303**



EXHIBIT
2

PROGRESSIVE CLAIMS
7666 E. 61ST STREET
SUITE 450
TULSA, OK 74133



**Underwritten By:**
**Progressive Direct Insurance Company**

| | |
|---|---|
| Claim Number: | 21-3770592 |
| Loss Date: | September 9, 2021 |
| Loss State: | OK |
| Document Date: | February 25, 2022 |
| Page 1 of 1 | |

THE BENNETT LAW FIRM
KEVIN BENNETT
414 NW 4TH ST
STE 100
OKLAHOMA CITY, OK 73102

**claims.progressive.com**
Track the status and details of your
claim, e-mail your representative or
report a new claim.

# Claim Information

Please let this letter serve as acknowledgement of your representation of Billie Willis Jr.

This letter is to advise I am the handling adjuster assigned to assist with the future handling of the Uninsured /Underinsured Motorist benefit for our insured Billie Willis Jr. I will contact your office periodically to discuss the status of this claim. Please forward all future correspondence to my attention.

This policy provides Uninsured / Underinsured Motorist coverage with $25,000 per person $50,000 per accident limits. This coverage is available if there is someone, other than our insured, who is legally responsible for the accident and who does not have insurance, or enough insurance, to fully compensate our insured for their injury. Med-Pay coverage was not purchased for the date of loss.

In order to provide an accurate evaluation of this coverage, we will need the following information:

1. All medical bills relevant to this injury

2. All detailed medical reports which clearly indicate the full extent of our insureds injury and confirm any period of disability in which our insured was not able to work. The doctor's diagnosis, prognosis and other relevant details should be included.

3. List of all treating providers

If you have any questions or information to provide, please contact me at the phone listed below.

Sincerely,


MICHAEL ROELL
Claims Department
1-918-505-4391
1-800-PROGRESSIVE (1-800-776-4737)

Form Z587 (01/08)

```
EXHIBIT

   3
```

# THE BENNETT LAW FIRM

## KEVIN BENNETT

| | | |
|---|---|---|
| Telephone<br>405.272.0303 | 414 N.W. 4th Street, Suite 100<br>Oklahoma City, OK 73102 | Email<br>kevin@bennettlawokc.com |

March 1, 2022

Mike Roll
Progressive Insurance Company
14000 Quail Springs Parkway
Oklahoma City, OK  73134

Re:     Billie Willis
        Claim # 21-3770592

Dear Mr. Roll:

Enclosed please find copies of my client's medical bills and records.  Also enclosed is a copy of the tendered limits of coverage from the liability carrier and an executed Medical Authorization.  At this time, my client respectfully demands payment of the limits of his UIM coverage.  Please let me know if you intend to waive subrogation or make substitute payment for the tort-feasor.

As you know, the at fault driver illegally entered my client's lane and caused him to lose control of his vehicle and impact the concrete retaining wall.  The enclosed medical records explain my client's injuries, though the neck and wrist injury hampered his ability to use his wheelchair without pain and discomfort.  I personally cannot relate to the trouble this must have been, but I can imagine that someone who relies on his arms to get around the house and to get in and out of his car is especially bothered by these type of injuries.

As I explained to you during our phone conversation, my client is a paraplegic who actively drives and cares for himself and his wife, who is a dialysis patient.  This wreck caused a major inconvenience to his ability to do these things.

I have evaluated this claim to be worth in excess of all available insurance coverage ($25,000 liability & $25,000 UIM).  Please let me know your decision.

Respectfully,

Kevin Bennett
KTB/kw
Enclosures

EXHIBIT
4

**Kevin Bennett**

| | |
|---|---|
| **From:** | wmpettigrew@aol.com |
| **Sent:** | Thursday, February 24, 2022 1:28 PM |
| **To:** | Kevin Bennett |
| **Subject:** | Re: Willis v Maddox |

Kevin Bennett                              via email:
414 NW 4th St., Ste. 100
Oklahoma City, OK 73102

RE: Insured : Ms. Jessica Maddox
Alis No. : 2021-55059
Ref. No. : 1304 67 63 L/R #15
Loss Date : September 9, 2019
My File : Billie Willis vs. Jessica Maddox
District Court of Oklahoma County
Case No. CJ-2021-4259

Dear Mr. Bennett:

   This is to confirm my settlement offers of this date. I have previously sent my client's Dec page reflecting policy limits of $25,000. Defendant hereby offers his policy limits of $25,000 in exchange for a full and final release and a dismissal of this case with prejudice. To complete the settlement I will need your W-9 and check instructions. Because each provider has a separate tax id, I can only place 1 provider on each check. When you send check instructions, Please send the providers tax id or W-9. Please email your instructions and W-9 to Admin@plpfirm.com I think we should strike any depositions that we had set and advise the Court of pending settlement.



# USAA CASUALTY INSURANCE COMPANY

AI

(A Stock Insurance Company)
9800 Fredericksburg Road - San Antonio, Texas 78288

## OKLAHOMA AUTO POLICY
## RENEWAL DECLARATIONS

Stat
OK
PO
EI

**Named Insured and Address**

0:

JESSICA L MADDOX
1525 NW 45TH ST
OKLAHOMA CITY OK 73118-4811

## Description of Vehicle(s)

| VEH | YEAR | TRADE NAME | MODEL | BODY TYPE | ANNUAL MILEAGE |
|-----|------|-----------|--------|-----------|--------|
| 02 | 20 | JEEP | COMPASS | 4D | 12000 |

The Vehicle(s) described herein is principally garaged at the above address
VEH 02    OKLAHOMA CITY OK 73118-4811

**This policy provides ONLY those coverages where a pl may be reduced by policy provisions and may not b vehicles for which a premium is listed unless specifically**

| COVERAGES ("ACV" MEANS ACTUAL CASH VALUE) | LIMITS OF LIABILITY | | VEH 02 D=DED AMOUNT | 6-MONTH PREMIUM $ |
|---|---|---|---|---|
| PART A - LIABILITY | | | | |
| BODILY INJURY | EA PER $ | 25,000 | | |
| | EA ACC $ | 50,000 | | 129.3! |
| PROPERTY DAMAGE | EA ACC $ | 25,000 | | 158.1( |
| PART B - MEDICAL PAYMENTS | | | | |
| | EA PER $ | 5,000 | | 62.0( |
| PART C - UNINSURED MOTORISTS | | | | |
| BODILY INJURY | EA PER $ | 25,000 | | |
| | EA ACC $ | 50,000 | | 99.7! |
| PART D - PHYSICAL DAMAGE COVERAGE | | | | |

2

**HIPPA COMPLIANT AUTHORIZATION FOR RELEASE AND
DISCLOSURE OF MEDICAL RECORDS AND INFORMATION**

TO:  ALL PHYSICIANS, HOSPITALS, DENTISTS, CHIROPRACTORS, NURSES, TECHNICIANS, THERAPISTS, HEALTH CARE PROVIDERS, PHARMACIES, AND CUSTODIAN OF MEDICAL, HEALTH AND HOSPITAL RECORDS:

I, __BILLIE WILLIS, JR.__ , Social Security No. _____ , date of birth _____ ,ereby waive my medical privilege and my rights of privacy and privilege as to any and all of my protected Individually Health Information as defined, set forth and promulgated by the Health Insurance Portability and Accountability Act of 1996 ("HIPPA") and authorize and direct you to release, disclose and furnish to:

**PROGRESSIVE INSURANCE COMPANY, any and all:**

Medical records, physical examination records, treatment records, diagnostic evaluation, prognoses, opinions and/or documents reflecting descriptions and nature of disability, diseases, condition, hospitalization, surgical procedure reports, all other reports, office notes, nurses notes, any other handwritten notes, initial intake questionnaires and patient information sheets, medical histories, sign-in sheets, computer records, x-rays, MRI, CT scan, laboratory and other diagnostic test results, pharmaceutical records, prescriptions, medicines and drugs furnished, referrals, missed appointments, workers' compensation claim information and documents filed or compiled in opposition to such claims, physical therapy records, invoices, statements, bills, payments and correspondence received from or rendered to other persons.

In addition, you may allow any physician appointed by the above-named firm to examine any of my films, x-rays, or records. You are further authorized and directed to permit the said parties to make copies, including copies, of all documents, materials, notes and records, including duplicate x-rays and other films, which are in your possession or in your control in accordance with the foregoing. For the purpose of: LEGAL

The undersigned hereby states: I am aware that this authorization for release and disclosure expires two (2) years from the date of execution below.

The undersigned hereby states: I am aware that once the information authorized for release is disclosed, it is no longer considered protected health information (PHI), and may be subject to re-disclosure by the receiving person and/or persons, firms, or other entity and therefore, would no longer be protected by Federal privacy regulations and laws.

The undersigned hereby states: I am aware that I may revoke this authorization for release and disclosure at any time by notifying, in writing, Progressive Insurance Company, of my desire to revoke. I am further aware that any use, action, disclosure or release made in reliance of this document prior to revocation is not included or considered as part of or subject to the revocation.

The undersigned hereby states: **I understand that the information authorized for release and disclosure may include information which may indicate the presence of a communicable or non-communicable or venereal or sexually transmitted disease, acquired immunodeficiency syndrome (AIDS), or human immunodeficiency virus (HIV), Hepatitis, Syphilis, Gonorrhea, or information about behavioral or mental health services, and treatment for alcohol and drug abuse.**

The undersigned hereby states: I am aware that a photostatic copy of this authorization for release and disclosure is to be given the same force and effect as the original.

DATED THIS _____ DAY OF _____ , 20____

_Signature_



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Mike Roll
Progressive Insurance Company
14000 Quail Springs Parkway
Oklahoma City, OK 73134

9590 9402 6802 1074 1942 75

2. Article Number (Transfer from service label)
7013 2630 0000 8443 605b

PS Form 3811, July 2020 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:           ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt



**EXHIBIT**

5

PROGRESSIVE CLAIMS
7666 E. 61ST STREET
SUITE 450
TULSA, OK 74133



THE BENNETT LAW FIRM
KEVIN BENNETT
414 NW 4TH ST
STE 100
OKLAHOMA CITY, OK 73102

**Underwritten By:**
**Progressive Direct Insurance Company**

Claim Number:     21-3770592
Loss Date:        September 9, 2021
Loss State:       OK
Document Date:    March 8, 2022
Page 1 of 1

**claims.progressive.com**
Track the status and details of your
claim, e-mail your representative or
report a new claim.

# Claim Information

Please let this communication serve as our agreement that Progressive Direct Insurance Company is waiving subrogation with respect to the underlying bodily injury limits of $25,000.00 being made available to our insured, Billie Willis Jr.

Sincerely,

MICHAEL ROELL
Claims Department
1-918-505-4391
1-800-PROGRESSIVE (1-800-776-4737)

Form Z587 (01/08)

**EXHIBIT**
6

**From:** Michael Roell <MICHAEL_ROELL@progressive.com>
**Sent:** Wednesday, March 9, 2022 4:25 PM
**To:** Kevin Bennett <Kevin@bennettlawokc.com>
**Subject:** Progressive Claim 21-3770592 - Willis, Billie

# PROGRESSIVE

Good afternoon Kevin,

Thank you for taking the time to speak with me regarding my insured Billie Willis. As discussed I've attached a waiver of subrogation to provide to USAA regarding their liability claim. I've also attached a letter outlining that our evaluation is within USAA's limits.

Should you have any additional questions or information to provide please let me know.

Sincerley,

Michael Roell

Claims Generalist
Progressive Casualty Insurance Company
7666 E 61st St, Ste 450
Tulsa OK 74133
P: (918) 505-4391
My Hours of Availability:  Monday through Friday 8am-5pm

The contents of this e-mail and any attachments are confidential and may be legally privileged, intended solely for the addressee.  If you are not the intended recipient, be advised that any use, dissemination, distribution, storage (including electronic) or copying of this e-mail is strictly prohibited.  If you receive this e-mail in error, please notify the sender immediately by reply e-mail and destroy the message and its attachments.

PROGRESSIVE CLAIMS
7666  E. 61ST STREET
SUITE 450
TULSA, OK 74133

**PROGRESSIVE**®

**Underwritten By:**
**Progressive Direct Insurance Company**

Claim Number:    21-3770592
Loss Date:    September 9, 2021
Loss State:    OK
Document Date:    March 9, 2022
Page 1 of 1

THE BENNETT LAW FIRM
KEVIN BENNETT
414 NW 4TH ST
STE 100
OKLAHOMA CITY, OK 73102

**claims.progressive.com**
Track the status and details of your
claim, e-mail your representative or
report a new claim.

# Claim Information

I have completed an evaluation of my insured Billie Willis' injury with regard to the underinsured motorist coverage. Based on the information provided by your office, I have evaluated my insured's injury to be within the available limits of the liability carrier. As such, the underinsured motorist coverage does not apply at this time and I have moved my file to inactive status. Should any new information become available for reconsideration, please contact me or forward all such documentation to my attention.

Thank you for allowing me the opportunity to assist you in this matter.

Sincerely,

MICHAEL ROELL
Claims Department
1-918-505-4391
1-800-PROGRESSIVE (1-800-776-4737)

Form Z587 (01/08)

**EXHIBIT**

**7**

**From:** Michael Roell <MICHAEL_ROELL@progressive.com>
**Sent:** Wednesday, March 9, 2022 4:25 PM
**To:** Kevin Bennett <Kevin@bennettlawokc.com>
**Subject:** Progressive Claim 21-3770592 - Willis, Billie

## *PROGRESSIVE*

Good afternoon Kevin,

Thank you for taking the time to speak with me regarding my insured Billie Willis. As discussed I've attached a waiver of subrogation to provide to USAA regarding their liability claim. I've also attached a letter outlining that our evaluation is within USAA's limits.

Should you have any additional questions or information to provide please let me know.

Sincerley,

Michael Roell

Claims Generalist
**Progressive Casualty Insurance Company**
7666 E 61st St, Ste 450
Tulsa OK 74133
P: (918) 505-4391
My Hours of Availability:  Monday through Friday 8am-5pm

The contents of this e-mail and any attachments are confidential and may be legally privileged, intended solely for the addressee.  If you are not the intended recipient, be advised that any use, dissemination, distribution, storage (including electronic) or copying of this e-mail is strictly prohibited.  If you receive this e-mail in error, please notify the sender immediately by reply e-mail and destroy the message and its attachments.

# THE BENNETT LAW FIRM

### KEVIN BENNETT

Telephone
405.272.0303

414 N.W. 4th Street, Suite 100
Oklahoma City, OK 73102

Email
kevin@bennettlawokc.com

March 21, 2022

Michael Roell
Progressive Claims
7666 E. 61st Street, Suite 450
Tulsa, OK  74133

Re:     UIM Claim of Billie Willis
        Claim #21-3770592

Dear Mr. Roell:

Please accept this letter as my client's response to your March 9, 2022, letter, as well as the conversation you and I had on that date.  My client has the following questions and concerns:

First, my client asked me why the adverse insurance company, USAA, evaluated his claim to be worth more money than his own insurance company, Progressive.  I could not give him any type of answer, as I am puzzled by it as well.  Could you please explain how and/or why the adverse company, which owes him no duty to be fair or reasonable, found the value of his claim to be higher than Progressive?  Also, did you reach out to that adjuster to discuss his/her findings?

Second, I would like to know the separate value you placed on Mr. Willis' unique situation of being a paraplegic with injuries to his upper body.  In other words, did you increase the normal value you would assign for neck, back and wrist injuries due to the extra hardship a person suffers when using his upper body to operate a wheelchair, and if so by how much?  Also, did you ever look at the type of wheelchair used by Mr. Willis?  Did you take in to account how he gets in and out of his car by himself, how he runs his home while caring for his wife on dialysis and how that increased his pain and suffering value, and if so by how much?

Third, your letter says you evaluated Mr. Willis' injury to be "*within the available limits of the liability carrier*".  Please tell me the dollar amount and/or dollar range you placed on this claim. I know we can discover that information in formal litigation, but obviously, my client does not want to sue Progressive just to learn the amount of your evaluation.  I trust that will not be a problem for you.


EXHIBIT
8

KEVIN BENNETT
LAWYER

Michael Roell
March 21, 2022
Page 2

Fourth, my client asked me why you never asked to come see him so you could get an idea of the incredible difficulties this injury caused in his day-to-day living.  When I explained these things to you over the phone, I believe your response was, "We are not going to change our evaluation, unless you have new information to offer."  Your letter basically said the same thing and that you were closing your file.  My question is, do you think it would have been important to learn a little more about Mr. Willis' unique situation as a paraplegic with upper body injuries?

Fifth, during my phone conversation with you, I believe you said, "We looked at the medical bills paid by his health insurance and that was about it."  My question is, did you take in to account the facts mentioned in this letter and will that be reflected in your claim file?

I ask that you re-open your file and address these concerns and answer these questions so that I can explain things better to my client.  I look forward to hearing from you soon.

Respectfully,

Kevin Bennett

KTB/kw

**From:** Michael Roell <MICHAEL_ROELL@progressive.com>
**Sent:** Monday, March 21, 2022 10:55 AM
**To:** Kathy Walker <Kathy@bennettlawokc.com>
**Cc:** Kevin Bennett <Kevin@bennettlawokc.com>
**Subject:** RE: Claim #21-3770592 Billie Willis

Good morning Kathy/Kevin,

Please set up a date with Billie Willis for a recorded statement so we can better understand the impact of the loss on his daily life. A 30 minute timeframe should be sufficient and I'm usually available Monday through Friday between 8am-5pm, so just let me know what time and date works best for Billie.

Thanks,

**From:** Kathy Walker <Kathy@bennettlawokc.com>
**Sent:** Monday, March 21, 2022 10:23 AM
**To:** Michael Roell <MICHAEL_ROELL@progressive.com>
**Cc:** Kevin Bennett <Kevin@bennettlawokc.com>
**Subject:** [EXTERNAL] Claim #21-3770592 Billie Willis

Mr. Roell:

Please see attached letter from Kevin Bennett.

Thank you.

Sincerely,


Kathy Walker
Legal Assistant
The Bennett Law Firm
414 NW 4th Street, Suite 100
Oklahoma City, OK  73102
(405) 272-0303
kathy@bennettlawokc.com


EXHIBIT
9

# THE BENNETT LAW FIRM

### KEVIN BENNETT

---

Telephone
405.272.0303

414 N.W. 4th Street, Suite 100
Oklahoma City, OK 73102

Email
kevin@bennettlawokc.com

March 21, 2022

Michael Roell
Progressive Claims
7666 E. 61st Street, Suite 450
Tulsa, OK  74133

Re:    UIM Claim of Billie Willis
       Claim #21-3770592

Dear Mr. Roell:

I received your email today in response to my letter sent to you earlier this morning.  I was surprised you did not answer a single one of my questions and you did not address a single one of my client's concerns.

Your letter simply instructed me to set up a recorded statement of my client.  I do not believe that is a proper request, as Progressive already denied my client's claim.  Progressive now does not have a right to ask for a recorded statement.

I respectfully ask you to answer my questions and address my client's concerns as stated in my original letter.  I will await your response.

Respectfully,

Kevin Bennett

KTB/kw

**EXHIBIT**

**10**

PROGRESSIVE CLAIMS
7666 E. 61ST STREET
SUITE 450
TULSA, OK 74133



**Underwritten By:**
**Progressive Direct Insurance Company**

THE BENNETT LAW FIRM
KEVIN BENNETT
414 NW 4TH ST
STE 100
OKLAHOMA CITY, OK 73102

| | |
|---|---|
| Claim Number: | 21-3770592 |
| Loss Date: | September 9, 2021 |
| Loss State: | OK |
| Document Date: | March 22, 2022 |
| Page 1 of 1 | |

**claims.progressive.com**
Track the status and details of your claim, e-mail your representative or report a new claim.

# Claim Information

Mr. Bennett,

Please allow me to clarify that Progressive has not denied coverage for Billie Willis' underinsured motorist claim. My prior communication to you had advised that I had evaluated Mr. Willis' claim to be within USAA's policy limits and a valid underinsured motorist claim had not yet been presented. I also invited you to provide any additional information which may become available for ongoing consideration. Per your request, the claim has been re-opened. You have advised that there are no other treatment records available at this time. That said, I have requested a recorded statement from my insured so that I can better understand the impact of this injury which may not be fully captured in the records submitted by your office.

As for your questions please see below:

1. I am not aware of USAA's evaluation process nor have any insight as any business decisions they may have made to secure a release for their insured.

2. Mr. Willis' physical condition pre-loss and post-loss were considered in the non-economic aspect of Mr. Willis' evaluation; however, I would like to speak directly to my insured to ensure that I have a complete picture of his pre-loss baseline and any impact to daily activities and accommodations that may have been made because of his injury.

3. To date, my evaluation has considered incurred medical bills of $10,034. No loss of earnings claim has been presented. The injuries I considered in my evaluation consisted of a cervical sprain/strain, thoracic sprain/strain, and bilateral wrist sprains.

4. To address this question, I have requested a recorded statement with Mr. Willis. You state in your correspondence that we have waived our right to speak with our insured by denying his claim. Respectfully, I disagree. No denial has been issued and the terms of his policy with us make it quite clear that Mr. Willis has a duty under the policy to provide this statement to us. If you need a copy of the policy language, please let me know and I will be happy to provide a copy to you.

5. All information as provided to us is considered in an evaluation performed, and maybe you misunderstood me, but the evaluation as I discussed with you on the phone is not solely based on the medical bills. Both economic and non-economic damages are considered. To further clarify, I follow the guidelines of the Oklahoma Uniform Jury Instruction 4.1 as well as my education, experience, and training in determining the value of an injury claim.

Please let me know of an available time that Mr. Willis can speak with me. I look forward to continuing to work with you to reach an amicable resolution and, as always, please do not hesitate to reach out to me with any questions.

Sincerely,

MICHAEL ROELL
Claims Department
1-918-505-4391
1-800-PROGRESSIVE (1-800-776-4737)

Form Z587 (01/08)



# THE BENNETT LAW FIRM

### KEVIN BENNETT

Telephone
405.272.0303

414 N.W. 4th Street, Suite 100
Oklahoma City, OK 73102

Email
kevin@bennettlawokc.com

March 22, 2022

Michael Roell
Progressive Claims
7666 E. 61ˢᵗ Street, Suite 450
Tulsa, OK  74133

Re:    UIM Claim of Billie Willis
       Claim #21-3770592

Dear Mr. Roell:

I received a lengthy letter from you today and I am compelled to respond because this is important to my client.

Your letter says you want to clarify that Progressive has not denied <u>coverage</u> for Mr. Willis' claim.  To be clear, I did not say that in my letter. I said Progressive chose to deny my client's <u>claim</u>, not <u>coverage</u>.  Progressive denied the claim when you did not pay anything on the claim.

In addition, your letter failed to address several of my client's concerns.  Your silence leads me to believe you did <u>not</u> reach out to the liability adjuster; you did <u>not</u> place any value on Mr. Willis' unique pain and suffering due to his paraplegic status; and, you did <u>not</u> look at the type of wheelchair he used.  You certainly did <u>not</u> disclose your claim value as requested.  If I am incorrect on any of these issues, please let me know.

Also, you assert Progressive has a <u>right</u> to a recorded statement and that Mr. Willis has a <u>duty</u> under the policy to provide a statement.  If taking a recorded statement was so important, then why did you not ask for the statement before you concluded your investigation and placed the claim on inactive status?  It seems you are seeking information that you should have sought before you chose to not pay Mr. Willis' claim.

Finally, you cited Oklahoma Uniform Jury Instruction 4.1 as being used in your evaluation.  Thank you for that information.  However, there are other jury instructions, which relate to the conduct of insurance companies.  I am sure you are familiar with those as well, specifically Chapter 22 of OUJI.



EXHIBIT

12

KEVIN BENNETT
LAWYER

Michael Roell
March 22, 2022
Page 2

Please pay my client's claim in full by the end of this week and you can close your claim file
permanently.

Respectfully,

Kevin Bennett

KTB/kw

PROGRESSIVE CLAIMS
7666 E. 61ST STREET
SUITE 450
TULSA, OK 74133



**Underwritten By:**
**Progressive Direct Insurance Company**

| | |
|---|---|
| Claim Number: | 21-3770592 |
| Loss Date: | September 9, 2021 |
| Loss State: | OK |
| Document Date: | March 23, 2022 |
| Page 1 of 2 | |

THE BENNETT LAW FIRM
KEVIN BENNETT
414 NW 4TH ST
STE 100
OKLAHOMA CITY, OK 73102

**claims.progressive.com**
Track the status and details of your
claim, e-mail your representative or
report a new claim.

# Claim Information

Claim No.: 21-3770592

Policy No.: 921019729

Date of Loss: September 9th, 2021

Dear Mr. Bennett,

Please be advised that Progressive Direct Insurance Company ("Progressive") is currently investigating the claim referenced above. Specifically, we are investigating whether there is coverage for the Uninsured/Underinsured Motorist claim(s) which have been presented under the Oklahoma 9611 (12/15) policy number 921019729 issued to Melissa Willis for the policy period of April 14th, 2021 - October 14th, 2021 ("the policy"). The purpose of this letter is to advise you that we are handling this claim under a Reservation of Rights, as more fully explained below. This is not a denial of coverage, but it is possible that coverage may be denied, in whole or in part, in the future. Please read this letter carefully and contact us to discuss any questions you may have.

I have completed an evaluation with the information you have provided me and have advised you that my evaluation is within the tort carrier's limits of $25,000 and a valid underinsured motorist claim has not yet been presented. As you have raised the concern that I may not have an accurate understanding of how my insured has been affected by this loss, I am requesting a recorded statement from my insured. You have confirmed there are no other records to submit for review so speaking directly with Mr. Willis is essential so that I can better understand any potential impact to daily activities from this loss that may not have been captured in the medical records provided.

The policy includes the following relevant provisions:

"PART VI - DUTIES IN CASE OF AN ACCIDENT OR LOSS

For coverage to apply under this policy, you or the person seeking coverage must promptly report each accident or loss even if you or the person seeking coverage is not at fault. You or the person seeking coverage must provide us with all accident/loss information including time, place, and how the accident or loss happened. You or the person seeking coverage must also obtain and provide us the names and addresses of all persons involved in the accident or loss, the names and addresses of any witnesses, and the license plate numbers of the vehicles involved.

If you or the person seeking coverage cannot identify the owner or operator of a vehicle involved in the accident, or if theft or vandalism has occurred, you or the person seeking coverage must notify the police within 24 hours or as soon as practicable.

A person seeking coverage must:

1. cooperate with us in any matter concerning a claim or lawsuit;

2. provide any written proof of loss we may reasonably require;

3. allow us to take signed and recorded statements, including sworn statements and examinations under oath, which we may conduct outside the presence of you or any other person claiming coverage, and answer all reasonable questions we may ask as often as we may reasonably require;

4. promptly call to notify us about any claim or lawsuit and send us any and all legal papers relating to the claim or suit;



5. attend hearings and trials as we require;

6. take reasonable steps after a loss to protect the covered auto, or any other vehicle for which coverage is sought, from further loss. We will pay reasonable expenses incurred in providing that protection. If failure to provide such protection results in further loss, any additional damages will not be covered under this policy;

7. allow us to have the damaged covered auto, or any other damaged vehicle for which coverage is sought, inspected and appraised before its repair or disposal;

8. submit to medical examinations at our expense by doctors we select as often as we may reasonably require; and

9. authorize us to obtain medical and other records."

Based on the facts as we understand them and these policy provisions, there may be no coverage because we have been unable to obtain your cooperation in granting us access to our own insured.

In order to complete our ongoing evaluation of Mr. Willis' claim, we are requesting that you schedule a recorded statement with myself and Billie Willis within 15 days of the date of this letter.

Our investigation of this claim is ongoing. No action taken thus far, nor any action taken in the future, to investigate, explore settlement, settle, make payments, or defend you in litigation related to this claim should be construed or deemed to be an admission of coverage under the policy. Progressive reserves its rights to deny coverage under the policy, to refuse to make payments under the policy, to litigate any coverage issues, to withdraw from your defense, and/or to seek reimbursement of any amounts paid under the policy for loss, damage, costs, or fees. If we conclude there is no coverage under the policy, you may be responsible for any claim or damage resulting from the loss.

If you have any other insurance policies available to our insured that could possibly provide coverage for this loss, you should notify those insurance carriers of this claim immediately and provide that policy information to Progressive.

This Reservation of Rights is based upon our investigation to date. We further reserve the right to revise our position and to assert any other coverage issues that may be identified in the future.

Thank you for your attention to this letter. We look forward to your cooperation during this investigation. If any of the factual information described in this letter is inaccurate, please notify us immediately. If you have any other information which you feel may be relevant to the coverage issues outlined in this letter, please let us know. If you have questions or would like to discuss this matter further, please contact us.

Sincerely,

MICHAEL ROELL
Claims Department
1-918-505-4391
1-800-PROGRESSIVE (1-800-776-4737)

Form Z587 (01/08)