IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| BILLIE WILLIS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  CIV-22-349-SLP |
| | ) | |
| PROGRESSIVE DIRECT INSURANCE | ) | |
| COMPANY, | ) | |
| Defendant. | ) | |

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Respectfully submitted,

Jason Waddell, OBA No. 30761
Jason Waddell, PLLC
222 NW 13th Street
Oklahoma City, OK 73103
Telephone:   (405) 232-5291
Facsimile:   (405) 708-7871
Jason@JasonWaddellLaw.com

DATED:  May 23, 2023

## <u>TABLE OF CONTENTS</u>

Introduction ................................................................................................................ 1

Statement of Undisputed Facts ................................................................................... 2

Arguments and Authorities ........................................................................................ 8

    1. Legal Standard ................................................................................................ 8

    2. Defendant Ignores Decades of Settled Law to Deprive Billie Willis of UM/UIM Coverage ......................................................................... 8

    3. Oklahoma's Third-Party Tortfeasor Admissibility of Evidence Statute, 12 O.S. §3009.1 (*Paid vs. Incurred*) Does Not Apply to UM/UIM Claims ............................................................................................ 11

        a. Willis Complied with the Policy and Statutory Requirements ........................................................................................................ 14

        b. Willis *Incurred* Medical Expenses at the Time Services Were Rendered, and 12 O.S. §3009.1 Does Not Apply ............................. 17

    4. The Oklahoma Administrative Code Prevents Defendant from Taking a Credit on Billie Willis' Medical Billing because he has Health Insurance ............................................................................................ 23

    5. Lien Filing Fees are Economic Damages Covered Under the UM/UIM Policy .............................................................................................. 27

Conclusion ................................................................................................................ 29

# TABLE OF AUTHORITIES

*Cases*

Aetna v. State Bd. for Property and Cas. Rates,
 637 P.2d 1251 (Okla. 1981) ............................................................................25

Allianz Life Ins. Co. of N. Am. v. Muse,
 2022 WL 3701606 (10th Cir. Aug. 26, 2022) .................................................20

Assalone v. Hartford Acc. & Indem. Co.,
 908 P.2d 812 (Okla. App. 1994) .....................................................................14

Auto Club Prop. Cas. Ins. Co. v. Moser,
 874 S.E.2d 295 (W. Va. 2022) .......................................................................19

Barfield v. Barfield,
 742 P.2d 1107 (Okla. 1987) ....................................................................10, 17

Barnes v. Oklahoma Farm Bureau Mut. Ins. Co.,
 11 P.3d 162 (Okla. 2000) ........................................................21, 25, 26, 27

Bohannan v. Allstate Ins. Co.,
 820 P.2d 787 (Okla. 1991) ......................................................................22, 25

Burch v. Allstate Ins. Co.,
 977 P.2d 1057 (Okla. 1998) ...............................................................22, 25, 29

Buzzard v. Farmers Ins. Co.,
 824 P.2d 1105 (Okla. 1991) .....................................................................11, 14

Celotex Corp. v. Catrett,
 477 U.S. 317, 322-23 (1986) .............................................................................8

Chambers v. Walker,
 653 P.2d 931 (Okla. 1982) ..............................................................21, 25, 29

Coates v. Progressive Direct Ins. Co.,
 512 P.3d 345 (Okla. 2022) ..............................................................................29

Dennis v. Progressive N. Ins. Co.,
 No. CIV-17-182-SLP, 2018 WL 4868956
 (W.D. Okla. Mar. 23, 2018) ...........................................................................26

Duncan v. Oklahoma Dept. of Corr.,
   95 P.3d 1076 (Okla. 2004) ......................................................................... 12

Estes v. ConocoPhillips Co.,
   184 P.3d 518 (Okla.2008) ........................................................................... 23

Falcone v. Liberty Mutual Insurance Company,
   391 P.3d 105 (Okla. 2017)(Gurich, V.C.J.,concurring) ........................... 15, 29

Government Employees Ins. Co. v. Quine,
   264 P. 3d 1245 (Okla. 2011) ...................................................................... 29

Haworth v. Jantzen,
   172 P.3d 193 (Okla. 2006) ......................................................................... 20

In re Dawes,
   652 F.3d 1236 (10th Cir. 2011) ................................................................. 18

K.J. McNitt Const., Inc. v. Economopoulos,
   23 P.3d 983 (Okla. Civ. App. 2001) ...................................................... 18, 19

Karlson v. City of Oklahoma City,
   711 P.2d 72 (Okla. 1985) ............................... 9, 10, 12, 13, 14, 16, 17, 21, 22

Kratz v. Kratz,
   905 P.2d 753 (Okla. 1995) ...................................................................... 13, 14

Lee v. Bueno,
   381 P.3d 736 (Okla. 2016) ...................................................................... 12, 17

May v. Nat'l Union Fire Ins. Co. of Pittsburgh, Penn.,
   918 P.2d 43 (Okla. 1996) ........................................................................ 10, 11

Orthopedic Res., Inc. v. Nautilus Ins. Co.,
   654 F. Supp. 2d 1307 (N.D. Okla 2009) ................................................... 16

Phillips v. New Hampshire Ins. Co.,
   263 F.3d 1215 (10th Cir. 2001) .............................................................. 11, 25

Roberts v. Mid–Continent Casualty Company,
   790 P.2d 1121 (Okl.App.1989) ............................................................... 14, 26

Rogers v. Quiktrip Corp.,
   230 P.3d 853 (Okla. 2010) ......................................................................... 18

Siloam Springs Hotel, LLC v. Century Sur. Co.,
   392 P.3d 262 (Okla. 2017) ......................................................................... 18

State Farm Fire and Casualty Co. v. Pettigrew,
   180 F. Supp. 3d 925 (N.D. Okla. 2016) ......................................................... 16

Stewart v. Bhd. Mut. Ins. Co.,
   No. 16-CV-488-JED-FHM, 2018 WL 4092018
   (N.D. Okla. July 10, 2018) ........................................................................... 2

Stout v. AMCO Ins. Co.,
   645 N.W.2d 108 (Minn. 2002) ............................................................... 19, 25

Thomas v. Metro. Life Ins. Co.,
   631 F.3d 1153 (10th Cir. 2011) ..................................................................... 8

Thurston v. State Farm Mut. Auto. Ins. Co.,
   478 P.3d 415 (Okla. 2020) ............................................................... 12, 24, 25

Timmons v. Royal Globe Ins.,
   653 P.2d 907 (Okla. 1982) ......................................................................... 16

Tomlinson v. Combined Underwriters Life Ins. Co.,
   708 F. Supp. 2d 1284 (N.D. Okla. 2010) ....................................................... 27

Torres v. Kansas City Fire & Marine Ins.,
   849 P.2d 407 (Okla. 1993) ......................................................................... 10

Totally Tickets v. Sentinel Ins. Co., Ltd.,
   549 F. Supp. 3d 1309, 1313 (W.D. Okla. 2021) ............................................. 18

TRW/Reda Pump v. Brewington,
   829 P.2d 15 (Okla. 1992) ........................................................................... 12

U.S. v. AHS Tulsa Reg'l Med. Ctr. LLC,
   754 F.Supp.2d 1270 (N.D. Okla. 2010) ....................................................... 24

Uptegraft v. Home Ins. Co.,
   662 P.2d 681 (Okla. 1983) ....................................................... 9, 10, 14, 15, 17

Wiley v. Travelers Insurance Co.,
  534 P.2d 1293 (Okla. 1974) ................................................................................. 18, 25

## Statutes

12 O.S. §3009.1 ............................................................... 2, 4, 7, 11, 12, 13, 14, 17,
................................................................................................ 18, 19, 21, 22, 23, 29, 30

23 O.S. §61.2 ....................................................................................................... 29

36 O.S. §3636 ................................................................. 1, 10, 11, 14, 15, 16, 17, 18,
........................................................................................ 20, 21, 22, 23, 25, 26, 29, 30

75 O.S. §308.2 ..................................................................................................... 23

## Other Authorities

Black's Law Dictionary 782 (8th ed. 2004) ......................................................... 18

Fed. R. Civ. P. 56 ................................................................................................. 8

Oklahoma Administrative Code, §365 ........................................................ 23, 24, 26, 27

COMES NOW the Plaintiff, Billie Willis ("Willis"), and moves for partial summary judgment against Defendant Progressive Direct Insurance Company ("Defendant") determining as a matter of law: (**A**) that Oklahoma's third-party evidence admissibility *paid vs. incurred* statute (12 O.S. §3009.1) does not apply to Uninsured/Underinsured Motorist ("UM/UIM") claims; (**B**) Plaintiff is entitled to summary judgment on his breach of contract claim because Defendant is prohibited from taking a credit or offset on Billie Willis' medical billing because he has health insurance; (**C**) lien filing fees are economic damages covered under the UM/UIM policy.

## Introduction

Plaintiff, Billie Willis, was involved in an auto collision on September 9, 2021, with non-party Jessica Maddox. She offered her $25,000 policy limits in full settlement of his claims against her on February 24, 2022. Mr. Willis also had a $25,000 UM/UIM motorist policy with Defendant Progressive.  On February 25, 2022, Mr. Willis, through his personal injury attorney, presented a written demand for UM/UIM benefits asking Defendant to waive subrogation, evaluate his UM/UIM claim, and submitted a $25,000.00 policy limits demand to Progressive in compliance with the terms of the policy and Oklahoma law 36 O.S. §3636(F).

 Defendant received the demand on March 7th, affirmatively waived subrogation on March 8th, and denied Plaintiff's claim for UM/UIM benefits the same day because it evaluated the claim within the tortfeasor's policy limits. Defendant did so by reducing Plaintiff's known $25,529.00 incurred medical billing by over $15,000.00, down to

approximately $10,000.00, utilizing Oklahoma's 3rd party trial admissibility tortfeasor *paid v. incurred* statute, 12 O.S §3009.1.[1] In creating this unilateral reduction, Defendant relied on the *legally entitled to recover* language in the policy creating a situation where an insured must sue their insurer to get their paid for benefits so that "evidence" of the insured's damages could be "admitted". Defendant's position is contrary to established Oklahoma Supreme Court precedent and statutory law.

## STATEMENT OF UNDISPUTED FACTS

1. Adjusters, employees, and supervisors are trained to handle UM/UIM claims in compliance with the policy and Oklahoma law. (*Deady Depo,* 18:14-18, **Exhibit 1**.)

2. Willis was involved in an automobile collision on September 9, 2021, with Jessica Maddox and Willis was not at fault. (*Roell Depo,* 33:20-25, **Exhibit 2**.)

3. At the time of the crash, Willis was insured by Defendant under Policy No. 921019729 providing UM/UIM coverage for losses and damages resulting from bodily injury in the amount of $25,000 per person. [*Declarations Page,* Doc. No. 6-1.]

4. Willis suffered injuries in the automobile collision requiring medical treatment from September 9, 2021, through December 27, 2021. [*Answer,* Doc. No. 6, ¶¶ 17, 54.]

5. Willis provided a written demand of his UM/UIM claim which was received by Defendant on March 7, 2022; the demand contained medical records, medical bills, and

---

[1] 12 O.S. §3009.1 is "commonly known as the 'paid vs. incurred statute'." Stewart v. Bhd. Mut. Ins. Co., No. 16-CV-488-JED-FHM, 2018 WL 4092018, at *5 (N.D. Okla. July 10, 2018)

a signed medical (HIPAA) authorization. (*Roell Depo,* 55:4-25, **Exhibit 2**; *Claim File,* PROG-WILLIS 0009-00010, **Exhibit 3**.)

6.  The demand also provided Defendant with a detailed list of medical providers and incurred medical expenses of $25,529.00.  (Medical Summary of Billie Willis, *Claim File*, PROG-WILLIS 0057, **Exhibit 3**.)

7.  Defendant never utilized the signed HIPAA authorization to request the bills, records, or investigate whether the EMSA or Radiology entries on his Medical Summary applied to Willis' claim for benefits. (*Roell Depo,* 55:19-56:2, **Exhibit 2**.)

8.  Defendant waived subrogation on March 8, 2022. [*Answer,* Doc. No. 6, ¶16.]

9.  Defendant utilized and applied 12 O.S. §3009.1 as well as Willis' healthcare insurance write-offs to reduce his submitted incurred medical billing from $25,529.00 to just $10,034.00. (*Claim File,* PROG-WILLIS 0010, **Exhibit 3**; *Defendant's Discovery Responses,* Interrogatory No. 16, **Exhibit 4**; *Deady Depo,* 44:21-45:8, **Exhibit 1**; *Answer,* Doc. No. 6, p.16, ¶1- *Affirmative Defenses.*)

10. Defendant does not train its employees, and Defendant's legal counsel training does not include, instruction on getting signed statements showing medical bills are paid in full pursuant to the requirements of 12 O.S. §3009.1 because it is not their process. Defendant did not get any signed statements or sworn testimony from Willis' medical providers before utilizing §3009.1. (*Deady Depo,* 49:9-22; 50:17-25, **Exhibit 1**; *McMillen Depo,* 61:22-62:3, 71:23-72:1, **Exhibit 5**; *Roell Depo,* 132:17-21, **Exhibit 2**; *Def's Discovery Responses, Requests for Admission 11-14,* **Exhibit 4**.)

11. Defendant trains its employs to rely upon on the _legally entitled to recover_ policy language to reduce medical bills submitted by Willis to the paid amount. (*McMillen Depo,* 31:5-16, 78:5-8, **Exhibit 5**; *Deady Depo,* 47:20-48:5, **Exhibit 1**.)

12. There is no provision in the policy under the uninsured motorist section that allows Defendant to avail itself of the paid amount of medical billing. ((*30(b)(6) Depo of Chris Ferris*, 56:12-17, **Exhibit 6**.)

13. Defendant took, and trains its adjusters to take, a credit for healthcare insurance contractual adjustments and write-offs made by Billie Willis' health insurance through Blue Cross Blue Shield. (*Deady Depo,* 23:23-24:18, 30:10-21, **Exhibit 1**; *Roell Depo,* 127:3-128:6, **Exhibit 2**; *McMillen Depo,* 30:10-21, **Exhibit 5**.)

14. There is no provision in the policy that allows Defendant to take a credit for health insurance write-offs. ((*30(b)(6) Depo of Chris Ferris*, 56:7-11, **Exhibit 6**; *Roell Depo,* 70:9-13, **Exhibit 2**; *Deady Depo*, 24:7-11, **Exhibit 1**.)

15. Progressive is bound to follow Oklahoma law and the Oklahoma Administrative Code relating to insurance. (*30(b)(6) Depo of Chris Ferris*, 115:15-18, **Exhibit 6**.)

16. Progressive justified their use of Plaintiff's health insurance contractual write-offs and §3009.1 despite the expressed language of Section 365:15-1-17 of the Oklahoma Administrative Code. (*30(b)(6) Depo of Chris Ferris*, 116:2-6, **Exhibit 6**.)

17. Progressive avails themselves of contractual write-offs for health insurance on medical bills submitted in a UM demand. (*30(b)(6) Depo of Chris Ferris*, 55:10-15, **Exhibit 6**.)

18. Three of Billie Willis' medical providers treated him on a lien basis, and they charged him a lien filing fee on his medical billing records. (*Billing statements*, WILLIS 0004, 0031, 0147, **Exhibit 7**.)

19. Defendant deducted a total of $150.00 in lien filing fees from the medical billing. (*Roell Depo,* 73:1-8, **Exhibit 2**.)

20. Willis is required to pay the lien filing fees as damages. (*Roell Depo,* 73:9-18, **Exhibit 2**; *Deady Depo,* 33:14-23, **Exhibit 1**.)

21. Defendant doesn't see lien filing fees as economic damages because Willis wouldn't be *legally entitled to recover* those damages as they are an "administrative fee". (*McMillen Depo,* 40:6-13, **Exhibit 5**; *Deady Depo*, 25:12-26:22, 58:3-9, **Exhibit 1**.)

22. There is no provision in the policy that allows for the deduction of lien filing fees. (*Roell Depo,* 75:1-3, **Exhibit 2**; *McMillen Depo,* 38:13-18, **Exhibit 5;** *Deady Depo,* 26:23-27:3, **Exhibit 1**.)

23. The policy of insurance provides payment for economic damages related to medical treatment, and Plaintiff would be responsible for any lien filing fees charged to him, but Defendant considers them "administrative and not related to a cost of medical treatment." (*30(b)(6) Depo of Chris Ferris*, 147:25-148:6, 149:7-16, **Exhibit 6**.)

24. Nowhere in the policy of insurance does it say that UM/UIM coverage only applies to medical treatment. (*30(b)(6) Depo of Chris Ferris*, 148:7-10, **Exhibit 6**.)

25. UM/UIM coverage applies to non-economic and a variety of economic damages to included loss of earnings, out-of-pocket expenses, and even mileage. (*30(b)(6) Depo of Chris Ferris*, 148:11-18, **Exhibit 6**.)

26. Defendant's evaluation range of Willis' claim on March 8, 2022, was a low range of $17,037 and a high range of $20,537. (*Roell depo,* 81:16-22, **Exhibit 2**.)

27. Willis' incurred medical billing and out of pocket medical expenses on March 8, 2022, were $28,249.44. The incurred medical billing for EMSA was $1,338.00 and the Radiology billing was $540.00, which was never discovered or investigated by Defendant. (*Bills and liens*, WILLIS 0003, 0033, 0146, 0151, 0153-0155, **Exhibit 7**.)

28. You incur a bill when you seek medical care. (*Willis Depo*, 213:11-15; 231:16-21, **Exhibit 8**.)

29. The incurred amount of a bill is different from the paid amount or any write-offs that may occur regarding a bill. Id. at 231:16-21.

30. "When it comes to medical bills, an incurred [bill] would be the amount that was charged. Paid is the amount that has been paid after the contractual adjustments." (*Deady Depo,* 40:10-22, **Exhibit 1**.)

31. Progressive's definition of the word "incurred" does not differ from that found in 12 O.S. §3009.1 as "Progressive's position is that incurred means the amount of the bills—the billed amount." (*30(b)(6) Depo of Chris Ferris*, 119:11-16, **Exhibit 6**.)

32. "There is a difference between paid billing and incurred billing as it applies in 3009.1." (*30(b)(6) Depo of Chris Ferris*, 120:22-25, **Exhibit 6**.)

33. Progressive does not seek the affidavits or statements required for compliance with 12 O.S. §3009.1 until a lawsuit is filed, and Progressive relies on their defense counsel, not the adjusters handling the UM/UIM claim, to gather the statements and affidavits

needed for compliance with 12 O.S. §3009.1. (*30(b)(6) Depo of Chris Ferris*, 121:1-123:21, **Exhibit 6**.)

34. At the time Progressive denied Plaintiff's claim, it had not received the statements and affidavits required for compliance with 12 O.S. §3009.1, and it solely relied on the face value of the bills presented in the demand to avail itself of the paid amount of billing. (*30(b)(6) Depo of Chris Ferris*, 123:24-124:23, **Exhibit 6**.)

35. Progressive's policy is to only seek statements or affidavits supporting the use of §3009.1 after they have been sued by their own insured, and Progressive believes this is dealing with their insureds in good faith and fair dealing. (*30(b)(6) Depo of Chris Ferris*, 65:11-22, **Exhibit 6**.)

36. Defendant finished the evaluation of Willis' claim and denied his claim on March 8, 2022. (*Roell Depo,* 81:16-22, **Exhibit 2**.; *Letter dated March 9, 2022,* WILLIS 0176, **Exhibit 9**.)

37. Willis' lawsuit against 3rd party Ms. Maddox was dismissed with prejudice on March 25, 2022.  (*Dismissal with Prejudice*, **Exhibit 10**.)

38. Defendant denied Willis' claim for the 2nd time on April 14, 2022. (*Letter dated April 14, 2022,* WILLIS 0193, **Exhibit 11**.)

39. At the time Progressive denied Plaintiff's claim after re-evaluation on April 14, 2022, there was no personal injury trial pending in which to submit evidence of paid medical billing, and Progressive relied solely on the face value of the bills in considering only the paid amount. (*30(b)(6) Depo of Chris Ferris*, 124:24-125:12, **Exhibit 6**.)

## Arguments and Authorities

### 1) Legal Standard

Summary judgment shall be granted if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of demonstrating the absence of material fact requiring judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "Summary judgment is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." Id. at 327. Matters of statutory interpretation present questions of law "appropriate for resolution on summary judgment." Thomas v. Metro. Life Ins. Co., 631 F.3d 1153, 1160 (10th Cir. 2011).

### 2) Defendant Ignores Decades of Settled Law to Deprive Billie Willis of UM/UIM Coverage.

The operative portion of the UM/UIM section in Willis' policy reads, "we will pay for damages that an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury." [*Policy,* Doc. No. 6-2, p.15.] This language comes from statutory mandate found in Oklahoma's Uninsured Motorist statute, 36 O.S. §3636(B). Defendant relied on the legally entitled to recover language to reduce the value of Willis' claim for coverage. *PUDF Nos. 11, 21.*[2] UM jurisprudence has been consistently interpreted by the Oklahoma Supreme Court as disallowing a UM insurer from availing itself of procedural defenses available to a tortfeasor.

---

[2] "*PUDF*" stands for Plaintiff's Undisputed Facts.

In the UM context, the "legally entitled to recover" language has a distinct and narrow meaning. A UM claimant such as Willis must (1) establish fault on the part of the uninsured motorist which gives rise to damages and (2) prove the extent of those damages. Uptegraft v. Home Ins. Co., 662 P.2d 681, 685 (Okla. 1983). In Uptegraft, the Court found an UM insurer was prohibited from relying on the "legally entitled to recover" language to deny UM coverage because the two-year statute of limitations against the tortfeasor had passed. In reaching this ruling, the Court found the phrase "simply mean{s} that the insured must be able to establish fault on the part of the uninsured motorist...and prove the extent of those damages" and it "does not subject the insured's claim to the two-year statute of limitations applicable to an action *ex delicto.*" Id. The Court reasoned that UM "coverage constitutes a carrier's direct promise to the insured to pay indemnity for a specified loss" based upon the principles arising out of contract. Id. at 684.

The Court revisited the procedural defenses available to a UM insurer in Karlson v. City of Oklahoma City, 711 P.2d 72 (Okla. 1985). There, the insurer argued that the "legally entitled to recover" language was an available procedural defense when the UM claimant was statutorily prohibited from recovering in excess of the tortfeasor's statutory Governmental Tort Claims limit. Id. at 73. Relying on Uptegraft in finding the plaintiff was "legally entitled to recover" more than the defendant's Tort Claims limit as damages, the Court employed Oklahoma law governing the interpretation of contracts, noting "an insurance policy is a contract and must be given the same consideration as any other contract, except that in cases of doubt, the contract will be construed more strongly against

the insurer." Id. at 74.[3] The Court, in denying the insurance company's attempted procedural damages limitation, referenced the definition of "legally entitled to recover" set forth in Uptegraft in holding that although "[t]here are other constructions which might be given this key phrase, but to be consistent with the rules . . . we must disregard such other definitions and apply the one most favorable to the insured." Id. at 75.

In Barfield v. Barfield, 742 P.2d 1107 (Okla. 1987), the Oklahoma Supreme Court found that the legally entitled to recover language was not a bar to recovery of UM coverage where the insured's exclusive remedy for his injuries was the Oklahoma Worker's Compensation Act, which is not an action based in having to prove fault. Id. at 1112. Relying on Uptegraft, the Court found that an insured is not required to proceed against the at-fault party in a tort action to be entitled to UM coverage because the "uninsured motorist carrier does not stand in the tortfeasor's shoes." Id.; *see also* Torres v. Kansas City Fire & Marine Ins., 849 P.2d 407, 410-12 (Okla. 1993)(rejecting insurer's attempt to restrictively apply legally entitled to recover language in affirming that a UM carrier does not stand in the shoes of Class 2 insured passenger even though insurer barred from asserting subrogation rights against Class 2 passenger). As UM coverage is statutorily mandated to be offered to the same extent as liability coverage, "any restriction must be closely scrutinized." Id.

The legally entitled to recover language in the policy, adopted from the statutory

---

[3] "An insurance coverage contract required by §3636 must be liberally construed in favor of the object to be accomplished." May v. Nat'l Union Fire Ins. Co. of Pittsburgh, Penn., 918 P.2d 43, 48 (Okla. 1996).

mandate in 36 O.S. §3636(B), simply means that an insured must be able to prove fault and damages.  Willis was not at fault and submitted proof of his damages to Defendant. *PUDF Nos. 2, 5-6.* Meeting these elements required Defendant to place an independent value on the claim for coverage, <u>Buzzard v. Farmers Ins. Co.</u>, 824 P.2d 1105, 1112 (Okla. 1991), and issue speedy payment without imposing hurdles beyond the statutory mandate of 36 O.S. §3636. *See* <u>Phillips v. New Hampshire Ins. Co.</u>, 263 F.3d 1215, 1225 (10th Cir. 2001); *citing* <u>May</u>, 918 P.2d at 48–49.

**3) Oklahoma's Third-Party Tortfeasor Admissibility of Trial Evidence Statute, 12 O.S. §3009.1 (*Paid vs. Incurred*), Does Not Apply to UM/UIM Claims**

Despite the wealth of settled authority indicating otherwise, Defendant took the affirmative position to avail themselves of the third-party procedural defense of 12 O.S. §3009.1 for the purposes of diminishing the amounts owed to Willis under the policy by employing an inventive interpretation of the legally entitled to recover language. The Oklahoma Legislature unambiguously set forth that §3009.1 applies to the admissibility of evidence "Upon the trial of any civil action arising from personal injury." Additionally, in order to comply with the trial admissibility of paid medical bills, §3009.1 requires a party to secure a signed statement or sworn testimony from the provider stating, "that the provider will accept the amount paid as full payment of the obligations." §3009.1(A)-(B). Here, some of Willis' bills were partially written off and paid by his own health insurance. However, Defendant admits that it is not "their process" to get signed statements from a UM claimant's medical provider showing the bill is paid in full and made no attempt to secure the statements or sworn testimony before denying the claim on two separate

occasions. *PUDF No. 10.* In fact, Defendant admits that they only seek to secure the statements and affidavits ***after*** they have been sued by their own insured. *PUDF No. 35.* Defendant did not comply with the express requirements of §3009.1 before evaluating and denying Willis' claim, requiring speculation on Defendant's claim evaluation that they *could* get the statements and affidavits if a lawsuit resulted and *could* get them admitted as evidence. Section 3009.1 is not self-effectuating, it is a procedural defense that must be affirmatively sought out for the benefit of 3rd party tortfeasors at trial defending against claims of personal injury. *See* Lee v. Bueno, 381 P.3d 736, 748 (Okla. 2016)(§3009.1 "limits all personal injury plaintiffs to submitting evidence of medical expenses they have paid.").

As written, Section 3009.1 only applies to the admissibility of evidence at trial in a personal injury action. "[T]he primary goal of statutory interpretation is to ascertain and follow the Legislature's intention." Duncan v. Oklahoma Dept. of Corr., 95 P.3d 1076, 1079 (Okla. 2004). Legislative intent is determined by viewing the act "in light of its general purpose and object." TRW/Reda Pump v. Brewington, 829 P.2d 15, 20 (Okla. 1992). Statutory interpretation requires a court to give the words contained therein "their ordinary meaning unless a contrary legislative intent plainly appears." Thurston v. State Farm Mut. Auto. Ins. Co., 478 P.3d 415, 420 (Okla. 2020).

Here, Willis' lawsuit against Ms. Maddox arose from personal injury tort and his claim with Defendant for UM coverage arises from contract. *See* Karlson, 711 P.2d at 74 ("This controversy, like all disputes between insurers and their insureds, is essentially a contract dispute and should be resolved by recourse to established principles of contract

law"). In <u>Kratz v. Kratz</u>, 905 P.2d 753 (Okla. 1995), the Oklahoma Supreme Court analyzed a hospital lien statute where the hospital asserted it was entitled to proceeds from Kratz's UM/UIM coverage for satisfaction of its filed lien. The Oklahoma Supreme Court agreed with Mrs. Kratz's position that the hospital lien statute regarding "damages recovered from a tortfeasor or his insurer did not extend to her uninsured motorist payment which was a benefit of her private contractual arrangement with her insurer obtained in an action which sounds in contract, not tort." <u>Id.</u> at 754. The hospital lien act language provided that it applied to "creating [a] lien against judgment in personal injury actions in favor of hospital rendering services to injured party". <u>Id.</u> at 756.  The Court found that the "*personal injury* action" statutory language "explicitly restricts the reach" of the lien to proceeds recovered from a tortfeasor and did not apply to uninsured motorist coverage as that action is one based on contract. <u>Id.</u> (Emphasis in original.)

This Court should reach the same result as the Oklahoma Supreme Court in <u>Kratz</u>. The breadth, meaning, and inapplicability of §3009.1 to contractual UM/UIM claims becomes clear when you examine the plain language of the statute. The title limits the application to "**Admissibility of Medical Expenses"**. It then commands that the statute comes into effect "Upon the trial of any civil action arising from personal injury". §3009.1(A). Within the body of the statute, statements and/or sworn testimony stating the bills are paid in full must be secured by pretrial or else the billed amounts are admissible. §3009.1(C). Furthermore, §3009.1 is only applicable to "civil actions arising from personal injury *filed*" with the court. 12 O.S. §3009.1(D)(emphasis added). Thus, §3009.1 is a statutory procedural protection for tortfeasors in personal injury *lawsuits*.

Billie Willis' claim with Progressive was a contractual demand, not a personal injury trial. <u>Uptegraft</u>, <u>Karlson</u>, <u>Kratz</u>, *supra.* None of the §3009.1 evidentiary trial admissibility requirements are applicable here.[4] Willis was not required to file a lawsuit against his tortfeasor to secure the 3rd party liability coverage[5], and he was not required to file a lawsuit against Progressive to be entitled to his contractual UM/UIM coverage. Thus, as no lawsuit is ever required to secure the underlying liability or UM/UIM coverage, the inapplicability of a trial evidence admissibility statute in the context of a UM/UIM demand for coverage shows that Progressive's position in this matter would contravene public policy considerations. Progressive admits that they do not comply with 12 O.S. §3009.1 until their own insured sues them and then relies on defense counsel to get the statements, not their own adjusters. *PUDF Nos. 33, 35.* This is an admission that Progressive is availing itself of a procedural protection in contravention of established Oklahoma precedent. <u>Karlson</u>, *supra.* Progressive's business practice of waiting until they are sued by their own insured underscores the inapplicability of §3009.1 in a contractual claim evaluation.

### a.   Willis Complied with the Policy and Statutory Requirements

The rights and obligations of the parties in a contractual dispute must start with the language of the contract itself. However, as noted above, insurance is a highly regulated

---

[4] *Expert Report of Mort Welch,* p. 67, **Exhibit 12.**

[5] <u>Buzzard v. Farmers Ins. Co.</u>, 824 P.2d 1105, 1111-12 (Okla. 1991) (there is no precondition requiring exhaustion of liability limits before UM coverage applies and insurer "must assign a dollar amount to the claim); <u>Roberts v. Mid–Continent Casualty Company</u>, 790 P.2d 1121 (Okl.App.1989) (Cert. denied 1990)("insured is not required to sue the tort-feasor before recovery can be had under his own policy"); *accord* <u>Assalone v. Hartford Acc. & Indem. Co.</u>, 908 P.2d 812, 814 (Okla. App. 1994)(no requirement to file suit against tortfeasor to recover UM benefits).

industry and the law applicable to a particular contract of insurance is necessarily incorporated into the same. Willis provided Defendant with $25,529.00 of incurred economic medical expenses for evaluation of his coverage benefits in compliance with the language of the policy which comes from the statutory mandate in 36 O.S. §3636(B) and (F):

> If you pay the premium for this coverage, we will ***pay for damages*** that an insured person is ***legally entitled to recover*** from the owner or operator of an uninsured motor vehicle ***because of bodily injury***
>
> \*   \*   \*
>
> An insured person must send to us, by certified mail, written notice of any settlement offer made by the owner or operator of an uninsured motor vehicle, or that person's liability insurer. The notice must include:
> 1. ***written documentation of all economic damages incurred***, including copies of all medical bills; and
> 2. written authorization, or a court order, to obtain reports from all employers and medical providers.

[*PUDF Nos. 5-6; Policy,* Doc. No. 6-2, p.15.] (Emphasis added.) The policy states "Defendant will pay for damages… Willis is legally entitled to recover…. because of bodily injury", which is language taken from the statutory enactment in 36 O.S. §3636(B). There is no limiting clause on what damages are, no restrictions on what legally entitled to recover means, and no restricting clause allowing Defendant to question damages because of bodily injury.[6] It is undisputed that Willis was not at fault and that he was legally entitled to recover damages from Maddox, thus satisfying the contractual requirements and elements set forth in <u>Uptegraft</u>. *PUDF Nos. 2, 5-6.*

---

[6] <u>Falcone v. Liberty Mutual Insurance Company</u>**,** 391 P.3d 105, 110 (Okla. 2017)(Gurich, V.C.J.,concurring) (UM insurer is not allowed to question the "reasonableness or necessity of the medical services or expenses" absent clear contract language.)

A court sitting in diversity interprets an insurance contract according to state law. State Farm Fire and Casualty Co. v. Pettigrew, 180 F. Supp. 3d 925, 931 (N.D. Okla. 2016). When interpreting the language of insurance contracts under Oklahoma law, "words of inclusion are construed in favor of the insured." Orthopedic Res., Inc. v. Nautilus Ins. Co., 654 F. Supp. 2d 1307, 1313 (N.D. Okla. 2009) (quoting Timmons v. Royal Globe Ins., 653 P.2d 907, 913 (Okla. 1982)). In cases where there might be doubt concerning the interpretation of an uninsured motorist insurance policy, "the contract will be construed more strongly against the insurer." Karlson, 711 P.2d at 74.

Pursuant to the requirements of the policy and §3636(F), Willis submitted incurred economic medical billing damages of $25,529.00 to Progressive. This amount exceeded the $25,000 liability limits of Ms. Maddox, entitling Willis to a minimum coverage amount of $529.00 under his policy.[7]

There is no doubt that Willis was required to submit "economic damages incurred" pursuant to the policy language and "pecuniary losses incurred" as required by §3636(F). These contractual and statutory requirements of submitting incurred economic damages for consideration were met by Willis. There is no provision in the policy of insurance or 36 O.S. §3636 that allows Progressive to consider the paid amount of medical bills. *PUDF No. 12.* Thus, Defendant was required by the policy and limited by the language therein in

---

[7] Had Defendant conducted even a minimally reasonable investigation by requesting the EMSA and Radiology billing, it would have discovered that Willis' incurred medical billing was actually $28,249.44, entitling him to a minimum of $3,249.44 in contractual medical incurred damages. [*Amd. Petition,* Doc 1-5, ¶¶44, 48, 59-60, 85, 87, 90.]   To date, no payment of any kind has been made by Progressive on the contract claim.

accordance with 36 O.S. §3636 to considering only the "economic damages incurred" provided by Willis as his economic medical damages.

### b. Willis *Incurred* Medical Expenses at the Time Services Were Rendered, and 12 O.S. §3009.1 Does Not Apply

Oklahoma law is settled that Defendant is prohibited from stepping into the procedural defensive shoes of a tortfeasor such as Ms. Maddox to limit the extent of Willis' damages absent clear policy language. Uptegraft, Karlson, *supra.* Likewise, the procedural defense of §3009.1 is unavailable to a UM insurer *during the contractual claim evaluation process* as any restriction to UM benefits "must be closely scrutinized." Barfield, 742 P.2d at 1112 (rejecting insurer's interpretation of legally entitled to recover where it would conflict with statutory mandate of §3636). Construing §3009.1 in accord with Lee provides its limited applicability to the *admissibility of paid medical billing* evidence in a personal injury trial against a tortfeasor. *See* Lee, 381 P.3d at 745-46.

While unsuitable to a UM contractual claim evaluation, in amending the 2011 statute in 2015, the Legislature refined §3009.1 to provide a clear difference between paid and incurred medical billing.[8] Here, the policy provides that Willis was required to provide proof of *economic damages incurred* and is silent on the issue of *paid* economic damages in the UM/UIM section. *PUDF No. 12.* This *incurred* policy language is adopted from the specific Uninsured Motorist Coverage legislation in 36 O.S. §3636(F) which requires proof of pecuniary incurred losses to be submitted to a UM insurer for consideration in a demand

---

[8] 2011 and 2015 versions of 12 O.S. §3009.1, **Exhibits 13 and 14**.

package. Therefore, the Legislature intended for UM insureds to provide, and UM insurers to consider in their evaluations, the incurred medical billing.

As 36 O.S. §3636(F) is the specific statute governing this subject matter, it controls over the general trial evidence admissibility statute even assuming arguendo that §3009.1 could apply to a UM damages evaluation. *See* Rogers v. Quiktrip Corp., 230 P.3d 853, 860 (Okla. 2010)(specific statutes enacted for dealing with the matter in controversy control over a statute of general applicability). UM claims are governed by 36 O.S. §3636 because allowing §3009.1 to control would contravene the expressed intent of the Oklahoma Legislature and the specific policy language. *See* Siloam Springs Hotel, LLC v. Century Sur. Co., 392 P.3d 262, 268 (Okla. 2017)(Oklahoma legislative pronouncement "that prescribes a norm of conduct….can serve as a source of Oklahoma's public policy.") A Court must interpret the policy in light of the applicable statutes but must not rewrite the contract the parties agreed to. *See* Wiley v. Travelers Insurance Co., 534 P.2d 1293 (Okla. 1974).

In accord with the policy language and §3636(F), Willis is entitled to recover his billed or incurred medical billing damages, not the later paid medical. Under Oklahoma law, "[w]hen policy provisions are clear, consistent, and unambiguous, [the court must] look to the plain and ordinary meaning of the policy language to determine and give effect to the parties' intent." Totally Tickets v. Sentinel Ins. Co., Ltd., 549 F. Supp. 3d 1309, 1313 (W.D. Okla. 2021). "To incur means to suffer or bring on oneself, as in a liability or expense." In re Dawes, 652 F.3d 1236, 1239 (10th Cir. 2011)(quoting Black's Law Dictionary 782 (8th ed. 2004))(internal quotes omitted); *accord* K.J. McNitt Const., Inc. v.

Economopoulos, 23 P.3d 983, 984 (Okla. Civ. App. 2001)(interpreting the word incur as used in Oklahoma statutory language meaning to become liable for, and the word liable means the state of one being bound in law to do which occurs at the time one enters into a contract)(internal quotes omitted). Incurred is what happens when you go into the hospital, you "incur a bill". *PUDF Nos. 28-29.*

At the time of making its claims decision, Defendant relied on its unreasonable interpretation of the word *incurred* (meaning the same as paid) and the *legally entitled to recover* language in conjunction with §3009.1 to reduce Willis' incurred medical billing.[9] The word incurred in the context of an insurance policy means to become liable for and a "typical consumer would understand that a medical expense is incurred at the time the services are rendered." Auto Club Prop. Cas. Ins. Co. v. Moser, 874 S.E.2d 295, 302-06 (W. Va. 2022)(collecting and analyzing numerous cases supporting the proposition that incurred language in a insurance contract means at the time services are rendered regardless of any future health insurance write-offs or whether the bills are ultimately paid); *accord* Stout v. AMCO Ins. Co., 645 N.W.2d 108, 113 (Minn. 2002)(a person incurs and becomes liable for a medical expense when they receive medical treatment as "distinguished from [what they ultimately] pay for"). These definitions of the word incurred align with the testimony of both Plaintiff and Defendant's representatives that there is a difference

---

[9] "Plaintiff incurred approximately $10,000.00 in economic damages for which he was legally entitled to recover from the at-fault driver." *Def's Discovery Responses:* Interrogatories 6, 16, 17, Request for Admission 7-10*, **Exhibit 4.**

between incurred and paid medical expenses because you incur a bill when you seek and receive services. *PUDF Nos. 30-32.*

If Defendant desired to limit Billie Willis' recoverable medical billing damages to the paid amount instead of the billed/incurred amount, it was required to employ policy language to that effect. *See* Haworth v. Jantzen, 172 P.3d 193, 197 (Okla. 2006) ("When an insurer desires to limit its liability under a policy, it must employ language that clearly and distinctively reveals its stated purpose."); *see also* Allianz Life Ins. Co. of N. Am. v. Muse, 2022 WL 3701606, at *7 (10th Cir. Aug. 26, 2022)(unpublished)(if an insurer desires to limit the amount of coverage under a policy regarding *incurred charges for covered benefits* regardless of whether the insured incurred *actual charges*, it is required to draft a policy that "clearly" states its intended purpose and an insurer will be bound by the policy language it drafts and issues)(internal quotes omitted, emphasis added).

Progressive did not draft the policy of insurance to include paid v. incurred language in the UM/UIM section of the policy because such language would arguably not comply with or be at odds with the statutory edict regarding incurred damages in §3636(F). Additionally, Progressive's inventive interpretation of the word incurred during the claim's adjustment process[10], the early stages of this litigation[11], and presently has significantly

---

[10] "To date, my evaluation has considered incurred medical bills of $10,034." *March 22, 2022 correspondence from Progressive Adjuster Michael Roell,* WILLIS 0184, **Exhibit 15.**

[11] "Plaintiff incurred approximately $10,000.00 in economic damages for which he was legally entitled to recover from the at-fault driver." *Def's July 5, 2022*, *Discovery Responses:* Interrogatories 6, 16, 17, Request for Admission 7-10*, **Exhibit 4.**

changed to a point that it now agrees with Plaintiff's position that there is a difference between incurred and paid billing.[12]

Ultimately in this matter, Progressive is bound by the Oklahoma Supreme Court's interpretation of legally entitled to recover. (*30(b)(6) Depo of Chris Ferris* 128:21-129:10, **Exhibit 6**.) Progressive's explanation and use of the legally entitled to recover language in conjunction with §3009.1 contravenes §3636, the policy, and established Oklahoma law. *see* <u>Karlson</u>, 711 P.2d at 75 (while legally entitled to recover might have "other constructions" or interpretations, the court in being "consistent with the rules . . . must disregard such other definitions and apply the one most favorable to the insured."); *see also* <u>Barnes v. Oklahoma Farm Bureau Mut. Ins. Co.</u>, 11 P.3d 162, 172-174 (Okla. 2000)(an insurer's "interpretation" of the policy and law must be reasonable in light of "existing case law.")

The application of §3009.1 as a procedural defense in a contractual UM claim evaluation would contravene Oklahoma law which disallows a UM/UIM insurer from relying on tortfeasor procedural protections and would "violate §3636 by reducing the amount of coverage available under the uninsured motorist provisions to less than the amount required by statute." *See* <u>Chambers v. Walker,</u> 653 P.2d 931, 933-35 (Okla. 1982)(rejecting the net recovery theory finding that attempts to set-off payments, diminish recovery, or reduce UM benefits to those amounts paid were done "in derogation of

---

[12] The words "Incurred" and "billed" regarding medical billing are the same and that "paid" medical billing is different from incurred or billed. *PUDF 31; 30(b)(6) Depo of Chris Ferris*, 93:6-12, **Exhibit 6**.

legislative purpose" in §3636). The prohibition on setoffs or reductions to UM coverage exists because UM is considered first-party coverage without regard for any other source of benefits available to the insured. *See* Burch v. Allstate Ins. Co., 977 P.2d 1057, 1058 (Okla. 1998) (uninsured motorist carrier is "liable for the entire amount of its insured's loss from the first dollar up to the UM policy limits without regard to the presence of any other insurance.") As stated in Burch, a UM carrier must "assure each UM insured receives the *full* contracted coverage for which a premium has been paid." Id. at 1061, fn. 19, *citing* Bohannan v. Allstate Ins. Co., 820 P.2d 787, 792 (Okla. 1991)(§3636 controls the application and effect of any credit or setoff provisions that may attempt to reduce Oklahoma UM coverage). These principles of contract damages applicable to UM/UIM policies in Oklahoma have consistently been upheld, and Progressive's consideration of Willis' paid medical billing instead of the incurred medical billing provided for in the contract of insurance and §3636 is unenforceable in light of precedent. *See* Karlson, 711 P.2d at 75 (recognizing that insureds and insurers contemplate the terms of the contract which bind those parties to considering and paying for specific damages).

Willis' demand for UM coverage was not a trial of a "personal injury action" allowing Defendant to unilaterally reduce his coverage by resorting to the evidentiary trial admissibility procedural protections of §3009.1 absent specific statutory or contractual language to that effect. A UM claim sounds in contract, and Defendant unreasonably distorted the "economic damages incurred" language in the policy and "pecuniary losses incurred" in §3636(F) while improperly availing themselves of the 3rd party *paid vs.*

*incurred* procedural protections afforded to defendant tortfeasors in a personal injury trial to reduce Billie Willis' UM contractual benefits.[13]

Plaintiff respectfully requests a Court Order that Defendant was required to consider and place a value on his claim utilizing the incurred medical billing in the claim for coverage in accordance with the policy language and 36 O.S. §3636(F). Further, Plaintiff respectfully requests the Court enter an Order determining as a matter of law that 12 O.S. §3009.1 is not applicable to Plaintiff's contractual claim for UM/UIM coverage because the policy and 36 O.S. §3636 provide for the submission and consideration of incurred/billed economic damages.

### 4) The Oklahoma Administrative Code Prevents Defendant from Taking a Credit on Billie Willis' Medical Billing because he has Health Insurance.

The purpose of Title 365-Insurance found in the Oklahoma Administrative Code ("OAC") is to "provide regulations relating to property and casualty insurance." *Section 365:15-1-1*. "Administrative rules are valid expressions of lawmaking powers having the force and effect of law." <u>Estes v. ConocoPhillips Co.</u>, 184 P.3d 518, 523 (Okla.2008); *see also* 75 O.S. §308.2(C)(agency rules pursuant to the Administrative Procedures Act "shall have the force of law," and "shall be prima facie evidence of the proper interpretation of the matter to which they refer"). The "nature and purpose" of administrative regulations

---

[13] Willis' lawsuit against Ms. Maddox was dismissed with prejudice on March 25, 2022. *PUDF No. 37.* Defendant completed their "re-evaluation" of his claim on April 14, 2022, and again denied payment under his policy due to the application of §3009.1. Thus, when Defendant re-evaluated his claim for UM/UIM benefits, there was no longer any "civil action arising from personal injury" which Defendant could questionably or reasonably rely upon in utilizing §3009.1 to reduce his claim for UM/UIM benefits. *PUDF No. 39.* Regardless of the timeline, Plaintiff adheres to his argument that §3009.1 is a procedural defense unavailable to a UM carrier.

may be examined for purposes of summary judgment. <u>U.S. v. AHS Tulsa Reg'l Med. Ctr. LLC</u>, 754 F.Supp.2d 1270, 1274-75 (N.D. Okla. 2010).

The OAC prohibits an insurer such as Progressive from issuing a policy of insurance that reduces UM/UIM coverage because the insured has health insurance.

> 365:15-1-17. Standard policy provision – life and health insurance provisions No insurance policy or contract shall be made, issued or delivered by any insurer or by any agent or representative thereof that limits or reduces medical payments or uninsured motorist coverage because the injured party has insurance through a life and or health insurance provider. If the Insurance Commissioner waives this requirement, the initial page of the policy shall include a conspicuous notice indicating that the contract reduces or limits the medical payments or uninsured motorist coverage, because the injured party has insurance through a life and health provider and advising the policyholder to read its provisions.[14]

As a standard business practice, Progressive takes a credit for health insurance setoffs in UM/UIM evaluations. *PUDF Nos. 9, 13-14, 16-17.* Here, Progressive claimed and utilized a Blue Cross Blue Shield health insurance contractual write-off in the amount of $14,579.82 from the $15,967.45 Integris Hospital incurred medical billing. [Integris Bill, Doc. No. 43-15, pp. 4-5.] By availing themselves of this offset, Progressive reduced Willis' total incurred medical billing from $28,249.44 to the paid amount of $10,034.00. Despite their admitted business practice, Progressive admits that it is bound to follow the OAC. *PUDF No. 15.*

In Oklahoma, "insurance policies are issued pursuant to statutes, and the provisions of those statutes are given force and effect as if written into policy." <u>Thurston</u>, 478 P.3d at

---

[14]    https://casetext.com/regulation/oklahoma-administrative-code/title-365-insurance-department/chapter-15-property-and-casualty/subchapter-1-general-provisions/section-36515-1-17-standard-policy-provision-life-and-health-insurance-provisions

420–21. In drafting and issuing the policy, Defendant was prohibited by 365:15-1-17 from limiting or reducing available UM/UIM coverage because Billie Willis secured and paid for his own health insurance. Accordingly, no such language exists in the policy of insurance at issue here. *PUDF Nos. 14, 16-17; see* Wiley, 534 P.2d at 1296 (an insurer "may limit the risk for which it is responsible" if such limit is allowed by statute or precedent).

It is "patently unreasonable" for an insurer to conduct themselves in a manner that is "manifestly untenable" in light of the law. Barnes, 11 P.3d at 173. The Oklahoma Supreme Court has repeatedly found attempts to reduce UM coverage benefits because the insured had other insurance or received other benefits as improper. *See* Aetna v. State Bd. for Property and Cas. Rates, 637 P.2d 1251 (Okla. 1981)(medical payments insurance cannot be set-off against UM coverage); Chambers, 653 P.2d 931 (Okla. 1982)(workers' compensation benefits cannot be used to reduce the mandatory UM coverage limits); Bohannan, 820 P.2d at 792 (unless expressly allowed by the language of 36 O.S. §3636, the statute (§3636) controls the application and effect and would prohibit any credit or setoff provisions because of other insurance coverage that may attempt to reduce Oklahoma UM coverage); Burch, 977 P.2d at 1064-65 (UM carrier not entitled to setoff of liability limits or payments made by other collateral sources); *see also* Stout, 645 N.W.2d at 113-14 (UM carrier not entitled to the health insurance reduction in the incurred medical bills because doing so would  incentivize "no-fault insurers to delay the payment[15] of

---

[15] There is a "speedy payment mechanism" inherent in Oklahoma's Uninsured Motorist statute. Phillips v. N.H. Ins. Co., 263 F.3d 1215, 1225 (10th Cir. 2001). Insured entitled to "swift payment"

meritorious claims in the hope that the injured person's health insurer will step in and pay his or her medical bills at a discounted rate.") It is settled under Oklahoma law "there be no dilution of benefits pertaining to uninsured motorist coverage" including any setoffs or credits from other sources absent statutory allowance provided for in §3636. Roberts, 790 P.2d 1121, 1123-25 (Okla. Civ. App. 1989)(insurer not allowed a credit from other sources because "[w]henever the coverage applies, the insured gets it all from the carrier.").

The same sound principles apply here. Progressive prudently did not include language in the policy that is expressly prohibited by 365:15-1-17 absent allowance by the Oklahoma Insurance Commissioner. However, Defendant affirmatively trained its employees to take health insurance offsets or contractual write-offs to reduce UM coverage and benefits to Willis (and presumably thousands of others) despite their legal inability to include such language in the policy. There is no provision in the policy that allows Defendant to take a credit for health insurance write-offs. *PUDF No. 14.* Progressive's actions during the adjustment process in availing themselves of Willis' health insurance contractual write-offs violates the nature and purpose of 365:15-1-17 and 36 O.S. §3636 prohibiting setoffs or credits against the paid for UM coverage. *PUDF No. 16.*

These actions were in violation of the OAC and Oklahoma law prohibiting setoffs or attempts to limit or reduce UM/UIM coverage because Billie Willis paid for his own health insurance. *See* Barnes, 11 P.3d at 171("only a rudimentary appreciation of

---

because UM coverage is primary. Dennis v. Progressive N. Ins. Co., No. CIV-17-182-SLP, 2018 WL 4868956, at *4 (W.D. Okla. Mar. 23, 2018)

underinsurance motorist coverage under Oklahoma law—both statutory and jurisprudential—is necessary" to show the unreasonableness of an insurer's actions); *see also* Tomlinson v. Combined Underwriters Life Ins. Co., 708 F. Supp. 2d 1284, 1298 (N.D. Okla. 2010)(denying summary judgment to insurer because the OAC provides regulations "forbidding" certain actions by insurers regarding the payment of benefits under Oklahoma insurance policies).

Plaintiff seeks an Order finding as a matter of law that Defendant violated the "nature and purpose" of the Oklahoma Administrative Code 365:15-1-17 by reducing and denying UM/UIM coverage to Billie Willis on his claim because he had health insurance. Additionally, Plaintiff seeks an Order finding as a matter of law that Defendant breached the contract of insurance by reducing the amount of Billie Willis' UM coverage because he secured and paid for his own health insurance and that Billie Willis was entitled to UM coverage.

**5) Lien Filing Fees are Economic Damages Covered Under the UM/UIM Policy.**

Three of Billie Willis' medical providers treated him on a lien basis. In doing so, they charged him a lien filing fee on his medical billing records. *PUDF No. 18.* In seeking treatment, these three providers required Willis to sign an Assignment of Benefits that he would be responsible for any charges and that a lien would be filed. (*Claim File,* PROG-WILLIS 203, 207, 212, **Exhibit 3**.) Defendant deducted $150.00 in lien filing fees from its evaluation of Willis' damages because it believes they are "administrative charges" Willis wouldn't be legally entitled to recover. *PUDF No. 19, 21.* There is no provision in the contract allowing the deduction of lien filing fees. *PUDF No. 22.*

Willis' UM policy provides *broad coverage* for losses pursuant to the legally entitled to recover language to include: (1) economic damages; (2) medical bills; (3) lost wages; (4) economic damages related to the injury claim; (5) noneconomic damages; (6) past, present, and future pain and suffering; (7) mental and physical pain and suffering; (8) disfigurement; (9) loss of consortium; (10) impairment; and (11) permanency. *PUDF Nos. 23, 25; Deady Depo,* 27:24-28:10, **Exhibit 1**. Lien filing fees are economic damages related to the bodily injury claim as the policy of insurance provides coverage for "all economic damages incurred" "because of bodily injury." [*Policy,* Doc. No. 6-2, p.15.] Willis is required to pay the lien filing fees. *PUDF No. 20;* PROG-WILLIS 203, 207, 212, **Exhibit 3.**

Willis paid UM premiums to provide himself and his family with coverage for damages resulting from uninsured or underinsured motorists. The lien filing fees charged by his medical providers are economic damages under Oklahoma law as they clearly meet the definition of any type of pecuniary harm or any other costs incurred:

> 2. "Economic damages" means any type of pecuniary harm including, but not limited to:
>
> a. all wages, salaries or other compensation lost as a result of a bodily injury that is the subject of a civil action,
>
> b. all costs incurred for medical care or treatment, rehabilitation services, or other care, treatment, services, products or accommodations as a result of a bodily injury that is the subject of a civil action, or
>
> c. any other costs incurred as a result of a bodily injury that is the subject of a civil action;

23 O.S. §61.2-**Limitations on Damages for Bodily Injury**; <u>Government Employees Ins. Co. v. Quine</u>, 264 P. 3d 1245, 1247, fn.2 (Okla. 2011)(economic damages pursuant to an uninsured motorist policy are defined according to Section 61.2).

"People who pay for UM coverage should get what they paid for." <u>Coates v. Progressive Direct Ins. Co.</u>, 512 P.3d 345, 350 (Okla. 2022). A UM insurer is not allowed to question the "reasonableness or necessity of the medical services or expenses" absent specific policy language. <u>Falcone</u>**,** 391 P.3d at 110 (concurring)(UM coverage is based on the contract language to pay for damages). The contract of insurance covers economic damages, thus covering the lien filing fees included on the medical billing statements. Plaintiff seeks an Order finding as a matter of law that the lien filing fees charged to Billie Willis were economic damages covered under his UM policy of insurance.

## Conclusion

Fundamentally, the actions taken by Progressive in the evaluation of Billie Willis' claim are flawed and not supported by the policy language, 36 O.S. §3636, or established Oklahoma law. A UM/UIM insurer such as Progressive must evaluate a claim for UM/UIM coverage based on the terms of the contract and §3636. To do so in any other manner would contravene the Oklahoma Supreme Court's prior pronouncements that a UM carrier is not allowed to step into the shoes of a tortfeasor to assert procedural protections and further that a UM insurer is not allowed to avail itself of offsets from other sources.[17]

Despite the established case law and clear statutory language of §3009.1,

---

[17] <u>Burch,</u> 977 P.2d at 1064-65; <u>Chambers,</u> 653 P.2d at 933-35 (unambiguously rejecting the "net recovery theory" in UM/UIM claims).

Progressive nevertheless pursued a purposeful business practice of valuing cases on what paid medical billing a tortfeasor *might* be able to admit if the evidentiary admissibility requirements of §3009.1 were met at some hypothetical future trial that may never happen. Underscoring the legal hurdles that would necessarily have to be cleared to undertake such a radical change in UM/UIM claim evaluations is the admission by Progressive that the UM/UIM section in the policy lacks any reference to utilizing paid medical billing or health insurance setoffs in claims evaluations. Progressive sold Billie Willis a policy of insurance requiring him to submit incurred economic damages and Progressive then attempted to gain an economic advantage by ignoring the policy, §3636, and the Oklahoma Administrative Code in valuing his claim for coverage. Progressive's position lacks any reasonable justification.

Summary judgment is proper as a matter of law in favor of Plaintiff finding that the *paid vs. incurred* provisions of 12 O.S. §3009.1 do not apply to UM/UIM claims as it is a procedural protection afforded to tortfeasors; lien filing fees are economic damages covered under the policy of insurance; and Progressive is not permitted to exploit the health insurance setoffs entitling Plaintiff to summary judgment on his breach of contract claim.

Respectfully submitted,

s/ Jason Waddell
Jason Waddell, OBA No. 30761
Jason Waddell, PLLC
222 NW 13th Street
Oklahoma City, OK 73103
Telephone:    (405) 232-5291
Facsimile:     (405) 708-7871
Jason@JasonWaddellLaw.com
**ATTORNEY FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

    I hereby certify that on May 23, 2023, I electronically transmitted the attached document to the following ECF registrants:

Christopher C. King
Bradley E. Bowlby

s/ Jason Waddell               
Jason Waddell
