# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **(1) BILLIE WILLIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No.: 5:22-CV-349-SLP** |
| | ) | |
| **(1) PROGRESSIVE DIRECT** | ) | |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

_____

## DEFENDANT'S RESPONSE TO PLAINTIFF'S
## MOTION FOR PARTIAL SUMMARY JUDGMENT
_____

Respectfully Submitted by:

**STARR, BEGIN & KING**

s/Bradley E. Bowlby_____
Christopher C. King, OBA #18578
Bradley E. Bowlby, OBA #22847
1800 S. Baltimore, Ste 550
Tulsa, OK 74119
Tel:    (918) 872-0374
Fax:    (918) 872-0381
Email: kris.king@tulsalawyer.org
         brad.bowlby@tulsalawyer.org
*Attorneys for Defendant Progressive*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................... ii

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION ....................................................................................................... 1-2

DEFENDANT'S RESPONSE TO PLAINTIFF'S UNDISPUTED FACTS ................. 2-11

UNDISPUTED MATERIAL FACTS ........................................................................ 12-18

SUMMARY JUDGMENT ........................................................................................ 18-19

ARGUMENT AND AUTHORITIES ........................................................................... 20

    I.  OKLAHOMA LAW ALLOWS PROGRESSIVE TO REFUSE TO INCLUDE IN ITS MONETARY EVALUATION OF PLAINTIFF'S UNDERINSURED MOTORIST CLAIM MEDICAL BILLS THAT WERE NEVER OWED ........... 20

        A.  Application of 3009.1 ............................................................................ 20

        B.  Oklahoma Administrative Code 365:15-1-17 .................................... 26

        C.  Lien Filing Charges ............................................................................ 27

CONCLUSION ........................................................................................................... 29

CERTIFICATE OF SERVICE ..................................................................................... 30

# TABLE OF AUTHORITIES

Fed.R.Civ.P. 56.................................................................................................. 18

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548 .................................. 18

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505 ....................... 19

*Kendall v. Watkins*, 998 F.2d 848 (10th Cir.1993) .......................................... 19

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348 . 19

*Garratt v. Walker*, 164 F.3d 1249 (10th Cir.1998) .......................................... 19

12 O.S. 3009.1 .................................................................................................. 20

*Perry v. Safeco Ins. Co. of America*, 18-cv-539-TCK-FHM (N.D. Okla. 2020) ............. 20

*Klintworth v. Valley Forge Ins. Co.,* 2022 WL 1021750 *2 n.4 (10th Cir. 2022) ........... 20

*Phillips v. Farmers Ins. Co. Inc.*, 2018 WL 11447251 (N.D. Okla. 2018) ..................... 20

*Uptegraph v. Home Ins*. Co., 662 P.2d 681, 684 (Okla. 1983) ....................... 22

*Torres v. Kansas City Fire & Marine Ins. Co.*, 849 P.2d 407 (Okla. 1993) .................. 22

*Lee v. Bueno*, 381 P.3d 736 (Okla. 2016) ....................................................... 23

*Burch v. Allstate Ins. Co.*, 977 P.2d 1057, 1063 (Okla. 1998) ........................ 24

Oklahoma Administrative Code 365:15-1-17 .................................................. 26

**COMES NOW** the Defendant, Progressive Direct Insurance Company ("Progressive"), by and through its attorneys of record of the law firm of Starr, Begin & King, PLLC, and hereby responds and objects to the Plaintiff's motion for partial summary judgment (Dkt. #71) in this matter. In support, Progressive would state and aver as follows:

## INTRODUCTION

This is an action for breach of contract and bad-faith handling of a first party claim for uninsured/underinsured motorist (UM/UIM) coverage. On September 9, 2021, Billie Willis was involved in a two-vehicle collision with non-party Jessica Maddox. At the time, Willis was a party to a contract for insurance with Progressive that included uninsured/underinsured motorist (UM/UIM) coverage in the amount of $25,000.00. Willis subsequently settled with Maddox for the $25,000.00 liability limits of her policy, then demanded his UM/UIM policy limits from Progressive.

Willis argues that Progressive failed to uncover two of his medical bills or take certain of his personal circumstances into account, and, thus, failed to properly and promptly investigate his UM/UIM claim. Willis further argues that Progressive wrongfully discounted adjustments/write offs and lien filing fees from Willis' medical bills, and, thus, failed to properly evaluate the results of its investigation.

Now, Willis asks the Court for summary judgment on his breach of contract claim, as well as the following declarations: that 12 O.S. §3009.1 does not apply to UM/UIM claims; that Defendant is prohibited from taking a credit or offset on Billie Willis' medical billing because he has health insurance; and that lien filing fees are economic damages covered under the UM/UIM policy.

1

Progressive is entitled to summary judgment for breach of contract because the Plaintiff's UM/UIM claim never amounted to $25,000.00. Although the parties agree that the non-economic damages range of the Plaintiff's claim was $8,000 – $13,000.00, the amount he was "legally entitled to collect" from Maddox for economic damages/medical specials did not amount to $12,000.00. While the Plaintiffs medical bills total $28,249.46, Oklahoma law only allows him to recover the amounts paid, which total only $9,022.43.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S UNDISPUTED FACTS

1. This statement is are merely a legal conclusion, which is insufficient to satisfy the requirements of FED.R.CIV.P. 56. *See Morgan v. Willingham*, 424 F.2d 200, 202 (10th Cir. 1970). This statement also violates LCvR 56.1(b), as Plaintiff does not set forth a "material fact" to which Plaintiff contends no genuine dispute exists. Regardless, when asked in his deposition how Progressive engaged in bad faith, as it concerns Plaintiff's UIM claim, Plaintiff stated: "I don't know." *See* Ex. "1": Pl.'s Depo., 198:5-8

2. Admitted.

3. Defendant admits policy number 921019729 ("Policy") was in force and effect between Defendant and Melissa Willis on September 9, 2021. Defendant also admits that $25,000.00 in underinsured motorist coverage is available to Plaintiff under the Policy should he be able to demonstrate that the reasonable value of his damages exceed Maddox's liability limits of $25,000.00. *See* Dkt. 6-1 and 6-2; *see also* Ex. "2": Aff. of McMillen, ¶ 2.

4. Disputed. The medical records clearly demonstrate Plaintiff completed treatment on December 21, 2021. Defendant agrees Plaintiff suffered an aggravation of his preexisting

injuries due the 2021 accident. As set forth below in Defendant's Undisputed Material Facts ("UMF") 1, 2, 4, 5, 6, 7 & 9, Plaintiff merely experienced an increase in pain to the same body parts previously injured in a prior automobile accident. *See* Ex. "1": Pl.'s Depo., 98:23 – 100:8 & 180:2-8. Defendant does admit Plaintiff sought medical treatment for these aggravated injuries for 104 days post-accident at many of the same facilities he sought treatment at for his prior accident. Plaintiff does not cite to any evidentiary material to support his statement that the medical treatment was "required". As set forth below in Defendant's UMFs 11 & 12, Plaintiff was able to resume his normal activities shortly after the 2021 accident.

5. Defendant admits on March 6, 2022, it received from Plaintiff's counsel a one-page letter and corresponding documents, which are attached as EXH. 3 (hereinafter the "Demand Letter"). The Demand Letter enclosed the majority – but not all – of Plaintiff's medical records and bills Plaintiff related to the accident and a signed (but not dated) medical authorization. Plaintiff's counsel failed to include the radiologist billing and the EMSA billing and records. The Medical Authorization provided could not be used by Progressive even if it had decided to order the missing records and bills because Plaintiff did not date the document. *See* Ex. "2": Aff. of McMillen, ¶ 3.

6. Disputed. The Demand Letter and attachments attached as EXH. 3 are self-explanatory. Defendant admits Mr. Bennett provided an incomplete itemization of medical billing (for example the amount of billing listed for EMSA is "$____") with a total listed as $25,529.00. The Demand Letter did not provide any of the radiology billing. *See* Ex. "2": Aff. of McMillen, ¶ 3. Plaintiff does not cite to any evidentiary material to support his

statement that these medical bills were "incurred." To the contrary, Mr. Bennett provided a medical bill from Integris E.R. detailing that the bill had been reduced $14,605.73 based upon a contractual adjustment with Blue Cross/Blue Shield. The Integris E.R. bill clearly states that $1,397.72 was owed and the rest of the bill was written off. *See Id*. Plaintiff admits that of the $25,529.00 his attorney submitted, he only paid $144.63 out of his own pocket. *See* Ex. "1": Pl.' Depo., 149:10-16. The rest of the bills were paid by the liability proceeds received by USAA. *Id*. at 227:25 – 228:3.

7. Defendant admits it did not utilize the deficient medical authorization. Defendant did investigate whether there was an EMSA bill by speaking directly with Mr. Bennett about the missing EMSA bill. *See* Ex. "4": Depo of Roell, 63:4-8; *see also* Ex. "5": Claim Notes, 3/9/22 at 4:59 EST. Mr. Bennett advised he was unable to obtain the EMSA bill and that in Mr. Bennett's opinion the EMSA bill did not affect the overall value of the claim. *Id*. Progressive specifically asked Mr. Bennett to provide the bill but it was never provided before Plaintiff filed suit against Progressive. *See* Ex. "4": Depo of Roell, 76:13-18. Likewise, Plaintiff never provided to Progressive the radiology billing before suit was filed. *See* Ex. "2": Aff. of McMillen, ¶ 4.

8. Defendant admits it waived its rights of subrogation on March 8, 2022, allowing Plaintiff to settle with Jessica Maddox for $25,000.00. *See* "Ex. "6": Corresp. from Roell to Pl.'s counsel. From the liability settlement, all of Plaintiff's medical bills were paid in full, Plaintiff's attorney took his percentage, and Plaintiff received the residual balance in excess of $5,000.00. *See* Ex. "1": Pl.'s Depo, 164:7 – 165:16.

9.   Disputed. Plaintiff inappropriately mixes legal and factual allegations.  Plaintiff did not "incur" $25,529.00 in medical bills related to the accident.  Regardless, Defendant's procedure that it followed in response to receiving Plaintiff's medical bills was to: (1) confirm the actual amount of the bill; (2) confirm the treatment charged for was related to the accident; (3) confirm whether any contractual payments and/or adjustments were made due to the presence of health insurance, and then confirm the patient balance.  If the medical bills presented/obtained confirm payments and/or adjustments to the bill with no balanced billing of those amounts to the patient/insured, then Progressive would only consider the amount paid by health insurance, plus the remaining patient balance, as part of its monetary evaluation in accordance with the legal training it received in applying § 3009.1, the Policy and Oklahoma case law.  In this case, Plaintiff's bill from Integris totaled $16,003.45.  However, Plaintiff was insured with BlueCross/BlueShield.  As a result, Integris was contractually required to adjust or "write off" $14,605.73 after BlueCross/BlueShield paid Integris $1,253.09.  Plaintiff's patient balance owed to Integris was $144.63.  Thus, based upon Progressive's understanding of Oklahoma law and in reliance on the Policy, Plaintiff's allowable or "incurred" medical bill from Integris, for which Progressive considered, was $1,397.72. *See* Ex. "2": Aff. of McMillen, ¶ 5. Plaintiff admits he does not even remembering paying the $144.63 he owed for the E.R. bill.  Plaintiff admits nobody has ever asked him to pay the $14,605.73 that was written off.  Plaintiff admits he did not pay the write off amount.  When asked if Plaintiff was claiming as damages the write off amount, Plaintiff stated: "I don't know, really."  *See* Ex. "1": Pl.'s Depo., p. 133:4 – 138:4.

10. Admitted but irrelevant. As set forth below in the Arguments and Authorities section, Progressive contends Oklahoma is clear that signed statements or sworn testimony are unnecessary by the very terms of § 3009.1, in a situation such as this.

11. Disputed. This statement is a gross misrepresentation of the testimony provided by Progressive employees Deady and McMillen. McMillen specifically testified that he and all other Progressive employees handling Oklahoma UIM claims are trained yearly on how to correctly apply § 3009.1, Oklahoma law, and the Policy to an Oklahoma UIM claim. That procedure is referenced above in paragraph 14. *See also* Ex. "8": McMillen Depo. 40:14 – 41:22. Deady testified similarly when he stated he and other Progressive employees are trained yearly concerning how to properly apply § 3009.1 to a claim such as Plaintiff's. *See* Ex. "9": Deady's Depo., 14:21-25; 41:2 – 45:10; 50:9-14; 52:9-13; 53:6-19. Deady specifically testified Progressive employees utilize the legal training provided to apply § 3009.1, the Policy, and Oklahoma law (specifically including *Lee v. Bueno*), to claims such as Plaintiff's. For Plaintiff to insinuate that the only reason Progressive does not considered portions of bills that have been written off because of training solely related to the interpretation of "legally entitled to recover" is expressly denied.

12. Disputed. The Policy speaks for itself. *See* Dkt. 6-1 and 6-2. The Policy specifically states in the Insuring Agreement, under Part III–Uninsured Motorist Coverage, that Progressive "will pay for damages that an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury..." As set forth below, applying Oklahoma law, Progressive correctly refused to allow as damages medical bills for which Plaintiff was never responsible for.

13. Defendant admits it trains its employees, when handling an Oklahoma UIM claim, to only consider those bills allowable in accordance with § 3009.1, Oklahoma law, and the Policy, as detailed in paragraphs 14 and 16 above.

14. Disputed. The Policy speaks for itself. *See* Dkt. 6-1 and 6-2. The Policy specifically states in the Insuring Agreement, under Part III–Uninsured Motorist Coverage, that Progressive "will pay for damages that an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury..." As set forth below, applying Oklahoma law, Progressive correctly refused to allow as damages medical bills for which Plaintiff was never responsible for.

15. This statement is merely a legal conclusion, which is insufficient to satisfy the requirements of Fed. R. Civ. P. 56. *See Morgan v. Willingham*, 424 F.2d 200, 202 (10th Cir. 1970). This statement also violate LCvR 56.1(b), as Plaintiff does not set forth a "material fact" to which Plaintiff contends no genuine dispute exists. Regardless, when asked in his deposition how Progressive engaged in bad faith, as it concerns Plaintiff's UIM claim, Plaintiff stated: "I don't know." *See* Ex. "1": Pl.'s Depo. p. 198:5-8.

16. Disputed. Defendant's procedure that it followed in response to receiving Plaintiff's medical bills was to: (1) confirm the actual amount of the bill; (2) confirm the treatment charged for was related to the accident; (3) confirm whether any contractual payments and/or adjustments were made due to the presence of health insurance, and then confirm the patient balance. If the medical bills presented/obtained confirm payments and/or adjustments to the bill with no balanced billing of those amounts to the patient/insured, then Progressive would only consider the amount paid by health insurance, plus the

remaining patient balance, as part of its monetary evaluation in accordance with the legal training it received in applying § 3009.1, the Policy and Oklahoma case law. In this case, Plaintiff's bill from Integris totaled $16,003.45. However, Plaintiff was insured with BlueCross/BlueShield. As a result, Integris was contractually required to adjust or "write off" $14,605.73 after BlueCross/BlueShield paid Integris $1,253.09. Plaintiff's patient balance owed to Integris was $144.63. Thus, based upon Progressive's understanding of Oklahoma law and in reliance on the Policy, Plaintiff's allowable or "incurred" medical bill from Integris, for which Progressive considered, was $1,397.72. *See* Ex. "2": Aff. of McMillen, ¶ 5. Plaintiff admits he does not even remembering paying the $144.63 he owed for the E.R. bill. Plaintiff admits nobody has ever asked him to pay the $14,605.73 that was written off. Plaintiff admits he did not pay the write off amount. When asked if Plaintiff was claiming as damages the write off amount, Plaintiff stated: "I don't know, really." *See* Ex. "1": Pl.'s Depo., p. 133:4 – 138:4.

17. Disputed. See Rsp. to Pl's SUMF #16.

18. Disputed. The citation to Plaintiff's medical bills to support that Plaintiff received medical treatment on a "lien basis" does not support the SOMF. Plaintiff had health insurance with Blue Cross/Blue Shield at the time of the accident, as documented by the medical bills Plaintiff relies upon. *See also* Ex. "1": Pl.'s Depo., 133:15–25 & 213:22-25. Regardless, Plaintiff decided to obtain medical treatment at facilities that would not initially accept his health insurance. *Id*. at 222:19–223:20; *see also* Ex. "10": Assignment of Benefits signed by Plaintiff. Defendant does admit that Plaintiff's medical providers improperly placed on the bills exuberant charges for "lien filings." Not even Plaintiff

knows why his medical providers charged the $50.00 lien filing fees. *See* Ex. "1": Pl.'s Depo., p. 142:10-21.

19. Defendant admits it refused to consider as economic damages the improper lien filing charges listed on Plaintiff's medical bills as part of its evaluation of Plaintiff's UIM claim. Regardless, all three liens have been released. *See* Ex. "11": Lien Releases.

20. Denied. Plaintiff never paid the lien filing fees listed on the bills. When asked, under oath, if the lien fees were "something you ultimately had to pay?", Plaintiff responded "no". *See* Ex. "1": Pl.'s Depo., 209:16-18. The first time Plaintiff became aware that a $50 lien charge was on the medical bill was during his deposition in November 2022. *Id*. at 140:7-23. Plaintiff had no understanding why there were lien filing charges on his bills. *Id.* at 142:10-21.

21. Defendant admits it refused to consider as economic damages the improper lien filing charges on Plaintiff's medical bills as part of its evaluation of Plaintiff's UIM claim.

22. Disputed. The Policy of insurance speaks for itself. *See* Dkt. 6-1 and 6-2. The Policy specifically states in the Insuring Agreement under Part III–Uninsured Motorist Coverage that Progressive "will pay for damages that an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury..." Applying Oklahoma law, Progressive correctly refused to allow as damages lien filing fees that Plaintiff was never responsible for and never paid.

23. Disputed. The Policy of insurance speaks for itself. *See* Dkt. 6-1 and 6-2. The Plaintiffs purported "responsibility for any lien filing fees charged to him" is a mere legal conclusion, insufficient to satisfy the requirements of FED.R.CIV.P. 56. *See Morgan v.*

*Willingham*, 424 F.2d 200, 202 (10th Cir. 1970). When asked, under oath, if the lien fees were "something you ultimately had to pay?", Plaintiff responded "no". *See* Ex. "1": Pl.'s Depo., p. 209:16-18. The first time Plaintiff became aware that a $50 lien charge was on the medical bill was during his deposition in November 2022. *Id.* at 140:7-23. Plaintiff had no understanding why there were lien filing charges on his bills. *Id.* at 142:10-21.

24. See Rsp. to Pl.'s SOMF #23.

25. See Rsp. to Pl.'s SOMF #23.

26. Admitted. Plaintiff was specifically asked what was wrong those numbers and he testified "I don't know." *See* Ex. "1": Pl.'s Depo., p. 196:3-16.

27. Disputed. As set forth in Def.'s UMF 10, Plaintiff incurred $9,022.44 in medical bills he attributes to the 2021 accident.

28. These statements are improper legal conclusions. Plaintiff uses the terms "incur" and "paid" in direct reference to § 3009.1(A) "... the actual amounts paid... shall be the amounts admissible at trial, not the amounts billed for such expenses incurred..." and then cites to the testimony of Progressive employees to support his interpretation of the law. This court is charged with interpreting Oklahoma law and its application to Plaintiff's claim; not Plaintiff, Plaintiff's counsel, Progressive employees or Progressive's counsel.

29. See Rsp. to Pl.'s SOMF #28.

30. See Rsp. to Pl.'s SOMF #28.

31. See Rsp. to Pl.'s SOMF #28.

32. See Rsp. to Pl.'s SOMF #28.

33. Admitted but irrelevant. As set forth below in the Arguments and Authorities section, Progressive contends Oklahoma is clear that signed statements or sworn testimony are unnecessary by the very terms of § 3009.1, in a situation such as this.

34. See Rsp. to Pl.'s SOMF #33.

35. See Rsp. to Pl.'s SOMF #33.

36. Disputed. Defendant did not deny Plaintiff's UIM claim and the reference to the letter does not support this statement. Plaintiff specifically testified Progressive did <u>not</u> deny his claim. *See* Ex. "1": Pl.'s Depo., 190:10-14.

37. Admitted.

38. Disputed. The letter Plaintiff references to support his statement that Plaintiff's claim was denied does not support the allegation his claim was "denied". The letter states "I've completed a re-evaluation of Mr. Willis' claim and have found that a valid underinsured motorist claim has not yet been presented. We will, of course, consider any additional information that you would like to present in this matter." Plaintiff specifically testified Progressive did <u>not</u> deny his claim. *See* Ex. "1": Pl.'s Depo., 190:10-14.

39. Disputed, per Rsp. to SOMF # 38. Further, this statement is an improper legal conclusion. Plaintiff uses the term "personal injury trial" in direct reference to 12 O.S. § 3009.1(A) "Upon the trial of any civil action arising from personal injury..." and then cites to the testimony of Progressive employees to support his interpretation of the law. Defendant admits that Willis dismissed his suit against Maddux on March 25, 2022.

# UNDISPUTED MATERIAL FACTS

<u>Events That Occurred Prior to the September 2021 Accident</u>

1. On May 28, 1981, Plaintiff (age 18 at the time) was driving a motorcycle 115 mph on an Oklahoma county road when he lost control. Plaintiff was thrown 80 feet from the motorcycle. As a result, Plaintiff's spinal cord was severed at T-5, rendering him a paraplegic. *See* Ex. "1": Pl.s Depo, p 36:24 – 43:14.

2. Unfortunately, on June 16, 2019, Plaintiff was involved in another automobile accident. *See* Ex. "12": Kansas Motor Vehicle Crash Report. Plaintiff had just finished competing in a hand cycling event in Wichita, Kansas and was returning to Oklahoma. A young lady ran a stop sign and impacted the vehicle Plaintiff was riding in as a passenger, causing the vehicle to roll over. Plaintiff was extracted from the vehicle and rushed to the emergency room as a "code yellow – possible serious injuries." *Id*.

3. After the 2019 accident, Plaintiff hired attorney Kevin Bennett to assist him with his personal injury claim. *See* Ex. "13": Corresp. to Farm Bureau, 08/01/19.

4. After the 2019 accident, Plaintiff sought treatment at The Broadway Clinic, where he complained of and was diagnosed with "significant" injuries to his neck, back, shoulders, wrists, and hands (radiating pain from his neck, down both shoulders, and to both hands and his fingers), coupled with post-traumatic stress and anxiety. *See* Ex. "1": Pl.'s Depo, p. 88:6-23; 93:2-10; 98:20 – 99:17; 158:11-20. Eventually, in February 2020, it was recommended by Plaintiff's doctors that Plaintiff undergo surgery on his shoulder and left hand to reduce the pain. *See Id.* at p. 97:2-14.

5.  In August 2020, Mr. Bennett sent correspondence to Farm Bureau (the liability carrier) advising that Plaintiff had incurred or would incur in excess of $100,000.00 in medical bills for medical treatment related to the 2019 accident. Mr. Bennett specifically advised Farm Bureau that Plaintiff would need a complete shoulder replacement surgery. *See* Ex. "14": Corresp. to Farm Bureau, 08/17/20.

6.  As a result of the 2019 accident and his injuries, Plaintiff could not properly care for his wife. *See* Ex. "1": Pl.'s Depo, p. 84:2-7; 87:19 – 88:5.  Plaintiff could also no longer work as a car salesman. *Id*. at p. 22:3-8. Plaintiff filed for Social Security Disability because of paralysis and his shoulder injury. *Id*. at p. 79:14 – 81:22.

Events that Occurred After the September 2021 Accident

7.  Plaintiff never had surgery on his left hand or shoulder. As a result, he was still having pain that impacted his ability utilize a wheelchair at the time of the 2021 accident. *See* Ex. "1": Pl.'s Depo., p. 129:7-15.  The day before the 2021 accident, Plaintiff admits he was still having pain in his wrists and hands while using a wheelchair because of the injuries received in the 2019 accident.  *Id*. at p. 187:20-25.

8.  After the 2021 accident Plaintiff was transported to Integris Hospital. At the Emergency Room, Plaintiff <u>denied</u> any neck pain, head pain, or upper back pain.  Rather, Plaintiff complained of right flank pain. After spending approximately 3 ½ hours in the ER, during which time multiple CT scans were taken demonstrating no acute injury, Plaintiff was discharged.  *See* Ex. "1": Pl.'s Depo., p 151:21 – 154:9.

9.  Plaintiff then reported to The Broadway Clinic the exact same injuries that he complained of due to the 2019 accident. *See* Ex. "1": Pl.'s Depo., p 155:8 – 156:17.

10. After the 2021 accident, Plaintiff obtained medical treatment for approximately 14 weeks. The following chart demonstrates the original amount of each bill, the reductions to each bill, the payment on each bill and the amount still owed by Plaintiff:

| DATE | PROVIDER | BILLED | REDUCTIONS | PAID | OWED |
|---|---|---|---|---|---|
| 09/09/21 | Integris | $16,003.45 | $14,605.73 | $1,397.72 | $0.00 |
| 09/09/21 | EMSA | $1,338.00 | $604.00 | $734.00 | $0.00 |
| 09/09/21 | OEP, LLC | $1,379.00 | $1,188.52 | $190.48 | $0.00 |
| 09/09/21 | Radiology Ass. | $540.02 | $342.78 | $197.24 | $0.00 |
| 09--12/21 | Broadway Clinic | $2,920.00 | $620.00 | $2,300.00 | $0.00 |
| 10--21/21 | Physical Therapy | $4,466.00 | $1,366.00 | $3,100.00 | $0.00 |
| 12/02/21 | Midtown Img. | $1,600.00 | $500.00 | $1,100.00 | $0.00 |
| 09/10/21 | Walgreens | $2.99 | $0.00 | $2.99 | $0.00 |
| **TOTAL** | | **$28,249.46** | **$19,227.03** | **$9,022.43** | **$0.00** |

All of Plaintiff's medical bills he relates to the 2021 accident have been paid in full and reflect zero balances. *See* Ex. "15": Pl.'s Billing Records.

11. After the 2021 accident, Plaintiff was able to resume bow hunting. Specifically, during the deer season spanning October 1, 2021, to January 15, 2022, Plaintiff was able to kill 3 doe and 1 buck (a score of 165). *See* Ex. "1": Pl.'s Depo, p. 29:5 – 32:16.

12. After the 2021 accident, Plaintiff was able to resume competing in hand cycling events. On October 3, 2021 (24 days after the 2021 accident), Plaintiff competed in the hand cycling event at the Oklahoma City Memorial Marathon, finishing the 26.2-mile course in 1:47:09 for a second-place finish. *See* Ex. "1": Pl.'s Depo., p. 49:21 – 56:25; *see also* Ex. "16": Leaderboard. Plaintiff was also able to compete in the Endeavor Games in June 2022. Specifically, in the 15k hand cycling event, Plaintiff was able to complete the time trial in 33:52 for a 7th place finish. *See* Ex. "1": Pl.'s Depo. pp. 57:15 – 59:12; *see also* Ex. "17": Endeavor Results.

<u>Progressive's Handling of Plaintiff's UIM Claim Arising from the 2021 Accident</u>

13. On September 13, 2021, Progressive took a recorded statement of Plaintiff and his wife to discuss how the accident occurred and what Plaintiff's injuries were. *See* Ex. "18": Trans. of Call. On the call Progressive learned Plaintiff was a paraplegic. Plaintiff's wife told Progressive that Plaintiff "started having pains in his neck and the upper part of shoulder..." the day after the accident (this was not accurate given Plaintiff was still experiencing neck and shoulder pain due to the 2019 accident). *Id*. at p. 2:16-24. Nonetheless, Progressive asked Plaintiff: "how you doing?" Plaintiff responded he was "still in some pain" but he was "trying to hang in there". *Id*. at pp, 12:22 – 13:1.

14. The next day Mr. Bennett advised another insurance company Plaintiff had suffered "bodily injuries" due to an accident. *See* Ex. "19": Lttr to U.S.A.A., 09/14/21.

15. On October 14, 2021, Progressive sent correspondence to Plaintiff advising him that he had $25,000.00 in UIM coverage available to him for the 2021 accident should the need arise. *See* Ex. "20": Corresp. from Progressive to Plaintiff. Progressive has never reduced the coverage available to Plaintiff under the subject policy of insurance. *See* Ex. "8": McMillen Depo. p. 71:1-22; *see also* Ex. "2": Aff. of McMillen, ¶ 6.

16. February 25, 2022, is the first date Plaintiff submitted a UIM claim to Progressive. *See* Ex. "21": Lttr, dated 02/25/22; *see also* Ex. "2": Aff. of McMillen, ¶ 7.

17. On that same date, Progressive opened a UIM feature for Plaintiff and assigned the feature to employee Michael Roell ("Roell") for handling. Roell immediately called Mr. Bennett to discuss Plaintiff's UIM claim. At that time, Roell learned from Mr. Bennett that: (1) Plaintiff had been a paraplegic for 40 years; (2) Plaintiff had been very active and participated in hand cycling events but was injured in an accident in 2019; (3) Plaintiff had surgery for his shoulder injury due to the 2019 accident but Plaintiff was getting close to being back to normal when the 2021 accident occurred; (4) Plaintiff's medical bills likely exceeded $25,000.00 due to the 2021 accident; and (5) U.S.A.A.'s liability limits were $25,000.00 and those limits had been tendered. *See* Ex. "5": Claim Notes, p. 12; *see also* Ex. "24": Aff. of Roell, ¶ 2.

18. After speaking with Mr. Bennett on February 25, 2022, Roell sent correspondence to Mr. Bennett again confirming UIM coverage of $25,000.00 and stating that in order to

complete an evaluation Progressive would need Plaintiff's medical bills and medical records and a list of the treating providers. *See* Ex. "22": Corresp. dated 2/25/22.

19. On or about March 6, 2022, Progressive received from Plaintiff's counsel a one-page letter and corresponding documents ("Demand Letter"). *See* Ex. "23": Corresp., dated 03/01/22; *see also* Ex. "2": Aff. of McMillen, ¶ 3.

20. The Demand Letter provided the majority of the information Roell requested on February 25, 2022. After reviewing the Demand Letter, and more than a hundred pages of attachments, Roell determined he had sufficient information with which to complete an accurate preliminary evaluation of Plaintiff's UIM claim. *See* Ex. "24": Aff. of Roell, ¶ 3.

21. On March 8, 2022, Roell completed his first evaluation of Plaintiff's UIM claim. Roelle allowed for $10,037.00 in medical bills and valued Plaintiff's pain and suffering to be $10,500.00. Importantly, considering Plaintiff's "unique situation"[1] Roell <u>doubled</u> the monetary evaluation for Plaintiff's pain and suffering as compared to what he would have normally allocated for an insured who underwent 3 months of conservative treatment and was not in a wheelchair. *See* Ex. "4": Roell Depo., 77:15 – 79:5; Ex. "24": Aff. of Roell, ¶ 5.

22. On March 9, 2022, Progressive sent correspondence to Mr. Bennett advising that Progressive did not evaluate Plaintiff's claim to be in excess of $25,000.00, and therefore, a valid UIM claim had not been presented. *See* Ex. "25": Letter dated 03/09/22.

23. On March 21, 2022, Mr. Bennett responded stating that Progressive should have spoken to Plaintiff before evaluating the UIM claim to better understand Plaintiff's

---

[1] A term used by Kevin Bennett not Progressive.

"unique situation as a paraplegic with upper body injures." *See* Ex. "26": Corresp. dated

03/21/22.  No mention was made that Plaintiff had recently finished a successful hunting

season; recently finished second place in a marathon; was about to compete in another

hand cycling event; or whether Plaintiff had the necessary shoulder surgery from the 2019

accident.  Progressive was not informed that Plaintiff was still suffering from upper body

injuries when the 2021 accident occurred due to the 2019 accident.

24. On April 7, 2022, Roell took a second recorded statement of Plaintiff. *See* Ex. "27":

Trans. dated 04/07/22.  Based upon the information obtained, Roell re-evaluated Plaintiff's

claim to be between $18,037.00 and $23,037.00 (broken down: $10,037 and the remainder

for non-economic damages).  *See* Ex. "24": Aff. of Roell, ¶ 5.  As the evaluation was still

less than $25,000.00, Roell sent correspondence to Mr. Bennett advising a valid UIM

claim had still not been presented.  *See* Ex. "28": Letter dated 04/14/22.

25. In response, Plaintiff filed suit against Progressive in April 2022.  *See* Dkt. 1-2.  At

the time Plaintiff filed suit he had: (1) no medical bills related to the 2021 accident that

had not been paid in full (*see* Ex. "15") and (2) no lost wages because he was not working

and was on Social Security Disability.  *See* Ex. "29": Pl.'s Resp. to Def.'s ROGG No. 18;

*see also* Ex. "1": Pl.'s Depo.: pp. 22:3-8 &79:14 - 81:22.

## SUMMARY JUDGMENT

Summary judgment pursuant to Fed.R.Civ.P. 56 is appropriate where there is no

genuine dispute as to any material fact and the moving party is entitled to judgment as a

matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d

265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Kendall v. Watkins*, 998 F.2d 848, 850 (10th Cir.1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 317, 106 S.Ct. 2548. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' " *Id.* at 327, 106 S.Ct. 2548.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 250, 106 S.Ct. 2505. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. *Garratt v. Walker*, 164 F.3d 1249, 1251 (10th Cir.1998).

## ARGUMENT AND AUTHORITY

I. OKLAHOMA LAW ALLOWS PROGRESSIVE TO REFUSE TO INCLUDE IN ITS MONETARY EVALUATION OF PLAINTIFF'S UNDERINSURED MOTORIST CLAIM MEDICAL BILLS THAT WERE NEVER OWED

A. Application of § 3009.1

The Plaintiff asks this Court to declare, as a matter of law, that an Oklahoma insurer is not allowed to apply § 3009.1 when evaluating an underinsured motorist claim.[2] None of the Plaintiff's argument and authority directly address this issue. The Plaintiff fails to point to any controlling authority from the Oklahoma Supreme Court or Tenth Circuit holding that it is improper for an insurance company to apply § 3009.1 to an Oklahoma UIM claim. The Plaintiff does not reference a single district court case that supports his position that an insurer must include in its UIM evaluation medical bills that neither the insured or the tortfeasor would ever be legally responsible for.

There is authority supporting the Defendant's position. *Perry v. Safeco Ins. Co. of America*, 2020 WL 1180726 (N.D. Okla. 2020), concerned claims for breach of contract and bad faith arising from the presentation of a UIM claim. As here, the tortfeasor had $25,000.00 in liability coverage that was paid to Perry. Perry also had an automobile insurance policy with Safeco, which provided UIM coverage of $50,000.00. Perry's

---

[2] It cannot be understated the importance of this issue in Oklahoma. Most insurers in Oklahoma apply § 3009.1 when evaluating a UIM claim. *See e.g. Klintworth v. Valley Forge Ins. Co.*, 2022 WL 1021750 *2 n.4 (10th Cir. 2022), wherein the Court notes that outside counsel for the insurer advised Valley Forge to only use the "amounts paid for treatment, not the amounts billed" when evaluating the UIM claim. *See also Phillips v. Farmers Ins. Co. Inc.*, 2018 WL 11447251 (N.D. Okla. 2018) wherein Farmer's filed a motion *in limine* to limit the UIM insured's medical bills to the amounts actually paid by Medicare, plus any additional amounts claimed due to insurance payments.

counsel submitted medical-related expenses of $27,948.34 to Safeco. Of that amount, Perry's health insurer paid the service providers $7,032.31. Safeco argued that only the actual amounts paid for any service in treatment of Plaintiff were admissible, citing Section 3009.1. Judge Kern agreed with Safeco, finding that "only the actual amounts paid in treatment of Plaintiff are admissible. OKLA 19 STAT. tit. 12, § 3009.1." *Id*. at *4. This is apparently the only case in Oklahoma to address the applicability of § 3009.1 in the context of a UIM breach of contract claim.

The UIM insuring agreement in the Policy establishes that Progressive owes Plaintiff what he would be able to recover from Jessica Maddox at trial after he filed a lawsuit against her. Progressive promised Plaintiff it "will pay for damages that an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury..." *See* Insuring Agreement, Dkt. 6-2, p. 10. When Plaintiff filed his civil lawsuit against Jessica Maddox for his personal injuries allegedly sustained in the accident, Section 3009.1 applied, and limited Plaintiff's recovery to the amounts actually paid to resolve Plaintiff's medical bills as opposed to the original billed amounts. Section 3009.1 provides, in part:

> A. Upon the trial of any civil action arising from personal injury, the actual amounts paid for any services in the treatment of the injured party, including doctor bills, hospital bills, ambulance service bills, drug and other prescription bills, and similar bills shall be the amounts admissible at trial, not the amounts billed for such expenses incurred in the treatment of the party.

The Policy clearly affords UIM benefits to Plaintiff according to what he would be legally entitled to recover from the other driver at trial upon the filing of a civil action for

personal injuries sustained in the accident.  It is by virtue of this specific Policy language that Section 3009.1 unquestionably applies.

The Plaintiff views the phrase "legally entitled to recover" differently.  He relies on Oklahoma Supreme Court cases that hold an insured is not required to establish <u>all elements of a viable tort claim</u> against the at-fault party in order to assert a valid UIM claim. Plaintiff and Defendant can agree that the words "legally entitled to recover simply mean that the insured must be able to establish fault on the part of the uninsured motorist which gives rise to damages <u>and prove the extent of those damages</u>." *Uptegraph v. Home Ins*. Co., 662 P.2d 681, 684 (Okla. 1983)(emphasis added).   Further, Plaintiff and Defendant agree that Plaintiff has demonstrated Maddox is at fault.

The question then becomes whether Plaintiff can prove the extent of his damages.  Here, Plaintiff and Defendant separate in interpretation.  While Plaintiff cited to *Torres v. Kansas City Fire & Marine Ins. Co.*, 849 P.2d 407 (Okla. 1993), a key statement was left out. The *Torres* court stated – immediately after defining "legally entitled to recover" – the following: "[I]n so ruling we recognized our decision merely employed principles of contract interpretation which were geared toward effectuating the intention of the parties, <u>an intention determined to be that where an insured suffered a loss which was not able to be compensated by the tortfeasor</u>, it was the insurance company that would assume the risk of that loss, not the insured." *Id*. at 410 (emphasis added).

In the case at bar, Plaintiff claims that Progressive should assume the risk of a loss that was never incurred (written off medical bills) and for which all such damages have been compensated by the tortfeasor.   Plaintiff provides this Court with no case law

supporting his argument that "legally entitled to recover" means an insured can recover charges the medical provider does not expect him to pay.

Consider: if Plaintiff had sued both Maddox and Progressive, and the case went to trial against Maddox, Progressive would have been bifurcated from trial. At trial, Maddox would have prohibited Plaintiff from introducing medical bills that were written off. Thus, the jury would have only considered the exact same medical bills Progressive allowed for pre-suit (actually less). Such an outcome is clearly what the Oklahoma legislature and Oklahoma Supreme Court intended by the phrase "legally entitled to recover."

Plaintiff argues that despite "the wealth of settled authority indicating otherwise, Defendant took the affirmative position to avail themselves [sic] of the third-party procedural defense of 12 O.S. § 3009.1..." Again, Plaintiff points to no controlling authority holding that it was improper for Progressive to rely upon § 3009.1. Considering the statute has been in existence in one form or another since 2011, and the majority of insurance companies in Oklahoma apply § 3009.1, amply case authority supporting the Plaintiff's position should be available. It isn't.

In *Lee v. Bueno*, 381 P.3d 736 (Okla. 2016), the Oklahoma Supreme Court upheld the constitutionality of § 3009.1. The *Lee* Court expressly found that § 3009.1 is constitutional in part because it applies equally to all personal injury litigants and does not create subclasses of litigants subject to different conditions of evidentiary rules. *Id.* at 745-46. The *Lee* court explained:

> The laws in the cases discussed above shared a common characteristic that resulted in their constitutional infirmity: they carved out a subset of litigants from a general class that was then subjected to differential treatment. In

23

*Montgomery*, the subclass was uninsured motorists. In *Zeier* and *Wall* it was those pursuing medical negligence claims. In contrast, 12 O.S. 2011 § 3009.1 does not operate on a such a subclass.

Title 12 O.S. 2011 § 3009.1 applies uniformly to all personal injury claimants. Contrary to Lee's assertions, it does not specifically target a particular subclass, such as litigants with insurance coverage, in order to limit their recovery. Instead, the statute as a whole operates to ensure all members of the class are permitted only to admit into evidence the amounts actually paid or owed for medical services. The effect of 12 O.S. 2011 § 3009.1 is to ensure uniformity of outcome within the class regardless of circumstances by preventing a party from admitting into evidence amounts they did not have to pay and thus obtaining a potentially greater amount in damages for medical services than the amount actually paid or owed. Title 12 O.S. 2011 § 3009.1 takes into account various circumstances that might differentiate members of the general class. It does this not to create preference and establish inequality, *See Wall*, 2013 OK 36, ¶ 5, 302 P.3d 775, but specifically to prevent it.

*Id*. (Emphasis added.)

The Oklahoma Supreme Court has made clear that a UIM insured, like Plaintiff, is a personal injury claimant, and that § 3009.1 applies equally to all personal injury litigants, including those pursuing damages for personal injury sustained in a motor vehicle accident by seeking UIM benefits from a UIM insurer. Specifically, the Oklahoma Supreme Court has affirmed that "[t]he purpose of an uninsured motorist provision in an insurance contract is *to protect the insured from the effects of personal injury from an accident with another motorist who either carries no insurance or has inadequate coverage." Burch v. Allstate Ins. Co.*, 977 P.2d 1057, 1063 (Okla. 1998) (citing *Uptegraft* at 683–84) (emphasis added). There is no doubt that UIM claims, like Plaintiff's, arise from personal injury. As such, a civil action regarding a UIM claim is clearly a "civil action arising from personal injury" when, as here, coverage is agreed.

Any ruling that § 3009.1 is inapplicable to this "civil action arising from personal injury" because of the UIM component would be treating it differently than other "civil action[s] arising from personal injury" subject to § 3009.1. Such a ruling would impermissibly create a subclass of personal injury litigants in direct violation of *Lee*.

Just as importantly, the *Lee* Court clearly established Oklahoma public policy, as stated by the legislature, that injured parties cannot recover damages for medical expenses they were billed but not required to be paid. To allow such recovery would result in a windfall, just as Plaintiff demands in this case. The amount actually paid versus the amount billed is the appropriate amount that will compensate the insured for all detriment caused by the tortfeasor as required by Oklahoma law. In *Lee*, Justice Kauger offered a concurring opinion to highlight the policy behind Section 3009.1:

> The statute is necessary because of the opaque process of medical services pricing, in which there is often a significant difference between the price that is billed and the price that is paid. The amount billed for a medical service is not the amount a provider expects to collect. Instead, it is a starting point for negotiations with private insurers, Medicare, Medicaid, and other groups...Title 12 O.S. 2011 § 3009.1 is a reaction to the way that medical services are priced. It ensures that a plaintiff does not receive a windfall, but also ensure that the measure of damages 'is the amount which will compensate for all detriment.'

*Id*. at 753-54 (concurring opinion).

Finally, Progressive was not required to obtain signed statements or sworn testimony that the providers would accept the amounts paid as full payment. According to the plain language of the statute, if the bills at issue have been paid, there is no requirement to obtain signed statements or sworn testimony from the providers. Subsection C of § 3009.1 provides:

**If no bills have been paid, or** no statement acknowledged by the medical provider. . . then the amount billed shall be admissible at trial subject to the limitations regarding any lien filed in the case.

(emphasis added). In other words, if the bills have been paid, that ends the analysis, and no further action is required. If the bills have not been paid in full, there are additional requirements for obtaining signed statements or testimony that must be provided to counsel by the time of the Final Pretrial Conference if the reductions are sought.

Of the bills provided to Progressive during claims handling, one of the bills reflected adjustments applied by Plaintiff's health insurer, BlueCross/BlueShield. Plaintiff's medical bill from Integris was paid by BlueCross/BlueShield, and he was not balance billed for the amounts that were adjusted/written off. The Integris bill has been paid, which vitiates any obligation of Progressive to obtain signed statements or sworn testimony. *See* Def.'s UMF 10; *see also* EXH. 11. Progressive properly considered the paid amounts pursuant to its process and Oklahoma law.

B. Oklahoma Administrative Code 365:15-1-17

The Plaintiff claims that the Oklahoma Administrative Code prohibits Progressive "from taking a credit on Billie Willis' medical billing because he has health insurance." Plaintiff specifically relies upon 365:15-1-17. This provision prohibits an insurer from limiting or reducing UIM coverage because the injured party has health insurance. It is undisputed Progressive never limited or reduced Plaintiff's UIM coverage. UIM coverage has always been afforded to Plaintiff in the purchased amount of $25,000.00. *See* Ex. "2": Aff. of McMillen ¶¶ 2 & 6.

C.  <u>Lien Filing Charges</u>

The Plaintiff argues that Progressive improperly refused to consider lien filing fees his medical providers tacked on to his bill.  These fees are merely administrative overhead charges, unilaterally placed on bills by three of Plaintiff's medical providers ("Lien Providers").  *See* Ex. "11": Medical Liens.  Progressive made no error, for three reasons:

First, the $50.00 lien filing fees were, in two of the providers' bills (Advanced Physical Therapy and The Broadway Clinic), charged on the first day Plaintiff presented for treatment. (*See id.* at WILLIS 3803 & 3983). These dates were <u>months</u> prior to these providers actual filing their liens. (*See id*. at file stamp on WILLIS 3802 & 3979). Thus, these providers attempted to pass along potential overhead costs to Plaintiff that not only had nothing to do with the actual treatment they were providing to Plaintiff, but that they themselves <u>had not yet even incurred</u>.

More importantly, the Lien Providers charged nearly <u>double</u> the amount they actually paid to file their liens.  Indeed, Advanced Physical Therapy listed a lien filing fee charge of $50.00 on its bill, but a review of the filing stamp on its lien reveals that it only paid a <u>$26.00</u> filing fee. (*See id*. at WILLIS 3802 & 3803). As for The Broadway Clinic, it also listed a lien filing fee charge of $50.00 but, as the filing stamp reflects, only paid a <u>$24.00</u> filing fee. (*See id*. at WILLIS 3979 & 3983). Finally, Midtown Imaging Service listed a lien filing fee of $50.00, only to pay a <u>$22.00</u> filing fee. (*See id*. at WILLIS 4096 & 4097). Thus, not only are the Lien Providers attempting pass on to Plaintiff costs that are purely administrative and inherent in the business treating individuals on a lien basis only, they are attempting to profit off of doing so. Importantly, Plaintiff never paid the lien

filing fees.  *See* Def.'s Rsp. to Pl.'s UMF 22.

More importantly, once Plaintiff settled with the underlying tortfeasor and USAA, the Lien Providers ultimately wrote-off a total of $2,486.00 from their bills after receiving payment from Mr. Bennett. *See* Def.'s UMF 10. Specifically, Advanced Physical Therapy wrote-off $1,366.00 from its bill, The Broadway Clinic wrote-off $620.00, and Midtown Imaging Service wrote-off $500.00. *See id*. Then the Lien Providers filed lien releases, which explicitly released "Billie Willis," "USAA Insurance," and/or "Progressive Insurance" from "any kind of nature, arising from, and by reason of treatment given to BILLIE WILLIS[.]" *See* Lien Releases, EXH. 11.

The Plaintiff has failed to show the Court a specific provision of the Policy which establishes an obligation for Progressive to pay for the "economic damages" Plaintiff never had to pay. This is because there is no such provision. The UM/UIM insuring agreement in the Policy states "[i]f **you** pay the premium for this coverage, **we** will pay for *damages than an* **insured person** *is legally entitled to recover from the owner or operator of an* **uninsured motor vehicle** *because of* **bodily injury**[.]" (*See* Dkt. No. 6-2, p. 10) (emphasis added). The Plaintiff fails to allege any facts or cite any authority that directly supporting his claim that the $50.00 lien filing fee charges are damages that he is "legally entitled to recover" from a tortfeasor. (*See* [Dkt. No. 23-6]).

Lien filing charges are not damages that he is legally entitled to recover from Maddox.  Lien filing fees are not a cost incurred by Plaintiff for his "medical care or treatment."  To argue otherwise would require Progressive to consider any other administrative fees a provider decides to place on a bill, such as a hypothetical $10.00

surcharge for electricity or postage. Regardless, Plaintiff never reimbursed the Lien Providers the lien fees, and each provider wrote off well in excess of $50.00 from the billing, at his attorney's demand. *See* Def.'s UMF 10; *see also* EXH. 11. As a result, Plaintiff is merely requesting the court to issue an advisory opinion given that he had no damages that relate to Progressive's alleged failure to include the lien filing fees.

## CONCLUSION

Progressive is entitled to summary judgment for breach of contract because the Plaintiff's UM/UIM claim never amounted to $25,000.00. Although the parties agree that the non-economic damages range of the Plaintiff's claim was $8,000 – $13,000.00, the amount he was "legally entitled to collect" from Maddox for economic damages/medical specials did not amount to $12,000.00. Progressive was not required, as a matter of law, to consider charges on the Plaintiff's medical bills – lien filing fees and written off/adjusted charges – the Plaintiff was not required to pay and which he could not "legally recover" from the tortfeasor.

**WHEREFORE**, premises considered, Progressive Direct Insurance Company respectfully requests the Court deny the Plaintiff's motion for partial summary judgment (Dkt. #69), with such other relief the Court deems just and equitable.

Respectfully Submitted by:

**STARR, BEGIN & KING**

s/Bradley E. Bowlby_____
Christopher C. King, OBA #18578
Bradley E. Bowlby, OBA #22847
1800 S. Baltimore, Ste 550
Tulsa, OK  74119
Tel:    (918) 872-0374
Fax:    (918) 872-0381
Email:  kris.king@tulsalawyer.org
          brad.bowlby@tulsalawyer.org
*Attorneys for Defendant Progressive*

## CERTIFICATE OF MAILING

I hereby certify that on June 13, 2023, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants (names only are sufficient):

Jason Waddell

s/Bradley E. Bowlby_____

330-101