IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BILLIE WILLIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CV-22-349-SLP |
| | ) |
| PROGRESSIVE DIRECT | ) |
| INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

**O R D E R**

Before the Court are the Motion to Quash [Doc. No. 74] filed by Defendant Progressive Direct Insurance Company, and the Motion to Quash and Request for Emergency Hearing [Doc. No. 75] filed by nonparty Roberson, Kolker, Cooper, P.C. ("RKC"). Plaintiff Billie Willis responded. *See* [Doc. Nos. 80–81]. No replies were filed. The Court conducted a hearing on June 22, 2023 during which counsel for the parties and Mr. Roberson appeared and presented arguments. *See* Minute Entry [Doc. No. 84].

This is a breach of contract and bad faith action arising out an uninsured/underinsured motorist ("UM/UIM") policy. Attorney Brad Roberson previously represented Progressive, but the Court permitted him to withdraw from representation on January 17, 2023. *See* Order [Doc. No. 40]. Plaintiff deposed four Progressive employees about their training, and he learned that Mr. Roberson provides annual legal training to Progressive employees. Plaintiff subsequently issued a subpoena duces tecum to RKC, Mr. Roberson's law firm, seeking production of nine categories of documents. *See* [Doc. No. 67-1] at 5. Plaintiff also issued

a deposition subpoena, seeking to question a representative from RKC about the documents, pursuant to Federal Rule of Civil Procedure 30(b)(6). *See id.* at 6–9.

Progressive filed a Motion to Quash [Doc. No. 74], arguing the information sought is privileged, protected by the work-product doctrine, and is irrelevant, overly broad, and burdensome. RKC also moved to quash the subpoenas, arguing the requested documentation "is protected by the attorney/client privilege, work product doctrine, is wholly irrelevant to the issues at hand in this litigation, and seeks proprietary documentation." RKC's Mot. to Quash [Doc. No. 75] at 1. In the alternative, RKC asks the Court to enter a protective order pursuant to Federal Rule of Civil Procedure 26(c)(1).

## I.     Legal Standard and Standing

Federal Rule of Civil Procedure 45 permits a party to seek discovery from a nonparty. A court must quash or modify any subpoena that, *inter alia*, "requires disclosure of privileged or other protected matter, if no exception or waiver applies," or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)–(iv). Additionally, a Rule 45 subpoena is subject to the same discovery scope and limits set forth in Rule 26(b)(1). "The party seeking a protective order or moving to quash a subpoena has the burden to demonstrate good cause and/or the privilege to be protected." *Morales v. E.D. Etnyre & Co.*, 228 F.R.D. 694, 696 (D.N.M. 2005).

Generally, only the party to whom the subpoena is directed has standing to challenge the subpoena. *Wichita Firemen's Relief Ass'n v. Kansas City Life Ins. Co.*, No. 11-1029-KGG, 2012 WL 3245451 at *2 (D. Kan. Aug. 8, 2012) (citing cases). But a third party may

challenge a subpoena if it "has a personal right or privilege" with respect to the subject matter sought by the subpoena. *Id.* (citations omitted); *see also Gulf Coast Shippers Ltd. P'ship v. DHL Exp. (USA), Inc.*, No. 2:09CV221, 2011 WL 5102270 at *1 (D. Utah Oct. 26, 2011) (accord). Under this exception, a third party has standing to challenge a Rule 45 subpoena seeking documents protected by the work-product doctrine or attorney-client privilege. *See, e.g., Lindley v. Life Investors Ins. Co. of Am.*, No. 08-CV-379-CVE-PJC, 2010 WL 1837715 at * 1 (N.D. Okla. Apr. 30, 2010) (concluding defendant had standing to object to non-party subpoena based on attorney-client privilege where subpoena sought a deposition of defendant's prior counsel and privileged communications with them). It is less clear when a "personal right" confers standing, however. *See, e.g., Public Serv. Co. of Oklahoma v. A Plus, Inc.*, No. CIV-10-651-D, 2011 WL 691204 at *3 (W.D. Okla. Feb. 16, 2011) ("[C]ourt decisions do not define what constitutes a 'personal right' for this purpose[.]"). Courts have recognized, *inter alia*, bank records, employment files and a party's psychiatric or mental health records as types of information in which a party has a personal right. *Id.* (citing cases).

Progressive argues it has standing to challenge the subpoena based on attorney-client privilege, work-product doctrine, and its privacy interest in the information sought.[1] It also urges the Court to "exercise its inherent authority to limit irrelevant or non-proportional discovery requests pursuant to Federal Rule of Civil Procedure 26(b)(2)(C)." Def.'s Mot. [Doc. No. 74] at 3. Plaintiff does not challenge Progressive's standing wholesale but argues

---

[1] Under the circumstances, the Court is not necessarily persuaded that Progressive has demonstrated a "personal right" sufficient to confer standing. But the Court need not decide this issue to resolve the Motions.

3

that some of its specific objections are improper.  *See, e.g.*, Pl.'s Resp. to Def.'s Mot. [Doc. No. 80] at 15.  The Court addresses those specific objections below.

## II.    Subpoena Duces Tecum

The subpoena duces tecum requests nine categories for production.  At the hearing, counsel for the parties and Mr. Roberson represented that the first two requests were moot.[2]  The outstanding requests are addressed in turn.

### i.    Billing Invoices

Plaintiff's first remaining request seeks "[b]illing invoices sent from RKC to any Progressive entity for training and education provided to Progressive employees in calendar years 2020 and 2021."  [Doc. No. 67-1] at 5.  At the hearing, Mr. Roberson explained that this request—which implicates 4,218 invoices—goes beyond the annual training sessions that he provides to Progressive's employees.  Because Plaintiff's request encompasses informal "education" provided via phone or email, Mr. Roberson argued, the request is overly burdensome.  Plaintiff did not contest the scope of the request but denied the request is overly burdensome because Boolean searches will facilitate production.

Progressive argues the request has "no probative value" and "serves little purpose but to harass and annoy Progressive."[3]  Def.'s Mot. [Doc. No. 74] at 5.  Plaintiff contends that

---

[2] These requests sought documents detailing the contractual relationship between Progressive and RKC, and Progressive and Mr. Roberson individually.  *See* [Doc. No. 67-1] at 5.

[3] The Court does "not delve into the standing issue" with respect to Progressive's challenge, as the Court "on motion or on its own" may determine whether the "proposed discovery is outside the scope permitted by Rule 26(b)(1)."  *Green v. Cosby*, No. 3:14-cv-30211-MGM, 2017 WL 1377593 at *2 (D. Mass. Apr. 11, 2017) (alteration and quotations omitted)).

the request is "relevant to show how much work was performed by RKC and Mr. Roberson for training and education and coverage opinions as compared to litigation activities." Pl.'s Resp. to Def.'s Mot. [Doc. No. 80] at 13. At the hearing, Plaintiff's counsel elaborated that he suspects Mr. Roberson sometimes acts as a type of claim supervisor, and that production of the invoices will permit him to determine the context, scope, and breadth of training and education that Mr. Roberson provides.

The Court is unwilling to permit Plaintiff to engage in a fishing expedition to identify the precise contours of Mr. Roberson's relationship with Progressive, particularly when it requires Progressive's former counsel to review over 4,000 invoices to do so. *See Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995) ("[B]road discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." (quotation omitted)). First, Plaintiff has not articulated how the general comparison of Mr. Roberson's time spent on training and coverage opinions versus litigation services across all matters is relevant to the claims and defenses in this action (such as any training specific to the issues in this case). *See Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 653 (D. Kan. 2006) ("[W]hen the request is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request."). But even assuming the resulting "split" of Mr. Roberson's time is relevant to Plaintiff's claims, it is not "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Particularly, the "burden or expense of the proposed discovery" certainly "outweighs its likely benefit." *Id.* Accordingly, the Motions to Quash

are GRANTED with respect to the invoices.

### ii. Training Dates

Next, Plaintiff asks RKC to "furnish the dates upon which RKC and/or RKCG[4] provided training and education to Progressive employees in 2020 and 2021." [Doc. No. 67-1] at 5. While Progressive represented in its Motion that it "ha[d] no objection to this particular request," [Doc. No. 74] at 5, it argued at the hearing that the information was not relevant. As with the billing invoices, Mr. Roberson clarified that Plaintiff's request is much broader than the dates of the annual trainings, but instead encompasses dates of any phone calls and emails in which Progressive's adjusters called him for advice. Plaintiff did not dispute Mr. Roberson's characterization of the scope of the request.

This request is deficient for the same reasons articulated above. Plaintiff has not adequately explained why the *dates* of the training provided are relevant to his claims. Additionally, the request would require Mr. Roberson to comb through two years of invoices to identify which calls or emails were made for "training and education" purposes before providing those dates to Plaintiff. Accordingly, the "burden or expense of the proposed discovery outweighs its likely benefit" and the requested discovery is not "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

### iii. PowerPoint Presentations

Plaintiff's next request is for "[a]ny and all PowerPoint or similar presentations used in any training provided by RKC and/or RKCG to any Progressive entities in the years 2015-

---

[4] RKCG refers to Roberson, Kolker, Cooper & Goeres.

2021." [Doc. No. 67-1] at 5.  Mr. Roberson conducts annual formal training relaying "advice to Progressive employees concerning how Progressive employee's [sic] should properly handle first and third party claims in accordance with Oklahoma [law]."  RKC's Mot. [Doc. No. 75] at 11.  During these sessions, he relies on PowerPoint slides "to provide talking points."  *Id.*  Plaintiff now seeks these slides.

RKC argues the slides are protected by attorney-client privilege.  It alleges the presentations "were created only by Roberson for use in explaining his interpretation of Oklahoma law in order to give advice to Progressive employees on how to correctly handle first and third party claims."  *Id.*  It also asserts that the slides have "never been seen by anyone other than RKC and Progressive employees."  *Id.* at 12.  Progressive similarly objects on attorney-client privilege grounds but also characterizes the request as overbroad and irrelevant under Rule 26(c).  Even assuming the PowerPoint presentations are relevant to Plaintiff's claims, they are protected by attorney-client privilege.[5]

In diversity cases like this one, state law governs issues involving attorney-client privilege.  *See Frontier Ref., Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 699 (10th Cir. 1998) (citing Fed. R. Evid. 501).  Oklahoma law dictates that attorney-client privilege protects disclosure of "confidential communications made for the purpose of facilitating the rendition of professional legal services to the client."  Okla. Stat. tit. 12, § 2502(B).  Communications are confidential when they are "not intended to be disclosed to third persons other than those

---

[5] Upon review, it is clear that many slides are irrelevant to the issues in this case.  But because the Court finds the PowerPoint presentations are protected on privilege grounds, it need not fully analyze their relevance.

to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." *Id.* § 2502(A)(5).

Plaintiff contends that attorney-client privilege does not attach to the PowerPoint presentations because Mr. Roberson provided business advice rather than legal advice. To be sure, "the mere status of an attorney-client relationship does not make every communication between attorney and client protected by the privilege." *Scott v. Peterson*, 126 P.3d 1232, 1234 (Okla. 2005). When an attorney "provid[es] legal advice to the client at the client's request," however, "the attorney-client privilege protects the confidentiality of the client's communication as well as the legal advice as it pertains to the client's confidential communication." *See Lindley v. Life Invs. Ins. Co. of Am.*, 267 F.R.D. 382, 391 (N.D. Okla. 2010). When a document is created for both a business and a legal purpose, courts have considered its primary purpose. *See, e.g., id.* at 391–92. When that answer is not so clear—that is, when "the legal and business purposes of the communication are inextricably intertwined"—privilege will attach only when "the legal purpose outweighs the business purpose." *Id.* at 392.

Here, the Court finds that the PowerPoint slides contain legal advice and are squarely protected by attorney-client privilege. The Court has reached this conclusion only after meticulously reviewing each slide *in camera*.[6] The slides, which "explain legal concepts and

---

[6] Though RKC did not produce a privilege log, Mr. Roberson provided copies of five PowerPoint presentations for the Court's *in camera* review.

procedures and specific policy issues," clearly reflect Mr. Roberson's "legal opinion on specific topics." *State ex rel. Montpelier U.S. Ins. Co. v. Bloom*, 233 W. Va. 258, 269 (2014)[7]; *see also Santer v. Tchrs. Ins. & Annuity Ass'n*, No. CIVA 06-CV-1863, 2008 WL 821060, at *1 (E.D. Pa. Mar. 25, 2008). The slides were prepared by outside counsel for Progressive, and RKC never even provided a copy of the files to Progressive. *Cf. Fitch v. Entergy Corp.*, No. CV 17-1548, 2019 WL 1490105, at *3 (E.D. La. Feb. 11, 2019) (ordering disclosure when training materials were not prepared by an attorney, and it was "not clear that the training was a method by which Entergy's counsel was confidentially providing legal advice to Entergy's employees"). Accordingly, the PowerPoints are protected by attorney-client privilege.

Nevertheless, Plaintiff argues Progressive has waived this privilege by "affirmatively and impliedly put[ting] the advice of their outside counsel at issue in this lawsuit." Pl.'s Resp. to RKC's Mot. [Doc. No. 81] at 11. The theory of "implied" or "at issue" waiver "recognizes that attorney-client communications cannot be used as both a sword and shield." *Lillieroos v. Starr Indem. & Liab. Co.*, No. CV-12-1359-D, 2016 WL 502074, at *1 (W.D. Okla. Feb. 8, 2016). To determine whether the waiver applies in this case, the Court considers:

> (1) whether the assertion of the privilege is the result of some affirmative act, such as filing suit or asserting an affirmative defense, (2) whether the asserting party, through the affirmative act, put the protected information at issue by making it relevant to the case, and (3) whether applying the attorney-client

---

[7] The *Bloom* court's formulation of attorney-client privilege required: "(1) both parties must contemplate that the attorney-client relationship does or will exist; (2) the advice must be sought by the client from the attorney in his capacity as a legal advisor; (3) the communication between the attorney and client must be intended to be confidential." 233 W. Va. at 264.

>privilege would deny the opposing party access to information that was vital to the opposing party's defense.

*Id.* (citing *Seneca Ins. Co. v. W. Claims, Inc.*, 774 F.3d 1272, 1276 (10th Cir. 2014)).

Plaintiff argues that "Progressive has affirmatively sought relief from this Court that their [sic] conduct with respect to 12 O.S. § 3009.1 was proper." Pl.'s Resp. to RKC's Mot. [Doc. No. 81] at 12.  Plaintiff relies on one of Progressive's affirmative defenses, as well as the deposition testimony of its employees, to support this assertion.  Under the facts of this case, the Court concludes that Progressive has not affirmatively injected Mr. Roberson's advice into the dispute.  First, Plaintiff cites Progressive's affirmative defense, which states: "Plaintiff's recovery of medical bills are limited to the amounts actually paid. 12 O.S. §3009.1." Def.'s Ans. [Doc. No. 6] at 17.  This affirmative defense simply maintains that Progressive's application of Oklahoma law is correct.  *Cf. United States v. Osage Wind, LLC*, No. 14-CV-704-GKF-JFJ, 2021 WL 149266, at *6 (N.D. Okla. Jan. 16, 2021) (reaching the opposite conclusion where defendants sought "to establish their subjective good faith in the legality of their conduct by presenting a 'detailed legal analysis,' *i.e.*, the legal advice, of their outside counsel").  Progressive has not asserted the affirmative defense of reliance of counsel anywhere in its pleadings or motions, and its counsel unequivocally denied any reliance on the defense during the hearing.

Next, Plaintiff asserts that Progressive has put Mr. Roberson's advice at issue based on the deposition testimony of its employees.  Dan McMillen, a large loss supervisor with Progressive, testified as follows:

>Q: Okay.  Where in the policy of insurance that Mr. Willis has with Progressive

> does it allow you to use the healthcare insurance adjustment on the Integris bill?
>
> A: In the insuring agreement it states that if the insured pays the premium for the coverage, we will pay for the damages that an insured person is legally entitled to recover from the owner/operator of an uninsured motor vehicle. Our interpretation of that, *through our training and through legal advice*, is that the "legally entitled recoveries" would be those amounts.
>
> Q: Okay. This legal opinion and legal opinions you've talked about before is a PDF document; is that right?
>
> A: I don't believe there's a PDF document on that.
>
> Q: Okay.
>
> A: That was part of our yearly training.
>
> Q: Okay. Your yearly training. In your legal yearly training, did you specifically go over "legally entitled to recover"?
>
> A: We do. That's part of the insuring agreement we cover. We start with—actually, we start with O.S. 3636, but then we look at specifically our insuring agreement.

McMillen Dep. [Doc. No. 81-4] at 31:5–32:5 (emphasis added). Mr. McMillen also confirmed that Mr. Roberson conducts the yearly training. *See id.* at 79:5–80:12. Other Progressive employees discussed biweekly training calls and onboarding, though there is no indication that Mr. Roberson participated in these trainings.[8]

Plaintiff's reliance on *Osage Wind, LLC* is misplaced. There, the Defendants "pled

---

[8] For example, Plaintiff argues that "[o]utside counsel provides training for Oklahoma UM/UIM claims in Oklahoma including bi-weekly calls." Pl.'s Resp. to RKC's Mot. [Doc. No. 81] at 2. But Progressive adjuster Michael Roell testified about biweekly calls after being asked how many times he "[met] with *legal counsel* as an adjuster," not how many times he met with *outside counsel*. Roell Dep. [Doc. No. 81-3] at 17:6–10 (emphasis added). During the hearing, Mr. Roberson represented to the Court that he has only participated in one biweekly call.

an affirmative good-faith defense premised entirely on their subjective belief in the 'legality' of their conduct" and relied on a "detailed legal analysis" to prove the defense. *Osage Wind, LLC*, 2021 WL 149266, at *5. In contrast, Progressive's position is that Plaintiff is not "legally entitled to recover" the higher, incurred balance of his medical bills because § 3009.1 applies to UM/UIM claims. This distinction is important: Progressive asserts it acted in good faith because it applied the law correctly, not because it reasonably relied on Mr. Roberson's interpretation of the law. An insurer does not put an attorney's advice at issue simply by asserting it "conducted a reasonable investigation and complied with the terms of the policy." *Kinard Painting & Sandblasting, Inc. v. RSUI Grp., Inc.*, No. CIV-20-597-J, 2022 WL 4366217, at *2 (W.D. Okla. July 18, 2022) (citing cases). Accordingly, Progressive has not waived the privilege, and the request for the PowerPoint presentations will be QUASHED.

### iv. Software

Category (6) of the attachment to the subpoena duces tecum reads: "Identify the computer software program(s) used for communication and document storage between RKC and/or RKCG and any Progressive entity for the years 2015-2021." [Doc. No. 67-1] at 5. Category (7) similarly reads: "Identify the location of the computer software programs listed above (i.e., cloud-based server, physical server, etc.)." *Id.* Plaintiff asserts that "this information is relevant and discoverable in order to perform an adequate electronic search on RKC's computers for relevant information related to Plaintiff's subpoena." Pl.'s Resp. to RKC's Mot. [Doc. No. 81] at 15.

First, Rule 26(b)(1) dictates that information is discoverable when it "is relevant to

any party's *claim or defense*." (emphasis added). Plaintiff has not explained how the identity or location of RKC's technology has any bearing on whether Progressive breached the UM/UIM insurance contract or its duty of implied duty of good faith and fair dealing to Plaintiff. And, as set forth herein, the Court is granting the Motions to Quash with respect to all other documents Plaintiff seeks. Thus, even the relevance that Plaintiff ascribes to these requests is not applicable. Finally, this request does not appear to seek "documents, electronically stored information, or tangible things," nor does it seek deposition testimony or "inspection of [a] premises," which are the only means of discovery permitted under Rule 45. Plaintiff conceded at the hearing that these requests are improper with respect to the subpoena duces tecum. The Court therefore GRANTS the Motions to Quash as to categories (6) and (7).

      **v.**    **Okla. Stat. tit. 12, § 3009.1 and Okla. Admin. Code § 365-15-1-17**

Finally, Plaintiff seeks "[a]ny and all correspondence or documents between RKC and/or RKCG (shareholders, directors, officers, and employees) and any Progressive entity reflecting any discussions or analysis of" either Okla. Stat. tit. 12, § 3009.1 or Okla. Admin. Code § 365-15-1-17 "in Oklahoma since 2015." [Doc. No. 67-1] at 5. Progressive argues the request "encompasses material containing communications that are privileged and/or constitute attorney work product," and that it is "extraordinarily overbroad." Def.'s Mot. [Doc. No. 74] at 8. Plaintiff argues that because "Progressive has asserted the legality of its conduct" in its application of § 3009.1 and § 365-15-1-17, the communications are "discoverable and relevant." Pl.'s Resp. to Def.'s Mot. [Doc. No. 80] at 15–16. Plaintiff also

13

challenges Progressive's claim that the subpoena "will subject *it* to undue burden, expense, and oppression even though the subpoena was not directed to Progressive." *Id.* at 15. The Court agrees that Progressive lacks standing to challenge the subpoena as unduly burdensome. *See Howard v. Segway, Inc.*, No. 11-CV-688-GKF-PJC, 2012 WL 2923230, at *2 (N.D. Okla. July 18, 2012). Nevertheless, the Court has inherent authority to "limit irrelevant or non-proportional discovery requests pursuant to Federal Rule of Civil Procedure 26(b)(2)(C)." *Copeland v. C.A.A.I.R., Inc.*, No. 17-CV-564-TCK-JFJ, 2020 WL 972754, at *3 (N.D. Okla. Feb. 28, 2020).

"Whether a subpoena imposes an undue burden upon a witness is a case specific inquiry that turns on 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.*, 211 F.R.D. 658, 662 (D. Kan. 2003) (quoting *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 53 (S.D.N.Y.1996)). "[T]he status of a person as a non-party is a factor that weighs against disclosure." *Id.* Here, the relative importance of the documents is diminished by the fact that Progressive has not, as explained above, asserted an affirmative defense of reliance on counsel. Next, the request is overbroad on its face, seeking "[a]ny and all correspondence or documents" from "any Progressive entity" that contain "any discussion or analysis" of either § 3009.1 or § 365-15-1-17. [Doc. No. 67-1] at 5. The request is not even limited to the UM/UIM context, for example. While it is limited in geographic scope, such a constraint would likely have little

14

impact on a request seeking analysis of an Oklahoma statute and an Oklahoma regulation. The request is similarly broad in temporal scope, requesting over eight years of documents.[9] *Id.* Finally, the request would impose an enormous burden on nonparty RKC. Given the breadth of the request, many responsive documents would likely be privileged. To properly object on attorney-client privilege grounds, RKC would need to locate and review every responsive document before creating a privilege log. Accordingly, all factors weigh against production, and the Court GRANTS the Motions to Quash.

### III.  Deposition Subpoena

Finally, Plaintiff has issued a subpoena under Rule 30(b)(6), seeking to depose a designated representative of RKC to testify about the requested documents. *See* [Doc. No. 67-1] at 6–9. Though fashioned as a deposition of a corporate representative, Plaintiff clearly aims to depose Mr. Roberson. *See Est. of Ratley v. Awad*, No. CIV-19-265-PRW, 2022 WL 4316160, at *4 (W.D. Okla. Sept. 19, 2022) ("Functionally, Plaintiffs are attempting to use Rule 30(b)(6) to depose opposing counsel . . . . Although JGB could designate a member of the firm not connected with this case as its representative, that person would have to 'testify about information known or reasonably available' to the law firm about this case—in effect, what the lawyers working on the case know." (quoting Fed. R. Civ. P. 30(b)(6))). Plaintiff lists the same nine categories of documents as the only "subjects of the deposition." *Id.* at 8–9. But because the Court has quashed the subpoena duces tecum in its entirety, Plaintiff has nothing to depose Mr. Roberson about.

---

[9] Plaintiff's request seeks documents "since 2015" with no end date. [Doc. No. 67-1] at 5.

Additionally, courts also disfavor depositions of opposing counsel and will not permit them unless "the party seeking to take the deposition has shown that: (1) no means exist to obtain the information other than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case."[10] *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1112 (10th Cir. 2001) (citing *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986)). The Court has discretion "to issue a protective order against the deposition of opposing counsel when any one or more of the three *Shelton* criteria for deposition listed above are not met." *Boughton v. Cotter Corp.*, 65 F.3d 823, 830 (10th Cir. 1995); *see also* Fed. R. Civ. P. 26(c).

First, much of the requested information is available from Progressive. As discussed at the hearing, Progressive likely has billing records, dates of training, and correspondence between RKC and Progressive. Additionally, as explained above, attorney billing records, the identity of RKC's software, and locations of its servers are not relevant to Plaintiff's claims, let alone "crucial" to the preparation of his case. And the Court's *in camera* review of the PowerPoint presentations reveals that they are protected by attorney-client privilege. Thus, even if the Court had not quashed the subpoena duces tecum in its entirety, Plaintiff's request to depose opposing counsel would have been deficient under the *Shelton* factors. Thus, the Motions to Quash are GRANTED as to the 30(b)(6) deposition subpoena.

---

[10] Though Mr. Roberson has withdrawn from representing Defendant in this matter, all parties analyze the issue under the *Shelton* factors. *See* Def.'s Mot. [Doc. No. 74] at 10; RKC's Mot. [Doc. No. 75] at 9; Pl.'s Resp. [Doc. No. 80] at 16; *see also Anzora v. Lezama*, No. 17-CV-01983-WJM-NRN, 2018 WL 11183554, at *3 (D. Colo. Sept. 19, 2018) (applying *Shelton* standard to former counsel).

### IV. Fees

Federal Rule of Civil Procedure 45(d)(1) requires the "party or attorney responsible for issuing and serving a subpoena" to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." The Court "must enforce this duty and impose an appropriate sanction." Fed. R. Civ. P. 45(d)(1).[11] Here, RKC requests an award of $1,000 for the "five hours" it took to respond to the subpoenas. When questioned at the hearing about RKC's failure to submit a privilege log, Mr. Roberson stated that the process was too burdensome and time consuming. Additionally, there is no indication counsel met and conferred in good faith before RKC and Progressive filed their Motions. *See* LCvR 37.1 (requiring "counsel for movant" to meet and confer in good faith "[w]ith respect to all motions or objections relating to discovery pursuant to Fed. R. Civ. P. 26 through 37 and 45"); *cf. New Mexico Oncology & Hematology Consultants, Ltd. v. Presbyterian Healthcare Servs.*, No. CV 12-526 MV/GBW, 2015 WL 13650053, at *3 (D.N.M. June 3, 2015). Upon review, the Court finds the parties should bear their own costs and fees.

IT IS THEREFORE ORDERED that Progressive's Motion to Quash [Doc. No. 74] and RKC's Motion to Quash and Request for Emergency Hearing [Doc. No. 75] are GRANTED. The subpoena duces tecum and Rule 30(b)(6) deposition subpoena are hereby QUASHED and of no further force and effect.

---

[11] Similarly, Plaintiff "requests an award of his attorney fees and costs." Pl.'s Resp. [Doc. No. 80] at 24. Because the Court is granting the Motions to Quash in their entirety, however, the Court denies Plaintiff's request.

IT IS SO ORDERED this 30th day of June, 2023.

                                                                            SCOTT L. PALK
                                                                            UNITED STATES DISTRICT JUDGE