## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

BILLIE WILLIS,                                    )
                                                  )
      Plaintiff,                           )
                                                  )
v.                                                )    Case No. CIV-22-349-SLP
                                                  )
PROGRESSIVE DIRECT                                )
INSURANCE COMPANY,                                )
                                                  )
      Defendant.                           )

## **O R D E R**

Before the Court are three related motions, all of which are at issue.  First, Plaintiff Billie Willis filed his Motion for Partial Summary Judgment and Brief in Support [Doc. No. 69], to which Defendant Progressive Direct Insurance Company responded, *see* [Doc. No. 79], and Plaintiff replied, *see* [Doc. No. 83].  For the following reasons, Plaintiff's Motion is DENIED.

Second, Progressive filed a Motion for Summary Judgment [Doc. No. 71]. Plaintiff responded, *see* [Doc. No. 77], but Progressive did not reply, and the time to do so has now passed.  Progressive's Motion is GRANTED in part and DENIED in part, as set forth herein.

Finally, Plaintiff filed a Motion to Strike Summary Judgment Evidence and Brief in Support [Doc. No. 78], to which Progressive responded, *see* [Doc. No. 85].  Plaintiff did not file a reply.  This Motion is DENIED.

## I.  <u>Governing Standard</u>

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is only genuine  "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1251 (10th Cir. 2015) (quoting  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  And a fact is only material if it "might affect the outcome of the suit under the governing law."  *Id.* (quoting  *Anderson*, 477 U.S. at 248).

When a court is "presented with cross-motions for summary judgment," it "'must view each motion separately,' in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor."  *United States v. Supreme Ct. of New Mexico*, 839 F.3d 888, 906–07 (10th Cir. 2016) (quoting *Manganella v. Evanston Ins. Co.*, 702 F.3d 68, 72 (1st Cir. 2012)).  In reviewing Progressive's Motion, therefore, the Court considers the factual record and draws all inferences in the light most favorable to Plaintiff.

## II.  <u>Undisputed Material Facts</u>[1]

On September 9, 2021, Plaintiff and nonparty Jessica Maddox were involved in a car accident.[2]  Plaintiff, who was injured in the accident, was not at fault.  Plaintiff was

---

[1] The Court includes facts that are material, supported by the summary judgment record, and not genuinely disputed.  *See* Fed. R. Civ. P. 56(c).  Many of the proffered facts are legal conclusions. *See, e.g.*, Pl.'s UMF ¶ 15 ("Progressive is bound to follow Oklahoma law and the Oklahoma Administrative Code relating to insurance.").  The Court disregards these assertions.  *See Morgan v. Willingham*, 424 F.2d 200, 202 (10th Cir. 1970).

transported to the emergency room following his accident, where he complained of pain and underwent several tests before being discharged.   At the time of the accident, Plaintiff had an uninsured/underinsured ("UM/UIM") policy with Progressive that provided coverage up to $25,000 per person.

On September 13, after Plaintiff returned home, he and his wife spoke with a Progressive representative about the details of the accident.   The following day, Plaintiff's personal injury attorney, Kevin Bennett, emailed Ms. Maddox's liability insurer to advise that Plaintiff "suffered property damage and bodily injuries" in the wreck.  [Doc. No. 71-19] at 2.[3]  About a month later, Progressive notified Plaintiff that his UM/UIM policy provided up to $25,000 in coverage if Ms. Maddox "d[id] not have insurance, or enough insurance to fully compensate [Plaintiff] for [his] injury."  [Doc. No. 71-20] at 2.   Plaintiff continued to seek medical treatment through the end of December 2021.

On February 25, 2022, Mr. Bennett emailed Progressive, advising that the tortfeasor's insurer had agreed to tender the policy limits of $25,000, and that Plaintiff would be making a UM/UIM claim.[4]  That same day, Progressive "opened a UIM feature for Plaintiff" and assigned Michael Roell as the claim handler.  [Doc. No. 71-24] ¶ 2. Mr. Roell called Mr. Bennett that same day to discuss the claim.  Mr. Bennett agreed to

---

[2] Progressive includes several facts about a prior car accident that involved Plaintiff.  But there is no evidence in the record that this earlier wreck had any bearing on Progressive's claims decision process with respect to the one at issue here.   Accordingly, facts about the earlier accident are immaterial.

[3] The Court's citations to the parties briefing and exhibits reference the CM/ECF pagination.

[4] Progressive waived its subrogation rights on March 8, 2022.

send the pertinent medical bills and advised that "Plaintiff had been a paraplegic for 40 years." *Id.* Following their conversation, Mr. Roell sent a letter to Mr. Bennett confirming the existence of UM/UIM coverage and requesting, *inter alia*, "[a]ll medical bills relevant to this injury." [Doc. No. 71-22] at 2.

Mr. Bennett replied to the letter on or about March 6, 2022, and "demand[ed] payment of the limits of [Plaintiff's] UIM coverage." [Doc. No. 71-3] at 2. The letter attached a "medical summary" listing each treating provider, the date of service, and the "amount." *Id.* at 6. EMSA was listed as a provider, but the amount was left blank. Mr. Bennett told Mr. Roell that this bill "didn't affect the overall value" of the claim. [Doc. No. 69-5] at 2. Similarly, the medical summary included a $540 charge for "Radiology." [Doc. No. 71-3] at 6. Finally, although Plaintiff also received bills from Oklahoma Emergency Physicians LLC ("OEP") and Walgreens, those bills were not included in the summary.

In addition to the summary, Mr. Bennett provided most of Plaintiff's medical bills, including one from Integris Baptist Hospital ("Integris") that showed charges totaling $16,003.45. *See id.* at 7. As reflected on the bill, Plaintiff's health insurer, Blue Cross Blue Shield ("BCBS"), had applied $14,605.73 in "[a]djustments" and $1,253.09 in payments. *Id.* The outstanding patient balance owed was $144.63. *Id.* Mr. Bennett also included a HIPAA authorization form in the demand package, but Mr. Roell never attempted to get copies of Plaintiff's medical records from his providers. Finally, the demand package included an opinion from the providers at the Broadway Clinic that

Plaintiff would benefit from "a series of epidural steroid injections to the cervical spine," which would "cost approximately $12,000 to $16,000." *Id.* at 76.

Mr. Roell reviewed this documentation and decided he had sufficient information to accurately evaluate Plaintiff's claim.[5]  He valued Plaintiff's claim somewhere between $17,037 and $20,537, with medical bills accounting for $10,037 of the total amount. [Doc. No. 69-3] at 5.  As reflected in the claim notes, Mr. Roell reached this conclusion by excluding the $14,605.73 contractual adjustment on the Integris bill, as well as three $50 lien filing fees (for a total of $150) included on other providers' bills.  *See id.*  His valuation did not include future expenses for the steroid injections, nor did it account for the EMSA, OEP, or radiology bills.  In calculating Plaintiff's non-economic damages, Mr. Roell doubled the amount he would usually ascribe for pain and suffering because Plaintiff uses a wheelchair.  On March 9, Mr. Roell sent a letter explaining that Plaintiff's claim did not exceed the $25,000 limit of Ms. Maddox's liability policy.  The letter concluded: "As such, the underinsured motorist coverage does not apply at this time and I have moved my file to inactive status.  Should any new information become available for reconsideration, please contact me or forward all such documentation to my attention." [Doc. No. 71-25] at 2.

About two weeks later, Mr. Bennett sent a letter to Progressive raising several "questions and concerns" on behalf of Plaintiff.  [Doc. No. 71-26] at 2.  In part, he criticized Progressive's decision not to "come see [Plaintiff]" so the insurer could "learn

---

[5] Defendant disputes the fact that Mr. Roell in fact had sufficient information to complete an accurate evaluation.

a little more about [Plaintiff's] unique situation as a paraplegic with upper body injuries."
*Id.* at 3.   Four days later, Plaintiff dismissed his state court claim against Ms. Maddox with prejudice.

On April 7, 2022, about two and half weeks after Mr. Bennett sent his letter, Mr. Roell took a recorded statement.   Plaintiff gave Mr. Roell details of his injuries and day-to-day activities.   Following this conversation, Mr. Roell re-evaluated Plaintiff's claim to be between $18,037 and $23,037—still below Ms. Maddox's $25,000 liability limits. The re-evaluation changed only the value of Plaintiff's noneconomic damages.   The following day, Plaintiff filed the instant action against Progressive.[6]   On April 14, 2022, Mr. Roell sent another letter to Mr. Bennett, again explaining Plaintiff had not presented a valid UM/UIM claim.   He advised that Progressive would "consider any additional information" provided.   [Doc. No. 71-28] at 2.

The parties agree Plaintiff's non-economic damages are between $8,000 and $13,000.   *See* Pl.'s Resp. to Def.'s UMF ¶ 29.   They disagree, however, over the proper measure of Plaintiff's economic damages.   In total, Plaintiff's providers ultimately billed $28,249.46.[7]   *See* Def.'s UMF ¶ 10.   Plaintiff argues this entire amount—which includes

---

[6] Plaintiff filed this action in state court, *see* [Doc. No. 1-1], and Progressive removed it to this Court on April 28, 2022.   *See* [Doc. No. 1].

[7] Plaintiff has moved to strike certain portions of Progressive's Exhibit 15 [Doc. No. 71-15], which includes Plaintiff's medical bills and supporting documentation.   *See* [Doc. No. 78].   He challenges the admissibility of the Integris affidavit, the cover letter from the billing records custodian for Radiology Associates, LLC, and the EMSA billing statement.   *See id.* at 1–2. Plaintiff makes clear, however, that he does "not [challenge] the Integris billing records themselves."   *Id.* at 6.   Similarly, there is no dispute as to the total amounts billed by the providers.   *Compare* Def.'s UMF ¶ 10 (calculating billed amount of $28,249.46), *with* Second Am. Compl. [Doc. No. 102] ¶ 60 (valuing Plaintiff's "medical bills of and out of pocket

write-offs and lien filing fees—are economic damages recoverable under the policy.  Of that total, $19,227.03 was written off, and $9,022.43 was paid.[8]  Progressive contends the policy only permits Plaintiff to recover the $9,022.43 "paid" amount as economic damages.  Thus, even applying the highest limit of Plaintiff's undisputed noneconomic damages, Progressive contends the claim's value does not exceed the tortfeasor's $25,000 limits.  Both parties have moved for summary judgment on Plaintiff's breach of contract claim.  Progressive also seeks summary judgment on Plaintiff's bad faith claim and request for punitive damages.

## III.   Analysis

The Court's subject matter jurisdiction is predicated on diversity of citizenship.  Its task, therefore, "is not to reach its own judgment regarding the substance of the common law, but simply to 'ascertain and apply the state law.'"  *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665 (10th Cir. 2007) (quoting *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003)).  The Court, like the parties, applies the substantive law of Oklahoma.  *See GeoMetWatch Corp. v. Behunin*, 38 F.4th 1183, 1201 (10th Cir. 2022).  In the absence of a controlling state decision, the Court "must attempt to predict what [Oklahoma's] highest court would do."[9]  *Wade*, 483 F.3d at 666 (quoting *Wankier*,

---

[8] At the time Mr. Roell evaluated Plaintiff's claim, only the Integris bill showed a written-off portion.  Although three of the providers eventually wrote off additional sums, Mr. Roell considered the full "incurred" amount of those bills when he placed a value on Plaintiff's claim.

expenses" at $28,249.44).  Plaintiff also challenges the affidavits' sufficiency under Oklahoma's paid vs. incurred statute which, as the Court details below, is inapposite to the facts of this case.  Accordingly, the Motion to Strike [Doc. No. 78] is DENIED.

[9] Neither party has asked the Court to certify a question of law to the Oklahoma Supreme Court.

353 F.3d at 866).  In doing so, the Court may consider "a number of authorities, including analogous decisions by the state Supreme Court, the decisions of the lower courts in the state, the decisions of the federal courts and of other state courts, and the general weight and trend of authority."  *MidAmerica Constr. Mgmt., Inc. v. MasTec N. Am., Inc.*, 436 F.3d 1257, 1262 (10th Cir. 2006).

### A.    Breach of Contract

Both parties move for summary judgment on Plaintiff's breach of contract claim.  Plaintiff identifies two purported breaches of the UM/UIM policy.  First, he contends Progressive undervalued his claim by considering only the medical bills *paid*, as opposed to the total amount *billed*.[10]  Second, he argues that because lien filing fees are "economic damages" by the policy's terms, Progressive breached the contract by deducting them from the total value of his claim.  The Court takes each argument in turn.

#### 1.  *Paid vs. Incurred*

The parties' core dispute focuses on the applicability of Oklahoma's "paid vs. incurred" statute in the UM/UIM context.  *See* Okla. Stat. tit. 12, § 3009.1.  That statute provides, in relevant part:

> Upon the trial of any civil action arising from personal injury, the actual amounts paid for any services in the treatment of the injured party, including doctor bills, hospital bills, ambulance service bills, drug and other prescription bills, and similar bills shall be the amounts admissible at trial, not the amounts billed for such expenses incurred in the treatment of the party.

---

[10] The Court uses the terms "billed" and "incurred" interchangeably to mean the sum charged by a provider before any write-off or adjustment is applied.

*Id.* § 3009.1(A). Plaintiff claims Progressive's reliance on § 3009.1 is improper because the statute has no force beyond determining admissibility of evidence in personal injury trials. For its part, Progressive argues § 3009.1 applies to all UM/UIM claims, so it did not err by excluding the written-off amounts from its valuation.

The Court's analysis begins with the Oklahoma statute governing uninsured motorist coverage, which is mirrored in the policy. *See* Okla. Stat. tit. 36, § 3636. The statute requires any UM/UIM policy to "provide coverage therein or supplemental thereto for the protection of persons insured thereunder who are *legally entitled to recover damages* from owners or operators of uninsured motor vehicles . . . because of bodily injury, sickness or disease . . . ." *Id.* § 3636(B) (emphasis added); *see also* Policy [Doc. No. 108-2] at 15 ("If you pay the premium for this coverage, we will pay for damages that an insured person is *legally entitled to recover* from the owner or operator of an uninsured motor vehicle because of bodily injury . . ." (emphasis added)). The Court's interpretation of this term does not begin with a clean slate. "Legally entitled to recover" is a term of art in Oklahoma jurisprudence, meaning "simply [] that the insured must be able to establish fault on the part of the uninsured motorist which gives rise to damages and prove the extent of those damages." *Uptegraft v. Home Ins. Co.*, 662 P.2d 681, 685 (Okla. 1983). Because fault is not an issue in this case, the Court's focus is solely on the "extent of th[e] damages" that Plaintiff can prove. *Id.*

The Oklahoma law defining damages reads as follows: "Any person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor in money, which is called damages." Okla. Stat. tit. 23,

§ 3.  A "plaintiff may claim and recover any rate of damages to which he may be entitled for the cause of action established."  Okla. Stat. tit. 12, § 661.  The instant dispute between Plaintiff and Progressive is based in contract, *see Kratz v. Kratz*, 905 P.2d 753, 755 (Okla. 1995), but interpreting and applying the "legally entitled to recover" language in the policy focuses the inquiry on the extent of damages available in the underlying tort action.  Although Plaintiff need not "prove all the elements of the tort against the uninsured" to recover under the UM/UIM contract, it is clear he must "prove the extent of [the] damages" caused by the underinsured motorist. *Barfield v. Barfield*, 742 P.2d 1107, 1112 (Okla. 1987).  For actions arising in tort, "the measure of damages . . . is the amount which will compensate for all detriment proximately caused" by the tortfeasor.  Okla. Stat. tit. 12, § 61.  But "in all cases," a plaintiff is limited to recovering only those damages which are "reasonable."  Okla. Stat. tit. 23, § 97.

Oklahoma follows the collateral source rule, which means that "compensation given to the injured party from a collateral source wholly independent of the wrongdoer does not operate to lessen the damages recoverable from the person who causes the injury." *Lee v. Bueno*, 381 P.3d 736, 750 (Okla. 2016).  In *Lee*, the plaintiff alleged § 3009.1 was unconstitutional because, *inter alia*, it "abolishe[d] the collateral source rule for insured victims of torts." *Id.* at 739.  The Oklahoma Supreme Court questioned whether, as an initial matter, the collateral source rule even applied to *write-offs* (as

opposed to *payments* made by insurers or third parties).[11]  *Id.* at 751 (noting the question had "hitherto [been] left unanswered").  But the state supreme court had no reason to decide the issue in *Lee*.  Instead, it determined § 3009.1 controlled, but only "to the extent it conflicts with operation of the collateral source rule."  *Id.* at 752.  The court concluded that the plaintiff's "focus on whether the collateral source rule extends to cover amounts billed to an injured plaintiff but not paid or owed [wa]s misplaced" because "[t]he Legislature ha[d] effectively answered that question through the enactment of 12 O.S. 2011 § 3009.1."  *Id.*

The Court is not persuaded by Progressive's argument that § 3009.1, unequivocally and by its plain terms, is relevant to UM/UIM valuations in all cases. Nevertheless, the statute provides insight into how the Oklahoma Supreme Court would define the extent of Plaintiff's damages *in this case*.  As set forth in *Lee*, Oklahoma's legislature and judiciary have both recognized that the amount a provider bills does not always bear relation to the amount ultimately owed.  The *Lee* court cast doubt on whether the collateral source rule extends to those adjustments that providers don't expect to collect and patients don't expect to pay.  *See id.* at 751 (calling this proposition "debatable").  *Lee* recognized that "[s]ome courts have refused to apply the collateral source rule to an amount billed, but not paid or owed, because it does not fit within the definition of damages."  *Id.* (citing *Howell v. Hamilton Meats & Provisions, Inc.*, 257 P.3d 1130 (Cal. 2011); *Moorhead v. Crozer Chester Medical Ctr.*, 765 A.2d 786 (Pa.

---

[11] Progressive does not dispute that Plaintiff is legally entitled to recover payments that BCBS made on his behalf—that is, monies BCBS paid to providers after contractual write-offs were applied.

2001)); *see also Haygood v. De Escabedo*, 356 S.W.3d 390, 396 (Tex. 2011) (holding that "common-law collateral source rule does not allow" litigants to recover damages for "expenses a health care provider is not entitled to charge"); Restatement (Third) of Torts: Remedies § 19 TD No. 2 (2023) (surveying different states' approaches to this issue).  To be sure, some state courts have held otherwise.  *See, e.g.*, *Orlowski v. State Farm Mut. Auto. Ins. Co.*, 810 N.W.2d 775 (Wisc. 2012) (confirming UM/UIM claimant "is entitled to recover the reasonable value of medical services, which, under the operation of the collateral source rule, includes written-off medical expenses").

In passing § 3009.1, however, the Oklahoma Legislature determined that write-offs go above and beyond "the amount which will compensate for all detriment."  *Lee*, 381 P.3d at 754 (Kauger, J., concurring) (quoting Okla. Stat. tit. 12, § 61).  Although § 3009.1 is a rule of evidence applicable in "civil action[s] arising from personal injury," it is instructive as to the extent of damages that Plaintiff may recover under his contract with Progressive, pursuant to the "legally entitled to recover" policy language.

Plaintiff cites a line of Oklahoma Supreme Court cases which have barred UM/UIM insurers from stepping into the shoes of the tortfeasor and asserting defenses which are available in the underlying tort action.  *See Uptegraft*, 662 P.2d at 685 (barring insurer's reliance on two-year statute of limitations applicable in underlying tort action); *Karlson v. City of Oklahoma City*, 711 P.2d 72 (Okla. 1985) (rejecting insurer's attempt to rely on damages cap found in Political Subdivisions Tort Claims Act); *Barfield*, 742 P.2d 1107 (finding breach of UM/UIM contract even though benefits also paid under workers' compensation statute, which included exclusivity provision); *Torres v. Kansas*

*City Fire & Marine Ins. Co.*, 849 P.2d 407 (Okla. 1993) (confirming *Barfield* applies to both Class 1 and Class 2 insureds).

Plaintiff argues Progressive's reliance on § 3009.1 here is no different because it is asserting "a procedural defense" available only to the tortfeasor. [Doc. No. 77] at 25. To be sure, Oklahoma has consistently protected UM/UIM claimants' rights to collect the benefit of their bargain when their injuries exceed the tortfeasor's policy limits. *See Torres*, 849 P.2d at 412 ("Just as in *Karlson*, [] the intention of the parties was that appellant, not the insured, would assume the risk that the insured might suffer a loss for which the tortfeasor could not make compensation."); *Raymond v. Taylor*, 412 P.3d 1141, 1147 (Okla. 2017) (describing Oklahoma Supreme Court's "tendency to protect the insured's right to collect from the UM carrier"). But the cases Plaintiff relies upon are distinguishable because the *extent* of damages suffered was not at issue. Instead, those cases reject a UM/UIM insurer's attempt to avoid paying for a loss after *Uptegraft's* two preconditions—fault and extent of damages—had already been established. *See, e.g.*, *Karlson*, 711 P.2d at 75 (holding insured could recover under UM/UIM policy when tortfeasor's liability was capped below "an amount which will [] compensate an insured for all his proven losses suffered in an automobile accident"). But the parties' dispute in this case focuses on *how* to properly measure the extent of Plaintiff's damages under *Uptegraft*'s second precondition. In the same vein, the Oklahoma Supreme Court has unequivocally held that a UM/UIM insurer "is obligated to pay the entire loss of its injured insured from the first dollar up to the policy limits." *Burch v. Allstate Ins. Co.*, 977 P.2d 1057, 1064 (Okla. 1998). But, while *Burch* recognized that UM/UIM insurers

are not permitted to set off "*payments* received by an insured person from collateral sources," it says nothing about whether un-owed, un-charged adjustments are part of the "actual amount of damages sustained" by an insured. *Id.* at 1064–65 (emphasis added).

Based primarily on § 3009.1 and *Lee*, the Court concludes Progressive did not breach the contract when Mr. Roell excluded the Integris bill's $14,605.73 contractual adjustment from the value of Plaintiff's claim. The adjustment had already been applied and was not in dispute at the time Mr. Roell valued the claim. This conclusion is in harmony with "the intent of UM legislation" in Oklahoma, which "is to provide the same protection for an insured person who is injured by an uninsured motorist as he or she would have if the uninsured motorist carried liability insurance." *Raymond*, 412 P.3d at 1145. Several other providers eventually applied adjustments to their bills, although none of these adjustments were included in Mr. Roell's valuation of the claim. Again, there is no evidence that any of these adjustments were disputed, otherwise subject to change, or used to delay investigating the claim. Although it is not clear every "adjustment" was a contractual write-off made pursuant to an agreement with BCBS, Plaintiff provides no justification which would warrant departure from the conclusion the Court reached above: that the amounts written off by the providers are not damages that Plaintiff is "legally entitled to recover" under Oklahoma law.

Plaintiff makes several other arguments, all of which are unavailing under the particular facts present here. First, he claims Progressive's valuation runs afoul of the Oklahoma Administrative Code. The Code prohibits an insurer from issuing a policy "that limits or reduces . . . uninsured motorist coverage because the injured party has

insurance through a life and or health insurance provider." Okla. Admin. Code 365:15-1-17. But the amount of *coverage* available to Plaintiff has remained static and is undisputed. The debate here simply involves how to properly measure Plaintiff's damages under the policy. Plaintiff identifies no authority—nor could the Court locate any—that supports the interpretation he advances here.

Next, Plaintiff argues Progressive cannot avail itself to § 3009.1 because it failed to comply with the statute's affidavit requirements. But, as explained above, the Court does not adopt Progressive's view that § 3009.1 governs all UM/UIM valuations. Instead, the statute is one piece of relevant evidence which helps the Court decide how Oklahoma would measure the extent of Plaintiff's damages. Indeed, many of the statute's requirements are nonsensical in the context of placing a value on a UM/UIM claim. *See* Okla. Stat. tit. 12, § 3009.1(A) (providing, in certain cases, that a signed statement from a provider "shall be part of the record as an exhibit but need not be shown to the jury"). At the time Progressive valued Plaintiff's claim, Integris had already applied BCBS's contractual adjustment. Although the bill had not yet been fully paid, Mr. Roell included all non-adjusted amounts amounts—including both the amount already paid by BCBS and the outstanding balance owed—in his valuation. There is no evidence in the record that the contractual adjustment was invalid or inaccurate. Indeed, the undisputed factual record provides no indication that these amounts have ever been revised or called into question.

Plaintiff then argues that the policy expressly contemplates recovery for all damages "incurred." The policy states, in relevant part:

> If you pay the premium for this coverage, we will pay for damages that an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury:
> 1. sustained by an insured person;
> 2. caused by an accident; and
> 3. arising out of the ownership, maintenance or use of an uninsured motor vehicle.
>
> An insured person must send to us, by certified mail, written notice of any settlement offer made by the owner or operator of an uninsured motor vehicle, or that person's liability insurer. The notice must include:
> 1. ***written documentation of all economic damages incurred***, including copies of all medical bills; and
> 2. written authorization, or a court order, to obtain reports from all employers and medical providers.

[Doc. No. 108-2] at 15 (emphasis added).   The second provision—like the "legally entitled to recover" language in the first—mirrors statutory language.  *Cf.* Okla. Stat. tit. 36, § 3636(F)(1) (requiring UM/UIM insured's written notice of "tentative agreement to settle [with insured tortfeasor] for liability limits" to include, *inter alia*, "[w]ritten documentation of pecuniary losses incurred, including copies of all medical bills").  By its plain terms, this provision contains a "notice requirement."  *Phillips v. New Hampshire Ins. Co.*, 263 F.3d 1215, 1225 (10th Cir. 2001) (discussing Okla. Stat. tit. 36, § 3636(F)).  Plaintiff argues Progressive "was required by the policy and limited by the language therein to considering only the 'economic damages incurred' provided by Willis as his economic medical damages." [Doc. No. 77] at 17.  But "[t]he purpose of the notice requirement is to trigger the speedy payment mechanism and to enable the insurer to protect any subrogation rights it may wish to preserve." *Phillips*, 263 F.3d at 1225.  The plain language of the provision does not operate to confine a UM/UIM insurer's valuation to the incurred amounts reflected on the bills.

Finally, in Reply Plaintiff argues that "[u]nder the argument and scenario urged by Defendant, a UM/UIM carrier could simply delay and deny any claim valuation until such time that the medical bills were paid by settlement with the tortfeasor, a healthcare insurer, or some other entity."  [Doc. No. 83] at 6.  But there is no indication that Progressive behaved in such a manner here.  The Court therefore declines to issue an advisory opinion on the proper extent of damages under Plaintiff's hypothetical.  Accordingly, Progressive did not breach this portion of the contract by considering only the paid amounts of Plaintiff's medical bills.

### 2. Lien Filing Fees

The next issue is whether Plaintiff may recover lien filing fees under the policy.  Three of Plaintiff's providers (Midtown Imaging, Broadway Clinic, and Advanced Physical Therapy) included $50 lien filing fee charges on their bills.  Plaintiff contends Progressive breached the contract by excluding this $150 total from his claim's valuation.[12]  Progressive argues that because the fees are administrative in nature, they are not recoverable under the policy.

In Oklahoma, "[a]n insurance policy is a contract; when its terms are unambiguous and clear, the language is accorded its ordinary, plain meaning and enforced so as to carry out the parties' intentions."  *Haberman v. The Hartford Ins. Grp.*, 443 F.3d 1257, 1265 (10th Cir. 2006).  But if the "policy's language is ambiguous . . . Oklahoma courts apply the doctrine of reasonable expectations."  *Edens v. The Netherlands Ins. Co.*, 834

---

[12] The liens themselves were released on April 7 and 8, 2022.  *See* [Doc. No. 71-11] at 11–13. Thus, the only issue before the Court is whether the filing fees are recoverable damages under the policy.

F.3d 1116, 1120–21 (10th Cir. 2016).   Under this approach, the Court construes the ambiguities in accord with "what a reasonable person in the position of the insured would have understood it to mean."   *Id.* at 1121 (quoting *Am. Econ. Ins. Co. v. Bogdahn*, 89 P.3d 1051, 1054 (Okla. 2004)).   "The test for ambiguity is whether the language 'is susceptible to two interpretations on its face . . . from the standpoint of a reasonably prudent lay person, not from that of a lawyer.'"   *Am. Econ. Ins. Co.*, 89 P.3d at 1054 (alteration in original) (quoting *Cranfill v. Aetna Life Ins. Co.*, 49 P.3d 703, 706 (Okla. 2002)).

> As previously noted, the coverage provision of the policy reads:
>
> If you pay the premium for this coverage, we will pay for damages that an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury:
> 1. sustained by an insured person;
> 2. caused by an accident; and
> 3. arising out of the ownership, maintenance or use of an uninsured motor vehicle.

[Doc. No. 108-2] at 1.   Progressive argues, *inter alia*, that the lien filing fees did not result from bodily injury but are instead an administrative cost unrelated to Plaintiff's actual treatment.   The Court agrees.   The policy has a causation requirement: the insured can only recover for damages that occur "because of bodily injury."   To be sure, Plaintiff elected to visit these providers only because he had been injured in an accident.   But the lien filing fee charges themselves are distinct from the medical care and treatment Plaintiff received.   The mere fact that they were charged by the providers is not sufficient to transform them into damages that can be attributed to bodily injury.

Plaintiff argues that Progressive cannot "question 'the reasonableness or necessity of the medical services or expenses' absent specific policy language." [Doc. No. 69] at 35 (quoting *Falcone v. Liberty Mut. Ins. Co.*, 391 P.3d 105, 110 (Okla. 2017) (Gurich, V.C.J., concurring in part and dissenting in part)).  Assuming that proposition is true, Progressive's omission of the lien filing fees does not amount to second guessing the care Plaintiff received or the costs charged for that care.  Instead, the fees are wholly separate from the treatment he received from any of the three providers.  There is no suggestion Progressive refused to include the costs of any medical treatment or care from its valuation.  The parties agree that each of the three providers charged a $50 fee, and Progressive reduced the value of the claim by $150.  This valuation accords with the clear terms of the contract.

Plaintiff again argues that the policy "provides coverage for 'all economic damages incurred' 'because of bodily injury.'" [Doc. No. 69] at 34.  But this assertion lifts from both the coverage provision and the notice provision.  In doing so, Plaintiff artificially creates tension between the expansive "all economic damages incurred" language (found in the notice provision) and the "because of bodily injury" restriction (found in the coverage provision).  Relying on this amalgamation, Plaintiff argues lien filing fees are recoverable under Okla. Stat. tit. 23, § 61.2.  But the Court—having concluded lien filing fees are not recoverable under the policy language—need not answer that question.  Thus, Progressive is entitled to summary judgment on this issue.

### B.    Bad Faith

In Oklahoma, insurers "ha[ve] an 'implied-in-law duty to act in good faith and deal fairly with the insured to ensure that the policy benefits are received.'" *Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1093 (Okla. 2005) (quoting *Christian v. Am. Home Assur. Co.*, 577 P.2d 899, 901 (Okla. 1977)).   The insurer's "violation of this duty gives rise to an action in tort." *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1436 (10th Cir. 1993) (quoting *Christian*, 577 P.2d at 904).   "No reasonable inference of bad faith arises from the insurer's withholding payment based on a legitimate dispute." *Id.* at 1440.   "[I]f the court determines there is a legitimate dispute between the parties, it . . . considers whether the plaintiff offered specific additional evidence to demonstrate bad faith." *Shotts v. GEICO Gen. Ins. Co.*, 943 F.3d 1304, 1315 (10th Cir. 2019) (citing *Bannister v. State Farm Mut. Auto. Ins. Co.*, 692 F.3d 1117, 1128–32 (10th Cir. 2012)). To establish a prima facie case of bad faith, a plaintiff must prove:

> 1) he was covered under the automobile liability insurance policy[13] . . . and that insurers were required to take reasonable actions in handling the . . . claim; 2) the actions of insurers were unreasonable under the circumstances; 3) insurers failed to deal fairly and act in good faith toward [the insured] in their handling of the . . . claim; and 4) the breach or violation of the duty of good faith and fair dealing was the direct cause of any damages sustained by insured.

*Edens*, 834 F.3d at 1128  (alterations in original) (quoting *Badillo*, 121 P.3d at 1093).

Plaintiff opposes summary judgement in Progressive's favor, arguing the insurer acted in bad faith by (1) considering only the paid amounts of his medical bills, (2) deducting the lien filing fees, (3) failing to procure affidavits to satisfy § 3009.1's

---

[13] The parties do not dispute that Plaintiff is covered under the policy.

requirements, (4) failing to obtain copies of the EMSA and radiology billing, and (5) failing to consider Plaintiff's future costs. *See* [Doc. No. 77] at 30–31.

As articulated above, the Court finds as a matter of law that Progressive did not err by considering only the paid amounts of Plaintiff's bills, omitting the lien filing fees from the valuation, or failing to obtain affidavits from his providers. Accordingly, these actions cannot support his bad faith claim. But Plaintiff has produced sufficient evidence of bad faith as to the adequacy of Progressive's investigation. *See Shotts*, 943 F.3d at 1317 ("[A]n insurer's failure to conduct a reasonable investigation may give rise to a bad faith claim." (citing cases)). Notably, Plaintiff's providers at the Broadway Clinic "recommended that [Plaintiff] undergo a series of epidural steroid injections to the cervical spine," estimating the treatment would "cost approximately $12,000 to $16,000."[14] [Doc. No. 71-3] at 76. Mr. Bennett provided this report in his demand package, *see id.*, but there is no indication Mr. Roell considered the costs of the steroid injections at any point during the claim evaluation process. And although Mr. Roell spoke to Mr. Bennett about the medical bills, his claim evaluation did not include the EMSA or radiology bills, and he never attempted to use the HIPAA authorization form to independently obtain Plaintiff's medical bills. Viewing the factual record in the light most favorable to Plaintiff, there is sufficient evidence in the record for a jury to conclude that Progressive's investigation was inadequate. Thus, Progressive is not entitled to summary judgment on its bad faith claim.

---

[14] Progressive did not reply to Plaintiff's Response. Accordingly, the Court treats these facts as undisputed for purposes of this Motion. *See* Fed. R. Civ. P. 56(e)(2).

### C.      Punitive Damages

Finally, Progressive moves for summary judgment on the issue of punitive damages.  Although "punitive damages do not automatically follow from proof of bad faith," *Hatfield v. Liberty Mut. Ins. Co.*, 98 F. App'x 789, 795 (10th Cir. 2004), they are recoverable under Oklahoma law if "the jury finds by clear and convincing evidence that" the defendant acted, at a minimum, with reckless disregard for the rights of others. Okla. Stat. tit. 23, § 9.1(B); *see also Badillo*, 121 P.3d at 1106.  The standard for reckless disregard requires a showing that Progressive was "was either aware, or did not care, that there was a substantial and unnecessary risk that its conduct would cause serious injury to Plaintiff."  *See* Okla. Uniform Jury Instruction No. 22.5.  "Whether that showing has been made remains an issue of law for the trial court in its role as gatekeeper to determine, upon a defendant's challenge . . . whether there is competent evidence upon which a reasonable jury could find reckless disregard, from which malice and evil intent may be inferred."  *Robinson v. Sunshine Homes, Inc.*, 291 P.3d 628, 638 (Okla. Civ. App. 2010) (citing *Badillo*, 121 P.3d at 1107).

Here, disputed issues of material fact exist as to whether Progressive conducted its investigation in bad faith.  After viewing the evidence and drawing all reasonable inferences in Plaintiff's favor, the Court finds at this stage in the litigation that a genuine dispute exists as to whether Progressive's conduct could give rise to a finding of reckless disregard.   Based primarily on Progressive's choice not to reply to Plaintiff's Response [Doc. No. 77], the record before the Court is limited as to Mr. Roell's consideration—if

any—of Plaintiff's future damages.  Accordingly, Progressive is not entitled to summary judgment on the issue of punitive damages.

## IV.    Conclusion

IT IS THEREFORE ORDERED that Plaintiff's Motion for Partial Summary Judgment and Brief in Support [Doc. No. 69] is DENIED.

IT IS FURTHER ORDERED that Progressive's Motion for Summary Judgment [Doc. No. 71] is GRANTED in part and DENIED in part, as set forth herein.

IT IS FURTHER ORDERED that Plaintiff's Motion to Strike Summary Judgment Evidence and Brief in Support [Doc. No. 78] is DENIED

IT IS SO ORDERED this 21st day of December, 2023.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE

23